IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ARNULFO GARCIA-RAMOS, PABLO CASTILLO-OLGUIN and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; and WKW, LLC,<br><br>      Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACT. NO.:<br>:<br>: RULE 23 CLASS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.          Plaintiffs are skilled equipment operators and maintenance workers employed by Defendants at substandard wages during the past six years to work at Defendants' operations in Colquitt County, Georgia and in and around Evensville, Tennessee. Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA"), under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), under Georgia contract law, and the common law of fraud.

1

2.          Defendants violated the FLSA by willfully failing to pay at least the required hourly wage for every compensable hour of labor performed in a workweek (including by failing to reimburse their employment-related expenses as required by law) to each Plaintiff, to each individual who may opt into this action as allowed by the FLSA ("Opt-In Plaintiff"), and to other similarly-situated workers. Defendants further violated the FLSA by willfully failing to pay each Plaintiff and other similarly-situated workers employed in Defendants' packing shed operations overtime wages for hours worked in excess of forty hours in a workweek.

3.          Defendants breached Plaintiffs' employment contracts by failing to pay the contractually-promised wages, including those required by the FLSA, for all hours worked, and by deducting pay from Plaintiffs unlawfully, and failing to reimburse Plaintiffs' employment-related expenses including travel expenses.

4.          To remedy these and other legal violations, Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, reasonable attorneys' fees and costs, and pre and post-judgment interest. Plaintiffs brings this action to vindicate their rights and those of others similarly situated, recover their unpaid wages, interest and liquidated damages on behalf of themselves and a class of workers similarly situated.

## II. JURISDICTION AND VENUE

5.          This Court has jurisdiction of this action pursuant to:

     a.          28 U.S.C. § 1331 (Federal Question);

     b.          29 U.S.C. § 1337 (Interstate Commerce);

     c.          29 U.S.C. § 216(b) (FLSA);

     d.          29 U.S.C. § 1854 (a) (AWPA); and

     e.          28 U.S.C. § 1367 (Supplemental).

6.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4 because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside and do business there.

### III. PARTIES

8.      Plaintiff Arnulfo Garcia-Ramos worked for Defendants since 2013.

9.      Plaintiff Garcia-Ramos asserts claims for the 2019 season through 2023 seasons.

10.      Plaintiff Garcia-Ramos and others similarly situated were employed as forklift operators and shipping clerks and were contractually promised prevailing wages for this work.

11.      Plaintiff Pablo Castillo-Olguin worked for Defendants since 1998.

12.      Plaintiff Castillo-Olguin and others similarly situated were employed as maintenance workers and were contractually promised prevailing wages for this work.

13.      At times in the years 2019 through 2022, Plaintiff Garcia-Ramos was a migrant agricultural worker within the meaning of the AWPA.

14.      For the years 2019 through 2022, Plaintiff Garcia-Ramos resided in trailer-park housing owned or controlled by Defendants and was charged rent collected by one of Defendants' supervisors.

15.      Seasonally, Plaintiffs Garcia-Ramos, Castillo-Olguin and others similarly-situated were H-2A agricultural guest workers admitted into the United States to work under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0-655.185.

16.        As part of their H-2A employment contracts Plaintiffs, and others similarly situated, were promised "prevailing wages" for the job activity they performed.

17.        The FLSA consent forms of Plaintiffs and others similarly situated are attached as Exhibit A to this Complaint or will be filed as part of a subsequent Notice of Filing.

18.        At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), and WKW, LLC ("WKW"), collectively the "Corporate Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

19.        Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley and is a member-manager or partner of the other Corporate Defendants.  He may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

20.        Defendant Kent Hamilton is the day-to-day manager of all the Corporate Defendants.

21.        Defendant Kent Hamilton exercises management, ownership, and financial control over all of the Corporate Defendants.

22.        Defendant Kent Hamilton directs labor relations at the Corporate Defendants and has the power to hire, fire, and alter the terms and conditions of employment for all employees of all of the entities.

23.         The Plaintiffs and other similarly-situated were dependent for their wages as a matter of economic reality on Defendant Kent Hamilton and the Corporate Defendants.

24.         Defendant Hamilton Growers may be served with process through its Chief Executive Officer, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

25.         Defendant Southern Valley may be served with process through its registered agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

26.         Defendants Hamilton Produce, Kenda Properties, WK Holdings, and WKW, LLC may be served with process through their registered agent, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

27.         The Limited Partnership Defendants, Hamilton Produce and Kenda Properties ("Limited Partnership Defendants"), are comprised of General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and Defendant Kent Hamilton through their respective trusts.

28.         The two Limited Liability Corporation Defendants, WK Holdings and WKW, ("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant Kent Hamilton Trust.

29.         Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

30.         In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of the Limited Partnership Defendants and exercises this power to conduct business, and is responsible for management, employee relations, and bookkeeping.

31.        Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

32.        The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

33.        Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

34.        The majority of Defendant Kenda Properties' income is from land rent.

35.        Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

36.        Defendant WKW provides transportation services to Defendant Southern Valley.

37.        Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

38.        The transportation services provided by WKW form an integral part of the business of Defendant Southern Valley.

39.        The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

40.        Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

41.        Defendant WK Holdings controls the property of the Limited Partnership Defendants and Defendant WKW and is authorized to sign loans on their behalf.

