# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| ARNULFO GARCIA-RAMOS, PABLO CASTILLO-OLGUIN, and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | |
| **)** | CIVIL ACTION |
| v. ) ) | FILE NO.: 7:24-cv-00054-WLS |
| SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; and WKW, LLC, ) ) ) ) ) ) ) | JUDGE W. LOUIS SANDS CLASS ACTION |
| Defendants. ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY CERTIFICATION OF FLSA COLLECTIVE ACTION,
FOR NOTICE TO SIMILARLY SITUATED WORKERS,
AND FOR DISCLOSURE OF CONTACT INFORMATION**

Plaintiffs worked operating forklifts, preparing shipping documents, and maintaining machinery in Defendants' warehouses in Georgia and Tennessee. (Garcia-Ramos Decl. ¶¶ 3-4) (attached as Ex. A); (Castillo-Olguin Decl. ¶ 3) (attached as Ex. B). Plaintiffs worked long hours without the benefit of overtime compensation. (Ex A – Garcia-Ramos Decl. ¶¶ 7-8); (Ex B - Castillo-Olguin Decl. ¶ 5). Plaintiffs worked in a warehouse that processed outside produce purchased from other growers and with equipment that moved that produce. (Ex. A - Garcia-Ramos Decl. ¶ 5); (Ex. B – Castillo-Olguin Decl. ¶ 4); (Hamilton Growers Dep. at 241:5-21, 243:2-244:13) (attached as Ex. D) (between $20-$25 million in outside produce purchased annually). Defendants admit they did not pay overtime to their warehouse workers. (Ex. D - Hamilton Growers Dep. at 144:22-148:25); (Def.'s Resp. to Pls.' Req. for Admis. No. 1)

(attached as Ex. E). Defendants claim that because Plaintiffs were H-2A workers, and paid an H-2A worker wage rate, no overtime compensation was owed. (Ex. D - Hamilton Growers Dep. 147:22-25.) No such exception exists in the law. While whether Defendants failure to pay overtime to all of the warehouse workers is excused is a merits issue—at this point it is clear that Plaintiffs, and others who held warehouse positions in Georgia or in Tennessee, were subject to the same alleged FLSA violation and the violation was a result of Defendants' policy of not paying overtime to warehouse workers.

Plaintiffs therefore move the Court for an order finding that they are similarly situated to Defendants' other warehouse employees and authorizing the sending of notice. Plaintiffs seek Court approval for a notice to be issued to similarly situated workers defined as:

> **All individuals who were employed by Defendants as forklift operators, maintenance workers, or sanitation workers in the packing shed warehouses in 2022, 2023, or 2024.**

Plaintiffs additionally move the Court to order Defendants to provide Plaintiffs the names, addresses (U.S. and foreign), email addresses, and telephone numbers (U.S., foreign, cell phone, and WhatsApp) of the similarly situated warehouse workers within fourteen (14) days in order to assist with the issuance of Notice.

**ARGUMENT**

The FLSA's collective action mechanism promotes resolution of similar claims in one action, advances the remedial goals of the FLSA, and provides essential protections for workers. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting under parallel ADEA collective action mechanism that the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity"). "The 'opt-in' provisions of section 16(b) of the Act convey upon a named plaintiff . . . the right to try to seek damages in the amounts allegedly due and not paid . . . on behalf of himself or

herself and also on behalf of other employees 'similarly situated.'" *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