42.        Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

43.        The Corporate Defendants form part of the same enterprise and are economically dependent on one another for their ongoing business. Defendants Hamilton Growers harvest and pack crops that Defendant Southern Valley markets and ships; Defendants Kenda Properties and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley; WKW provides transportation services to Defendant Southern Valley; and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

44.        Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are also based.

45.        Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

46.        Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, and WK Holdings.

47.        At all relevant times, Defendant Hamilton Growers processed and packed produce grown by others.

48.         In all years relevant to this action, the Corporate Defendants collectively had annual gross sales in excess of five hundred thousand dollars ($500,000).

49.         Upon information and belief, three of the Corporate Defendants, Hamilton Growers, WKW, and Southern Valley have jointly insured themselves against employment practice claims in a policy that also insures related companies considered subsidiaries or joint ventures.

50.         The Corporate Defendants rely on each other to grow or purchase and then pack and sell fruit and vegetable commodities.

51.         The Corporate Defendants process all shipments of produce to any one of the entities using the same "Receiving Record" form.

52.         The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities.

53.         Upon information and belief, Defendant Southern Valley's employees directed Plaintiffs and others similarly situated when they received paystubs from Hamilton Growers.

54.         Supervisors of Defendant Southern Valley had the power to hire and fire employees of Defendant Hamilton Growers.

55.         Supervisors of Defendant Southern Valley exercised their power to hire and fire employees of Defendant Hamilton Growers.

56.         At all times relevant to this action, Defendants have been employers of Plaintiffs and other similarly-situated workers employed under the terms of the 2018, 2019 and 2020, 2021, 2022 and 2023 job orders as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), because they had places of business in the U.S. and means by which they could be contacted for

employment, had employer relationships with the Plaintiffs and other similarly-situated workers, and had valid Federal Employer Identification Numbers.

57.        At all times relevant to this action through 2022, Kent Hamilton, as a principal and agent for all of the Corporate Defendants, signed the job orders on his own behalf and on behalf of the Corporate Defendants.

58.        At all times relevant to this action, Defendants have been employers of the Plaintiffs and others similarly situated within the meaning of the FLSA and the AWPA because Plaintiffs and other similarly-situated were dependent on Defendants as a matter of economic reality as detailed in the preceding paragraphs.

59.        At all times relevant to this action, Defendants were engaged in the packing and shipping of vegetables for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

### IV. THE H-2A PROGRAM

60.        The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185. An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

61.        Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A

workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

62.        The terms and conditions of the job orders, together with the statutory requirements of 8 U.S.C. § 1188, and the regulatory requirements of 20 C.F.R. part 655, constituted employment contracts for Plaintiffs and others similarly situated.  *See* 20 C.F.R. § 655.103(b) (definition of "work contract").

63.        The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b) and the contracts contained a promise to "comply with applicable Federal, State and local law and regulations" including the "payment of Federal minimum wage and the payment of overtime." *See* 20 C.F.R. § 655.135(e).

64.        In each year relevant to this action, Defendant Hamilton Growers submitted job orders to the U.S. DOL.

65.        The 2018 to 2022 job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton. In 2023 the job order's "Employer's Certification" section signed by Defendant Kent Hamilton's daughter, Courtney H. Griffin.

66.        In the employment contracts, Defendants promised to "pay at least the Adverse Effect Wage Rate (AEWR), a prevailing wage rate, the agreed-upon collective bargaining rate, the Federal minimum wage, or the State minimum wage, whichever is highest, for every hour or portion thereof worked during a pay period."

67.        The applicable AEWR was $10.95 in 2018, $11.13 in 2019, $11.71 in 2020, $11.81 in 2021, $11.99 in 2022, and $13.67 in 2023.

68.        Defendants also promised to pay wages free and clear without deduction of items for the employer's benefit or without reducing an employee's wages by shifting costs to their employees as incorporated into the parties working arrangement and the written job order and as

detailed in federal regulations at 20 C.F.R. § 655.122(p)(2).

69.         The employment contracts further promised that Defendants had not "sought or received payment of any kind from any employee" including not seeking wage concessions, in-kind or monetary payment as a recruitment fee or condition of employment as detailed in governing regulation 20 C.F.R. § 655.135(j).

70.         The H-2A program, its implementing regulations, and the applicable job orders here require that foreign workers be paid "the same level of minimum benefits, wages, and working conditions which must be offered to U.S. workers[.]" 20 C.F.R. § 655.122(a).

71.         The contracts also promised that "[i]f the applicable AEWR or prevailing wage is adjusted during the contract period, and that new rate is higher than the highest of the AEWR, the prevailing wage, the collective bargaining rate, the Federal minimum wage, or the State minimum wage, the employer will increase the pay of all employees in the same occupation to the higher rate no later than the effective date of the adjustment."

72.         Federal regulations specify that the median wage using the "wage component of the BLS Occupational Employment Statistics Survey" for the job opportunity is appropriately considered the prevailing wage. 20 C.F.R. § 655.10(b)(2).

73.         The area of intended employment in Defendants' employment contracts was the South Georgia nonmetropolitan area.

74.         In the employment contracts Defendants also promised that workers would be paid their transportation expenses and subsistence expense for travel from the places where the workers have come and return travel each year as required by 20 C.F.R. § 655.122(h).

75.         The minimum daily subsistence amounts were published in the Federal Register and were incorporated into Plaintiffs' and other similarly-situated workers' contracts.

76.     Finally, by participating in the H-2A program and importing workers from abroad, the Defendants are bound to abide by the wage and payroll requirements, including those at 20 C.F.R. §§ 655.120(a), 655.122(a), 655.122(c), 655.122(j), 655.122(k), 655.122(l), and 655.103(b).