      Here, Plaintiffs worked in Defendants' warehouse operations maintaining equipment or moving products and packaging. (Ex A – Garcia-Ramos Decl. ¶¶ 4-6); (Ex. B – Castillo-Olguin Decl. ¶ 4). The proposed opt-ins, including current opt-in plaintiff Rafael Joaquin-Guerrero, also worked in Defendants' warehouse operations doing the same jobs. (Joaquin-Guerrero Decl. ¶ 3) (attached as Ex. C). The proposed opt-in plaintiffs also worked with outside produce and packaging. (Ex. C – Joaquin-Guerrero Decl. ¶¶ 4-6). Plaintiffs and others similarly situated were subject to the same policy that denied all of the warehouse workers overtime. (Ex A. – Garcia-Ramos Decl. ¶¶ 7-8); (Ex B – Castillo-Olguin Decl. ¶ 5); (Ex. C Joaquin-Guerrero Decl. ¶ 7); (Ex. E - Def.'s Resp. to Pls.' Req. for Admis. No. 1). Regarding overtime, Defendants' representative testified that overtime was not paid "under those designations that you just named, forklift, sanitation and maintenance, no. They shouldn't have been." (Ex. D - Hamilton Growers Dep. at 144:25-145:6.)[1] Plaintiffs allege, and Defendants admit, other warehouse workers suffered the same underpayment of wages as a result of Defendants' uniform decision to not pay overtime wages. (Ex. D - Hamilton Growers Dep. at 145:4-6.) Such a decision is appropriate for collective action treatment. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1264 (11th Cir. 2008) (affirming collective action certification where defendant "uniformly exempted all store managers from overtime pay requirements"); *Morrison v. G&S Glass & Supply, Inc.*, No. 2:19-cv-01990-SGC, 2021 U.S. Dist. LEXIS 188406, at *15-16 (N.D. Ala. Sep. 30, 2021) (finding workers similarly situated where they "held similar positions and all alleg[ed] violations of the FLSA due to underpayment of overtime wages" based on a company policy).

---

[1] Warehouse employees, like those at issue here, are owed overtime wages where the operator packs other farmers produce. *Acosta v. Bland Farms Prod. & Packing, LLC*, 767 F. App'x 862, 864 (11th Cir. 2019) (holding "Bland Farms' packing shed employees were not employed in agriculture when they packed the growers' onions. Those employees were therefore entitled to overtime pay, and we affirm the district court's award of back wages.")

This Court should preliminarily certify Plaintiffs' proposed collective action and order the notice and opt-in period requested.

**I.        Plaintiffs Surpass the Standard for Conditional Certification.**

A two-stage notice process applies to FLSA certification and notice. *See, e.g.*, *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240 (11th Cir. 2003) ("a two-tiered procedure that district courts should use"); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (endorsing "two-tiered approach to certification of § 216(b) opt-in classes"); *Morgan s*, 551 F.3d at 1260 ("a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase"). The two-stage process is "solely for notice purposes" and is "a court-developed case management tool[.]" *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018).

The first stage is "notice" in which the plaintiffs move for conditional certification. "This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." *Morgan*, 551 F.3d at 1261. The notice stage occurs before discovery has been completed and "[c]ourts apply a 'fairly lenient standard' for determining whether the plaintiffs are truly similarly situated." *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007); *Willis v. Gov't Emps. Ins. Co.*, 2024 U.S. Dist. LEXIS 174988, at *23 (M.D. Ga. Sep. 26, 2024) (applying 'notice' stage standard "[b]ecause discovery is not complete"). "[T]he decision may be reexamined once the case is ready for trial[.]" *Morgan*, 551 F.3d at 1261. If the district court "conditionally certifies" the class, court-ordered notice is distributed to potential class members, who are given an opportunity to "opt in" to the suit by filing a FLSA consent form.

         A.        <u>Plaintiffs' Pleadings Show a Common Policy or Scheme.</u>

Workers are similarly situated if the pleadings articulate a FLSA claim that applies to the proposed collective action. *Hodges v. Osmose Utils. Servs., Inc.*, No. 3:21-cv-41-TCB, 2022 U.S. Dist. LEXIS 252586, at *10 (N.D. Ga. Sep. 13, 2022) ("Where the suit concerns allegations of the same nature, conditional certification is appropriate.") At this stage, if Plaintiffs articulate a

common plan or scheme that is sufficient for preliminary certification. *See, e.g., Jackson v. Fannie Mae*, 181 F. Supp. 3d 1044, 1052 (N.D. Ga. 2016) (noting burden met if plaintiffs show "all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation"); *Carey v. Guard Force Int'l, Inc.*, No. 24-cv-21942-JB, 2024 U.S. Dist. LEXIS 220816, at *9 (S.D. Fla. Dec. 2, 2024) (certifying collective action where "the alleged harm stems from a common practice applicable to security guards"). Here that common policy or scheme was Defendants' admitted refusal to pay overtime compensation to warehouse employees. (Compl. ¶¶128-133, 139) (ECF No. 1); (Ex. E - Def.'s Resp. to Pls.' Req. for Admis. No. 1).[2]