77.     With the exception of changes in the dates of employment, and annual changes in the wage rates and subsistence amounts offered, the employment contracts created by the job orders were nearly identical to each other.

## V.  STATEMENT OF FACTS

78.     In each year relevant to this Complaint, Defendants imported H-2A workers under the terms of job orders prepared by Defendants and submitted to the U.S. Department of Labor for approval.

79.     Defendant Hamilton Growers filed a job order in 2018 proposing to employ 232 workers from March 1, 2018 through December 31, 2018.

80.     Defendant Hamilton Growers filed a job order in 2018 proposing to employ 90 workers from March 10, 2018 through June 30, 2018.

81.     Defendant Hamilton Growers filed a job order in 2018, proposing to employ 131 workers from April 2, 2018, through December 31, 2018.

82.     Defendant Hamilton Growers filed a job order in 2018, proposing to employ 380 workers from May 1, 2018 through December 31, 2018.

83.     Defendant Hamilton Growers filed a job order in 2018 proposing to employ 79 workers from October 2, 2018 through November 15, 2018.

84.     Plaintiffs and others similarly-situated were employed under the terms of a 2018 job order listed above.

85.      Defendant Hamilton Growers filed at least five job orders in 2019 for work in Georgia:

    a.    A job order, numbered GA 3011341789 by the employment service, with employment dates of March 1, 2019 through December 31, 2019 for three hundred fifty-six workers under the job title "Farm Workers";

    b.    A job order, numbered GA 3011237349 by the employment service, with employment dates of March 1, 2019 through June 30, 2019 for one hundred twenty workers under the job title "Farm Workers & Laborers" listing occupation code 45-2092-02;

    c.    A job order, numbered GA 3137684575 by the employment service, with employment dates of April 1, 2019 through December 15, 2019 for two hundred and two workers under the job title "Farmworkers & Laborers" listing occupational code 45-2092-02;

    d.    A job order, numbered GA 3158706070 by the employment service, with employment dates of April 10, 2019 through June 30, 2019 for fourteen workers under the job title "Farm Workers";

    e.    And a job order with employment dates of October 1, 2019 through December 31, 2019 for one-hundred and twenty-eight workers with the job title "Farm Workers & Laborers."

86.      Plaintiffs and others similarly-situated were employed under the terms of a 2019 job order listed above.

87.      Defendant Hamilton Growers filed at least five 2020 job orders for work in Georgia:

a.   A job order with employment dates of March 2, 2020 through December 31, 2020 for three-hundred sixty-five workers under the job title "Farm Workers";

b.   A job order with employment dates of March 2, 2020 through June 30, 2020 for one-hundred forty-nine workers under the job title "Farm Workers";

c.   A job order with employment dates of April 1, 2020 through December 15, 2020 for one hundred ninety-five workers under the job title "Farm Workers";

d.   A job order with employment dates of May 1, 2020 through November 15, 2020 for one hundred sixty-four workers under the job title "Farm Workers";

e.   A job order with employment dates of October 2, 2020 through December 31, 2020 for 128 workers under the job title "Farm Workers";

88.   Plaintiffs and others similarly-situated were employed under the terms of a 2020 job order listed above.

89.   Defendant Hamilton Growers filed seven or more 2021 job orders for work in Georgia:

a.   A job order with employment dates of March 1, 2021 through December 31, 2021 for sixty-seven workers under the job title "Farm Laborers";

b.   A job order with employment dates of March 1, 2021 through December 31, 2021 for 367 workers under the job title "Farm Workers";

c.   A job order with employment dates of March 4, 2021 through December 4, 2021 for 184 workers under the job title "Farm Workers";

d.   A job order with employment dates of March 1, 2021 through July 3, 2021 for 155 workers under the job title "Farm Workers";

e.    A job order with employment dates of March 29, 2021 through December 4, 2021 for 184 workers under the job title "Farm Workers";

f.    A job order with employment dates of May 1, 2021 through November 15, 2021 for 160 workers under the job title "Farm Workers"; and

g.    A job order with employment dates of October 4, 2021 through December 31, 2021 for 145 workers under the job title "Farm Workers."

90.    Plaintiffs and others similarly-situated were employed under the terms of a 2021 job order listed above.

91.    Defendant Hamilton Growers filed seven or more 2022 job orders for work in Georgia:

a.    A job order with employment dates of March 1, 2022 through December 31, 2022 for 291 workers under the job title "Farm Workers";

b.    A job order with employment dates of March 1, 2022 through December 31, 2022 for 64 workers under the job title "Farm Laborers";

c.    A job order with employment dates of March 1, 2022 through December 31, 2022 for 16 workers under the job title "Field Workers";

d.    A job order with employment dates of April 4, 2022 through July 1, 2022 for 157 workers under the job title "Farm Workers";

e.    A job order with employment dates of April 4, 2022 through December 3, 2022 for 179 workers under the job title "Farm Workers";

f.    A job order with employment dates of May 2, 2022 through November 12, 2022 for 126 workers under the job title "Farm Workers"; and

g.    A job order with employment dates of October 4, 2022 through December 31, 2022 for 146 workers under the job title "Farm Workers."