        B.      <u>Members of the Proposed Class Are Similarly Situated Because They Share Similar Legal and Factual Issues Concerning the Application of Defendants' Overtime Policies.</u>

The Eleventh Circuit requires that the plaintiffs and the proposed opt-in class share a common factual or legal issue. *Dybach*, 942 F.2d at 1567-68 (requiring that proposed collective shows workers are "similarly situated with respect to their job requirements and with regard to their pay provisions[.]"). This assessment is "whether employees are similarly situated--not whether their positions are identical." *Morgan*, 551 F.3d at 1260 (citation omitted); *see also Willis*, 2024 U.S. Dist. LEXIS 174988, at *24-25 ("To be 'similarly situated,' the 'plaintiffs may show either (1) that their job positions and duties are similar ... or (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme[.]'") (citations omitted). "Variations in specific job duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D.

---

[2] Plaintiffs also assert a claim for FLSA minimum wage violation due to unreimbursed travel expenses. ECF No. 1 at ¶¶ 152-156. Employers of workers who travel to the worksite owe reimbursement for expenses incurred in coming to or returning from the worksite. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1242 (11th Cir. 2002). And a FLSA minimum wage violation is caused where an employer does not adequately reimburse pre-employment expenses. *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1323 (S.D. Ga. 2019) (finding FLSA violation "by not reimbursing Plaintiffs for their pre-employment expenses"). However, Defendants' common overtime policy is sufficient here to conditionally certify this action for notice purposes.

Fla. 2007). Courts do not resolve factual disputes at this stage. *See, e.g., Abrams v. Mansari LLC*, No. 8:24-cv-949-CEH-TGW, 2024 U.S. Dist. LEXIS 232727, at *15 (M.D. Fla. Dec. 26, 2024) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D. Ga. 2008) ("Court does not reach the merits of the case" at conditional certification stage).

Here, Plaintiffs, Opt-in Plaintiffs, and the putative collective action share common factual issues, like Defendants' claim that it did not owe overtime to warehouse employees. (Ex. A – Garcia-Ramos Decl. ¶¶ 4-5, 7-8); (Ex. B – Castillo-Olguin Decl. ¶¶ 2-3, 5); (Ex. C – Joaquin-Guerrero Decl. ¶ 5, 7); (Ex. E - Def.'s Resp. to Pls.' Req. for Admis. No. 1). "The plaintiff only has to show that he is 'similarly situated to the putative class members with respect to the nature of the alleged violations.'" *Campo v. Granite Servs. Int'l*, 584 F. Supp. 3d 1337, 1346 (N.D. Ga. 2022) (citation omitted).

> 1. *Plaintiffs All Suffered Similar FLSA Violations as a Result of Defendants' Pay Practices That Applied Uniformly to All Warehouse Workers.*

"There is nothing unfair about litigating a single corporate decision in a single collective action[.]" *Morgan*, 551 F.3d at 1264. In their Complaint and declarations, Plaintiffs specifically describe the pay practices that they allege resulted in similar FLSA violations for themselves and their co-workers. (Ex. A - Garcia-Ramos Decl. ¶¶ 7-9); (Ex. B – Castillo-Olguin Decl. ¶¶ 5-6); (ECF No. 1 – Compl. ¶¶ 128-36, 138-39. Defendant, in a limited deposition taken for class certification purposes, admitted it treated all of these workers under the same policy. (Ex. D - Hamilton Growers Dep. at 144:25-145:6.) And Defendant admits a common policy—if the workers were paid the H-2A Adverse Effect Wage Rate, Defendant contends it did not have to pay them overtime. (Hamilton Growers Dep. at 147:22-25.) Because the FLSA requires overtime wages to be paid above forty hours in a workweek, an employer cannot refuse to pay overtime and avoid collective action certification. *Sizemore v. Grayhawk Homes Inc.*, No. 4:17-CV_161

(LJA), 2018 U.S. Dist. LEXIS 70943, at *5 (M.D. Ga. Apr. 27, 2018) (certifying collective action of constructions supervisors in part because "Defendants have admitted that they did not pay . . . time-and-a-half for hours worked above forty hours per week."). Here, Defendants' decision was to not pay overtime wages to warehouse employees and it underlies all of the individuals whose claims are at issue in the proposed collective action.