92.    Plaintiffs and others similarly-situated were employed under the terms of a 2022 job order listed above.

93.    Defendant Hamilton Growers filed eight 2023 job orders for work in Georgia:

a.    A job order with employment dates of February 17, 2023 through July 12, 2023 for 300 workers under the job title "Farm Diversified" and listing the occupational code of 45-2092.00;

b.    A job order with employment dates of March 1, 2023 through December 30, 2023 for 249 workers under the job title "Farm Workers";

c.    A job order with employment dates of March 1, 2023 through December 30, 2023 for twelve positions under the job title "Field Workers";

d.    A job order with employment dates of March 1, 2023 through December 30, 2023 for forty-one positions under the job title "Field Laborers";

e.    A job order with employment dates of March 13, 2023 through July 1, 2023 for 159 workers under the job title "Farm Workers";

f.    A job order with employment dates of April 17, 2023 through December 2, 2023 for 179 positions under the job title "Farm Workers";

g.    A job order with employment dates of May 15, 2023 through November 11, 2023 for 183 positions under the job title "Farm Workers"; and

h.    A job order with employment dates of October 2, 2023 through December 30, 2023 for 150 positions under the job title "Farm Workers."

94.    Plaintiff Castillo-Olguin and others similarly-situated were employed under the terms of a 2023 job order listed above.

95.    In each year from 2018 through the present, Defendants also submitted one or more job orders for work at a packing shed in Evensville, Tennessee which they operated.

96.    Plaintiffs Garcia-Ramos and Castillo-Olguin also worked under the terms of one or more of the Tennessee job orders.

97.    Plaintiff Garcia-Ramos was offered work as a forklift operator and Plaintiff Castillo-Olguin was offered work as a maintenance technician.

98.    The paystubs Defendants prepared for forklift operators listed as their principal activity "Forklift Hourly -H-2A."

99.    The paystubs Defendants prepared for maintenance worker listed as their principal activity "Maintenance Hourly – H2A."

100.    Plaintiffs and others similarly situated were promised in the written employment contract, among other things:

    a.    Pay for all hours worked;

    b.    Pay at the prevailing hourly wage if it was higher than the state or federal minimum wage or the federally mandated agricultural Adverse Effect Wage Rate;

    c.    Pay that was equal for domestic and foreign workers performing the same work activities;

    d.    A copy of the work contract; and

    e.    Pay that complied with all federal employment laws, including the Fair Labor Standards Act.

101.    The terms of the H-2A employment contracts formed the applicable disclosures of the

terms and conditions of employment.

102.    The terms of the required disclosure promised to Plaintiffs, and others similarly situated, formed a working arrangement enforceable under federal law.

103.    In violation of the working arrangement, Defendants did not pay Plaintiffs and others similarly situated in compliance with the applicable written employment terms.

104.    On information and belief, Defendants did not pay prevailing wages to any employee including all forklift drivers, graders, shipping clerks, mechanics and maintenance employees.

105.    Defendants knew the requirement to pay workers in corresponding employment the same wage for the same work.

106.    Defendants sought to avoid paying a prevailing wage to packers, industrial truck operators, mechanics, welders, shipping clerks, and maintenances employees by including them within H-2A agricultural job orders for farm worker or field labor positions.

107.    To hide the non-agricultural nature of the forklift driving positions, mechanic and the maintenance positions, Defendants sought to hide the extent to which these separate and distinct positions existed within its larger agricultural workforce.

108.    Similarly, to hide the non-agricultural nature of the grading positions, Defendant Hamilton Growers claimed that the positions were "exempt from federal overtime pay" when in fact Defendants knew that the positions involved the packing of outside produce and repacking of purchased produce both of which made the positions non-agricultural.

109.    The Occupational Code for the work performed by Plaintiff Garcia-Ramos and others operating industrial trucks or forklifts was 53-7051 for the position of "Industrial Truck and Tractor Operators."

110.    The median prevailing wage required for industrial truck operators in the South Georgia

nonmetropolitan area was $14.03 beginning in July of 2018, $14.77 beginning in July of 2019,

$16.12 beginning in July of 2020, $16.62 beginning in July of 2021, $17.57 beginning in July of

2022, and $17.92 beginning in July of 2023.

111.    The Occupational Code for the work performed by Plaintiff Castillo-Olguin and others

maintaining equipment was 49-9043 for the position of "Maintenance Workers, Machinery."

112.    The median prevailing wage required for maintenance workers in the South Georgia

nonmetropolitan area was $16.61 beginning in July of 2018, $19.10 beginning in July of 2019,

$18.86 beginning in July of 2020, $17.70 beginning in July of 2021, $23.53 beginning in July of

2022, $27.25 beginning in July of 2023.

Recruitment, Hiring, and Expenses of Plaintiffs

113.    In each year between 2018 and 2023, Defendants recruited the Plaintiffs and other

similarly-situated workers in Mexico through a network of Mexico-based recruiters and through

Defendants' U.S.-based agents and supervisors.

114.    Defendants through these recruiters and agents made employment offers to the

Plaintiffs and others similarly-situated to hold positions in their U.S packing operations.

115.    The recruiters were directed by Defendants' U.S.-based supervisors including

Brenda Palomares and Maria de Jesus Rivera.

116.    Plaintiff Garcia-Ramos, Castillo-Olguin and other similarly-situated workers

incurred various immigration and travel-related expenses in order to come to work for

Defendants in Georgia.

117.    In order to comply with the Defendants' hiring processes, Plaintiff Garcia-Ramos,

Castillo-Olguin, and other similarly-situated workers traveled, at their own expense to the U.S.