### 2. Other Workers Desire to Opt-in and Have Indicated their Intent by Filing Consent Forms.

The Eleventh Circuit has stated that "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in'" before ordering notice. *Dybach*, 942 F.2d at 1567-68. Courts, in the Eleventh Circuit applying this standard have found that previously filed opt-in consents forms are sufficient. *Brown v. 1888 Mills, LLC*, 339 F.R.D. 692, 698 (N.D. Ga. 2021) ("[T]hree opt-in consent forms . . . establish that there are other employees who would join the suit . . . ."); *Sizemore,* 2018 U.S. Dist. LEXIS 70943, at *6 (desire to opt-in met where "at least one non-named employee desires to join the suit"); *Blake v. Batmasian*, 197 F. Supp.3d 1367, 1374 (S.D. Fla. 2016) (requirement met with "only one proposed opt-in")

Here, 8 workers in addition to the two named Plaintiffs have filed a consent to sue in this action. (ECF Nos. 1-3, 2, 3, 4, 5, 7, 9, 25.) These submissions are a sufficient basis upon which the Court should conditionally certify this representative action. *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No. 7:08-CV-32 (HL), 2008 U.S. Dist. LEXIS 98064, at *21-22 (M.D. Ga. Dec. 4, 2008) (eight consents to sue sufficient). In light of the FLSA's remedial purpose, a more rigorous inquiry "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the . . . FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 173).

The allegations in the Complaint, the consent-to-sue forms of the Plaintiffs and Opt-in Plaintiffs, declarations from two Plaintiffs and one Opt-in Plaintiff, as well as Defendants' deposition testimony and written responses to discovery provide ample evidence that not only do other workers desire to opt in to the case, but that the workers were similarly situated with

respect to factual and legal issues common to their claims of overtime wage violations. Plaintiffs more than satisfy the lenient standard for collective action certification at this stage of the litigation.

### II. Plaintiffs' Proposed Notice Should be Approved and Other Warehouse Workers Given 90 Days to Return Their Consents to Sue.

A copy of Plaintiffs' proposed notice is attached as Exhibit F.  Plaintiffs have also included the content of the body of their proposed emails and text messages/WhatsApp messages. Plaintiffs will send the notice in Spanish and will have it translated once approved by the Court.  Postal mail service to workers in Mexico is often slow and sometimes unreliable. (Knoepp Decl. ¶ 3) (attached as Exhibit G).  Moreover, individuals who work on employment visas often migrate frequently and are therefore not always at their primary residence to receive postal mail.  (Ex. G - Knoepp Decl. ¶ 4.)  Over the last several years it has been much more common to communicate with individuals who migrate frequently with H-2A visas via text message and WhatsApp, and occasionally via email.  (Ex. G - Knoepp Decl. ¶ 5.)  Given this, Plaintiffs propose to send the notice via postal mail, email, text message/WhatsApp message, and by posting the notice on a website that would allow potential opt-in Plaintiffs to electronically sign their forms from the website.[3]  These are all methods approved by other courts in the FLSA collective action context.  *See, e.g.*, *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-cv-03741, 2022 U.S. Dist. LEXIS 89904, at *11 (W.D. La. May 17, 2022) (authorizing notice by mail, email, text, and WhatsApp in H-2A case where "workers who might become plaintiffs in this case are all persons who primarily reside out[side] of the United States"); *see also Beukes v. Boehnke*, No. 24-cv-828 (JWB/DLM), 2024 U.S. Dist. LEXIS 180758, at *20-22 (D. Minn. Oct. 3, 2024) (collecting FLSA cases related to electronic signatures and permitting electronic

---

[3] Plaintiffs intend to use a third-party administrator to assist with sending notice.  The "website" would simply be a landing page set up by the administrator that would contain the FLSA Notice and opt-in form, as well as a copy of the Complaint.  Because the notice is too long to send over text message/WhatsApp message, a link would be provided to the landing page where people could review the documents and electronically complete the opt-in form.  The link would also be provided in the email notifications that are sent.