Consulate in Monterrey, Nuevo Leon, Mexico, for the consular interviews necessary to obtain H-2A visas.

118.         Plaintiffs and other similarly-situated workers then incurred further expenses in connection with their work for Defendants.  They paid their expenses in Monterrey, Mexico while they completed visa application forms, attended consular interviews, and waited for their visa applications to be processed and for their visas to be issued.

119.         Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers travelled from Monterrey, Mexico, or Nuevo Laredo, Mexico, to Defendants' operations in Georgia again paying their own expenses, with the exception of the cost of bus travel which was provided by Defendants.

120.         For each year in which they obtained an H-2A visa, Plaintiffs and others similarly-situated each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

121.         Plaintiffs and others similarly-situated were also required to pay their own travel, lodging and subsistence expenses during their return journey from Georgia back to the locations in Mexico from which they had come to work for Defendants.

122.         The expenditures set out in paragraphs 116 through 121 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

123.         The expenditures described above were made before receipt of the workers' first paychecks in each contract period in which they worked or subsequent to their final paycheck and acted to reduce the wages received free and clear.

124.         Defendants failed to adequately reimburse Plaintiffs and other similarly-situated workers as required by law during the first and final workweeks for the costs described above,

resulting in these workers' first and final week's wages falling well below the guaranteed minimum wage.

125.        Defendants did not reimburse Plaintiffs and other similarly-situated workers at the 50 percent point of these workers' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed, as was required by their employment contracts.

126.        As a condition of continued employment, Plaintiff Garcia-Ramos, and others similarly situated, were required each season to remain working for Defendants and to only return to Mexico, at their supervisor's direction, shortly before their visa appointment, typically in mid-March. Plaintiff Garcia-Ramos's return travel, and upon information and belief, that of others similarly-situated, was not paid for or reimbursed by Defendants unlawfully reducing Plaintiff Garcia-Ramos' earnings, and those of others similarly situated, below the federal and contractual minimums.

127.        Plaintiffs primarily operated forklifts or performed maintenance on packing equipment and were expressly hired for these positions.

<u>Packing Shed Work</u>

128.        Upon information and belief, during the 2019 through 2023 seasons, Defendants packed produce that was not grown in Defendants' own farming operations and purchased produce from other producers ("outside produce").  This outside produce was re-packed in Defendants' packing shed for distribution.

129.        Plaintiffs Garcia-Ramos and others similarly-situated unloaded, loaded, moved or prepared bills of lading and labeling for outside produce in Defendants' packing sheds during the seasons they worked.

130.        Plaintiff Castillo-Olguin and others similarly situated maintained equipment used to process or transport the outside produce during the seasons they worked.

131.        Other workers similarly-situated graded, packed or operated packing equipment to process and prepare the outside produce for shipment.

132.        The Plaintiffs and others similarly-situated, regularly worked in the Defendants' packing sheds for more than forty hours in a workweek.

133.        The Plaintiffs and others similarly-situated, did not receive one and a half times their regular rate of pay for all hours above forty worked during a workweek in Defendants' packing sheds.

134.        Defendants were on notice of their FLSA obligations due in part to prior litigation and due to notices and correspondence they had received.

135.        Defendant Hamilton Growers was on notice of its duty to investigate its compliance with the Fair Labor Standards Act due to prior suits in 1998, 2003, 2012, 2015 and 2018.

136.        Defendants knew of or showed reckless disregard for their FLSA obligations by failing to fully reimburse Plaintiffs and other similarly-situated workers for expenses incurred for Defendants' benefit and by failing to pay overtime for hours worked in excess of forty while packing outside produce.

FLSA COLLECTIVE ALLEGATIONS

137.        Plaintiffs brings their FLSA claims on behalf of themselves and all other similarly-situated workers who may opt in to this action pursuant to 29 U.S.C. § 216(b) and worked for Defendants in the preceding three years.

138.        Plaintiffs and the other similarly-situated workers were subject to the same

policies and practices of Defendants regarding wages, deductions and reimbursement as detailed

above.

139.        Defendants prepared and issued wage payments from the same office and

according to the same policies which Plaintiffs contend violated the Fair Labor Standards Act's

wage provisions.  Specifically, Defendants failed to pay the Plaintiffs and other similarly-situated

workers as required by the FLSA, 29 U.S.C. § 201 et seq.

140.        Plaintiffs are currently unaware of the identities of all of the employees who

would be members of the FLSA opt-in class, but this information is readily ascertainable from

Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list –

including last known addresses, telephone numbers, and email addresses if known – of all

individuals who worked for Defendants in the maintenance, processing, grading, packaging,

labeling, loading or unloading within Defendants' packing sheds.


RULE 23 CLASS ALLEGATIONS

141.        The claims set forth in Counts III, IV and V are brought by the Plaintiffs,

specified in those counts, on behalf of themselves and all other similarly-situated persons

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

142.        **Proposed Class.** Plaintiffs brings this action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following Class:

    a.        During the time period of 2018 through the present, all individuals who

        performed work for Defendants in Georgia or Tennessee grading or packing

        produce, operating an industrial-truck (forklift), shipping produce, maintaining

23

equipment or maintaining vehicles; and

b.      During the time period of 2018 through the present, all workers in packing shed positions who performed work for Defendants in Georgia or Tennessee outside the time period of an H-2A visa.