consent forms to be executed given the realities that H-2A workers may be away from their permanent residences for extended periods of time); *Lopez v. Boykin Farms, Inc.*, No. 5:22-CV-491-BO-RN, 2023 U.S. Dist. LEXIS 191844, at *10 (E.D.N.C. Oct. 25, 2023) (authorizing notice via text, WhatsApp, and website posting in case involving H-2A workers); *Thrower v. UniversalPegasus Int'l, Inc.*, 484 F. Supp. 3d 473, 489-90 (S.D. Tex. 2020) (noting that first-class mail is "quickly fading into obscurity" and finding that notice via text would be "particularly useful . . . as the class involves pipeline workers who routinely travel for work and are way from their home for extended periods of time")

      Plaintiffs propose that individuals be provided 90 days from the date the notice is sent to respond by sending/postmarking (or electronically signing) their opt-in form and ask the Court to approve this time frame. *See Foreman v. Superb Cable Connections, LLC,* No. 24-cv-81410, 2025 U.S. Dist. LEXIS 45350, at *4 (S.D. Fla. Mar. 10, 2025) (approving "90-day Opt-In period after mailing [a]s reasonable given the circumstances of this case and the fact that the proposed class members regularly travel across state lines for work"); *Willis*, 2024 U.S. Dist. LEXIS 174988, at *32 (approving "ninety (90) days from the date of mailing"); *Anderson v. Imani Lounge, LLC*, No. 1:22-cv-652-RAH-KFP, 2023 U.S. Dist. LEXIS 60732, at *6 (M.D. Ala. Apr. 6, 2023) (approving "90 days from the date that the Notice is initially mailed.") This will allow sufficient time to work through any difficulties with returned mail or electronic messages and the possibility that potential opt-in Plaintiffs are migrating and/or have changed phone numbers and therefore do not receive the notice. Plaintiffs' counsel will file a certificate of completion with the Court when the notices are sent and the 90-day opt-in period has begun. Plaintiffs also request they be permitted to send a reminder notice via text message/WhatsApp message 45 days after the original notice is sent. *See Barron*, 2022 U.S. Dist. LEXIS 89904, at *13 (noting that "reminder notices have been allowed in other cases" and authorizing reminder notice in similar case involving H-2A workers).

### III. Information Needed to Facilitate Notice

Plaintiffs request that the Court order Defendants to provide Plaintiffs all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), of similarly situated warehouse workers within fourteen (14) days in order to facilitate the issuance of the notice. Such information is routinely ordered produced in FLSA collective actions. *See Lopez*, 2023 U.S. Dist. LEXIS 191844, at *9 (names, U.S. and foreign addresses, cell phone and WhatsApp numbers in case involving H-2A workers); *Hernandez v. Patricio*, No. 5:23-cv-23, 2024 U.S. Dist. LEXIS 205915, at *8 (S.D. Ga. Aug. 13, 2024) (names, addresses, telephone numbers, WhatsApp contact information, email addresses in case involving H-2A workers); *Arriaga-Zacarias*, 2008 U.S. Dist. LEXIS 98064, at *23 (ordering names and address produced in two weeks). Plaintiffs request that Defendants be ordered to provide this information in electronic form, if available.

### CONCLUSION

In accordance with 29 U.S.C. § 216(b), Plaintiffs respectfully request that this Court authorize notice of this FLSA action and an opportunity to opt-in be sent to similarly situated forklift, maintenance, and sanitation workers employed by the Defendants in their warehouses during 2022, 2023, and/or 2024. To effectuate notice, Plaintiffs further request that this Court (1) approve the proposed collective action notice attached as Exhibit F and the Plaintiffs' proposed methods of distribution; (2) order Defendants, within fourteen (14) days of the Court's order, to produce all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), for all workers employed by Defendants in the specified positions; and (3) grant a period of 90 days from the date on which Plaintiffs send the notice for individuals to return their consent forms.

Respectfully submitted,

*/s/ Dawson Morton*
Dawson Morton

Georgia Bar No. 525985
Dawson Morton, LLC
1808 Sixth St.
Berkeley, CA 94710
Phone: (404) 590-1295
dawson@dawsonmorton.com

James M. Knoepp
Georgia Bar No. 366241
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
Phone: (828) 379-3169
jim@dawsonmorton.com

*Attorneys for Plaintiffs*