143.    There is a well-defined community of interest in the litigation and the class is ascertainable.

144.    The Plaintiffs seek to represent in Count III a class consisting of all H-2A temporary foreign workers in packing, forklift, maintenance, or driving positions who were employed pursuant to the job orders filed by Defendants for the 2018 thorough 2023 calendar years.

145.    The Plaintiffs seek to represent in Count IV a class consisting of all non-H2A workers who were employed in Defendants' packing shed and shipping operations with a sub-class of those who were charged for housing by Defendants or Defendants' supervisory employees or agents for the years 2019-2023.

146.    The Plaintiffs seek to represent in Count V a class consisting of all workers employed in the years 2019-2023 in Defendants' packing shed, maintenance and shipping operations in positions covered by the terms of an H-2A job order.

147.    The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the classes is known only to the Defendants.  However, the sub-class for Count III is believed to consist of at least 50 individuals. The sub-class in Count IV is believed to consist of in excess of 30 individuals.  The sub-class in Count V is believed to consist in excess of 50 individuals. All classes are comprised primarily of indigent foreign workers from Mexico.  The great majority of class members are not fluent in

English and are unfamiliar with the American judicial system.  The small size of the individual claims and the indigence of the class members makes the maintenance of separate actions by class members economically infeasible.

148.     There are questions of law and fact common to the class including whether Defendants failed to reimburse workers for their expenses in coming to work for Defendants; whether Defendants made unlawful deductions from the class' paychecks for items which were for the benefit of Defendants as employers; whether Defendants failed to comply with federal wage laws as contractually promised; whether Defendants failed to provide wage statements with contractually promised wage rates; whether Defendants provided wage statements that failed to contain information on hours and deductions as required by H-2A regulations; whether Defendants charged workers for residing in housing facilities operated by Defendants; and whether Defendants misrepresented the work period to the detriment of Plaintiff Garcia-Ramos and others similarly situated.

149.     The claims of the Plaintiffs are typical of the class members and predominate over claims affecting only individual class members.

150.     The Plaintiffs have the same interests as the class members and will fairly and adequately represent the interests of the class.

## COUNT I

### FAIR LABOR STANDARDS ACT – MINIMUM WAGE

151.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 140 above by reference.

152.      This Count sets forth a claim by Plaintiffs Garcia-Ramos, Castillo-Olguin and the Opt-in Plaintiffs for damages for Defendants' violations of the minimum wage provisions of the FLSA pursuant to 29 U.S.C. § 216(b).

153.      Plaintiff Garcia-Ramos asserts this claim for the 2021 and 2022 seasons.

154.      Plaintiff Castillo-Olguin asserts this claim for the 2021, 2022 and 2023 seasons.

155.      As detailed above, Defendants failed to pay Plaintiffs and others similarly-situated at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

156.      The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 117 through 124 above, which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first week of work or after their last week of work. When these expenses were subtracted from the Plaintiffs' and Opt-in Plaintiffs' first week's pay and/or last week's pay, as required by law, their earnings fell well below the required average minimum hourly wage for that pay period.

157.      The violations also resulted, in part, from Defendants' collection of fees from Plaintiffs and others similarly situated for housing Defendants were legally obligated to provide without cost.

158.      Defendants' violations set out in this Count were willful within the meaning of FLSA as Defendants had knowledge of their FLSA obligations and failed to comply with them.

159.      Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and the Opt-in Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they

were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

160.     Plaintiffs and the Opt-in Plaintiffs also seek, and are entitled to, reasonable attorneys' fees incurred by their counsel and costs of court pursuant to 29 U.S.C. § 216(b).

<u>**COUNT II**</u>

**FAIR LABOR STANDARDS ACT – OVERTIME**

161.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 140 above by reference.

162.     This Count sets forth a claim by Plaintiffs and the Opt-in Plaintiffs for declaratory relief and damages for Defendants' violations of the overtime provision of the FLSA, pursuant to 29 U.S.C. § 216(b).

163.     Plaintiffs Garcia-Ramos, Castillo-Olguin, and others similarly situated employed in Defendants' produce packing and shipping operations assert this claim for each season they worked in the years 2021, 2022, and 2023.

164.     The Plaintiffs and others similarly situated employed in Defendants' produce packing operations worked long hours for Defendants without receiving the protections of the maximum hours provision of the FLSA, 29 U.S.C. § 207.

165.     Defendants employed the Plaintiffs and others similarly situated in their packing, shipping and maintenance operations to move, label, process, pack, load, maintain processing equipment, and prepare for transport outside produce in workweeks when Plaintiffs and others similarly situated were suffered or permitted to work more than 40 hours, without provision of one and a half times their regular rate of pay for those hours worked in excess of 40 in a workweek.

166.     Defendants violated Plaintiffs' rights and those of others similarly situated by employing them for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of such hours at a rate not less than one and a half times the promised regular rate as required by 29 U.S.C. § 207.

167.     These violations also occurred, in part, through unreimbursed expenses incurred by Plaintiffs and others similarly situated which were properly Defendants' business expenses. These unreimbursed expenses or paystub deductions operated to reduce the wages of Plaintiffs and others similarly situated below the FLSA mandated wages.

168.     Defendants had been investigated by the United States Department of Labor for violations of the overtime provisions of the Fair Labor Standards Act and were aware of the requirement to pay overtime.

169.     Defendants' violations as set forth in this Count were willful within the meaning of the FLSA.

170.     As a result of Defendants' violations of the FLSA, each of the Plaintiffs and the Opt-in Plaintiffs are entitled to recover the amount of their unpaid overtime wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b).

171.     Plaintiffs and the Opt-in Plaintiffs also seek, and are entitled to, reasonable attorneys' fees incurred by their counsel and costs of court pursuant to 29 U.S.C. § 216(b).

## COUNT III

### BREACH OF CONTRACT

172.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 150 above by reference.

173.     This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the rate of pay provisions, transportation provisions, and assurances provision contained in Plaintiffs' employment contracts, including the terms set forth in paragraph 66 above, which created a contractual promise to pay Plaintiffs and others similarly situated the highest of the applicable FLSA wage, AEWR, or prevailing wage for each compensable hour of work in a workweek, and the terms set forth in paragraph 74 above which promised transportation and subsistence from and back to the place from which the worker came.

174.     This claim is brought by Plaintiffs on behalf of themselves and others similarly-situated pursuant to Fed. R. Civ. P. 23(b)(3).

175.     Plaintiff Castillo-Olguin and others similarly-situated assert this claim for the 2018, 2019, 2020, 2021, 2022 and 2023 seasons. Plaintiff Garcia-Ramos asserts this claim for the 2019 through 2023 seasons.

176.     Defendants, through their agents, offered employment on the terms and conditions set out in the 2018 – 2023 job orders as described in paragraphs 79 –93 above.

177.     The Plaintiffs and others similarly-situated accepted Defendants' offers.

178.     Defendants breached their H-2A employment contracts with the Plaintiffs and others similarly-situated by failing to pay them at least the highest applicable wage for each compensable hour of work in a workweek, as set forth in paragraphs 66-71 above.

179.     Defendants breach included taking unlawful deductions and failing to reimburse travel and subsistence expenses incurred prior to the first work week or after the last work week in each season.

180.     Defendants also breached their H-2A employment contracts with Plaintiffs Garcia-Ramos and Castillo-Olguin and others similarly-situated by failing to reimburse them, at

the 50 percent point of their employment contracts, for all inbound transportation and subsistence expenses not previously reimbursed.

181.     Defendants breached their obligation to provide return transportation as required by the contract's incorporation of the federal regulatory requirement found at 20 C.F.R. § 655.122(o)(1), which requires that the employer "return the worker, at the employer's expense, to the place from which the worker (disregarding intervening employment) came to work for the employer[.]"

182.     As a direct consequence of Defendants' breaches as set forth in this Count, the Plaintiffs and others similarly-situated have suffered damages.

183.     Defendants are liable to the Plaintiffs and a class of similarly-situated individuals for the damages that arose naturally and according to the usual course of things from Defendants' breaches as set forth in this Count, pursuant to federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages and reimbursement amounts, damages arising from the delay, and prejudgment interest.

## COUNT IV

## AGRICULTURAL WORKER PROTECTION ACT

184.     This count sets for a claim under the Agricultural Worker Protection Act for breach of the working arrangement, wage payment, record keeping and disclosure provisions.

185.     Plaintiff Garcia-Ramos and others similarly-situated bring this claim for the 2019, 2020, 2021, 2022 and 2023 seasons on behalf of himself and others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3).

186.        Plaintiff Garcia-Ramos and others similarly-situated bring this claim for the 2019, 2020, 2021, 2022 and 2023 seasons and for those similarly situated who worked each season for the time periods in which they were required to work after expiration of the H-2A job order—typically from January through March of each year.

187.        Plaintiff Garcia-Ramos was a migrant agricultural worker who resided in one of Defendants' trailer park labor camps in the 2019 through 2022 seasons.

188.        Plaintiff Garcia-Ramos was supervised and reported to Defendants' supervisors, while employed as a migrant agricultural worker.

189.        The parties had a working arrangement which was contained in the applicable job order as detailed in paragraphs 61 to 94.

190.        Plaintiff Garcia-Ramos, and others similarly situated assert this claim for violations of the wage payment requirements of the AWPA, 29 U.S.C. § 1822(a) for Defendants' failure to pay Plaintiffs Garcia-Ramos and others similarly-situated all wages owed when due.

191.        Plaintiff Garcia-Ramos and others similarly situated also assert violations of the record keeping requirements of the AWPA, 29 U.S.C. § 1821(d).   Defendants provided incomplete and incorrect wage statements and failed to record all deductions taken from wages and the reasons for those deductions.

192.        Defendants' paystubs violated the AWPA's recordkeeping provisions by failing to list the payroll details required by the AWPA including the correct hourly rate, all deductions, and the total wages earned.

193.        Plaintiff Garcia-Ramos and others similarly situated also assert this claim for Defendants violation of the working arrangements provision of the AWPA found at 29 U.S.C. § 1821(c).

194.        Plaintiff Garcia-Ramos and others similarly situated also assert this claim for Defendants violation of the disclosure provisions of the AWPA found at 29 U.S.C. § 1821(a).

195.         Defendants further violated the AWPA by failing to pay Plaintiff Garcia-Ramos as detailed in paragraph 66 through 75, and others similarly-situated their wages as required by the H-2A contract, H-2A program rules, and/or the FLSA including prevailing wages for the job performed and overtime wages in the packing shed and shipping and receiving operations.

196.        Defendants, without adequate justification, violated the working arrangement when they failed to pay Plaintiff Garcia-Ramos and others similarly situated the prevailing wage for their work activities.

197.        Defendants also violated the AWPA by collecting or allowing to be collected, through their agents, housing charges that were undisclosed and which unlawfully reduced the wages of Plaintiff Garcia-Ramos and others similarly-situated. These housing deductions were undisclosed in the H-2A contract, went to Defendants or persons affiliated with Defendants, reduced wages for Plaintiff Garcia-Ramos and others similarly-situated and violated the working arrangement obligation made in the written contract, and required by federal regulation, to provide housing at no cost to those "who are not reasonably able to return to their residence within the same day," 20 C.F.R. § 655.122(d)(1).

198.        Defendants also violated the AWPA working arrangement by failing to provide return travel to Plaintiffs Garcia-Ramos and others similarly situated in breach of the working arrangement formed by the H-2A job order contract.

199.        Defendants are liable to Plaintiffs Garcia-Ramos and a class of similarly situated workers for the violations.

200.         Pursuant to 29 U.S.C. § 1854(c), as a result of Defendants' violations of the AWPA set forth in this Count, Plaintiff Garcia-Ramos and others similarly situated are entitled to recover statutory damages of up to $500 per individual per violation or the amount of their actual damages.

**COUNT V**

**FRAUD**

201.         This count sets for a claim under the common law of fraud and is brought as a class action pursuant to Fed. R. Civ. P. 23(b)(3) for Defendants' fraudulent misrepresentations to the government to procure H-2A workers for the 2018 through 2023 seasons.

202.         This claim is brought by Plaintiff Castillo-Olguin for the years 2018 through 2023 and by Plaintiff Garcia-Ramos for the years 2019 through 2023 and for a class of similarly situated workers.

203.         For each year at issue, Defendants procured H-2A workers by submitting to the U.S. Department of Labor petitions and job orders and petitions to import foreign workers.

204.         Each job order and petition represented to the U.S. Government that the position was one for farm laborers.

205.         These representations were made in the job orders identified in paragraphs 79 to 95 of this complaint.

206.         The false representations included those contained in the "Occupational Code" and "Occupational Title" sections of the job orders identified above when Defendants knew they were hiring for specific skilled positions in grading, industrial truck operation, maintenance and shipping for which higher prevailing pay rates were required.

207.        The false representations also included, in the 2021, 2022, and 2023 job orders, the claim that positions were "exempt from federal overtime pay requirements" when Defendants knew they were packing and shipping outside produce for which overtime pay was owed.

208.        The representations were required to be made truthfully to the U.S. Government for the protection of U.S. and H-2A workers.

209.        Defendants knew their representations to the U.S. Government were false when made.

210.        Defendants made their representation with the intention to induce the U.S. Government to rely on the representation and approve the petitions for temporary foreign workers.

211.        The U.S. Government did in fact rely on the representations and approved the petitions for foreign workers in each applicable season.

212.        Plaintiffs and a class of similarly-situated individuals are in a special class of individuals who were harmed by Defendants' representations.  Plaintiffs and others similarly-situated relied upon the lawful operation of the H-2A program, of which Defendants' false representations were a part, to their detriment.

213.        Plaintiffs are entitled to damages, including unpaid wages, for the harm caused them by Defendants' false representations to the U.S. Government.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)     Certify this case as a class action in accordance with Fed. R. Civ. P. 23(b)(3) with respect to Counts III, IV, and V;

(b)    Under Count I:

    1.    Declare that Defendants have willfully violated the FLSA as specified in in Count I above;

    2.    Declare this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into the action;

    3.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Opt-In Plaintiff in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    4.    Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

(c)    Under Count II:

    1.    Declare that Defendants have willfully violated the FLSA as specified in Count II;

    2.    Declare this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allow employees to opt into the action;

    3.    Grant judgment against Defendants jointly and severally, and in favor of each Plaintiff and Opt-in Plaintiff in the amount of his or her respective unpaid wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    4.    Award Plaintiffs their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

(d)    Under Count III:

    1.    Declare that Defendants have breached their employment contracts with Plaintiffs and others similarly-situated as specified in Count III;

    2.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and the members of the class, in the amount of their damages that arose naturally and according to the usual course of things from such breach and such as

the parties contemplated, when the contract was made, as the probable result of such breach;

(e)     Under Count IV:

1.     Declare that Defendants have violated the Migrant & Seasonal Agricultural Worker Protection Act as described above;

2.     Grant judgment against Defendants, jointly and severally, and in favor of Plaintiff Garcia-Ramos and the members of the class, in the amount of their actual or statutory damages for Defendants breach of the (i) wage payment; (ii) recordkeeping; and (iii) working arrangement provisions of the AWPA.

(f)     Under Count V:

1.     Declare that Defendants' representations were fraudulent as described above;

2.     Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs Garcia-Ramos, Castillo-Olguin and the members of the sub-class, in the amount of wages owed to each individual at the prevailing hourly rate for the work performed and at 150% of that rate for overtime compensation owed; and such other damages as may be found resulting from Defendants' fraud;

(g)     Award Plaintiffs and Opt-In Plaintiffs pre and post-judgment interest as allowed by law;

(h)     Cast all costs upon Defendants; and

(i)     Award Plaintiffs, Opt-In Plaintiffs, and others similarly-situated such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this _29th_ day of May, 2024,

  s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985

Dawson Morton, LLC
1808 Sixth St.
Berkeley, CA  94710
Phone: (404) 590-1295
dawson@dawsonmorton.com

*Attorney for Plaintiffs*