**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| ARNULFO GARCIA-RAMOS, | ) | |
| PABLO CASTILLO-OLGUIN, and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | **)** | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO.: 7:24-cv-00054-WLS |
| SOUTHERN VALLEY FRUIT & | ) | |
| VEGETABLE, INC.; HAMILTON | ) | JUDGE W. LOUIS SANDS |
| GROWERS, INC.; KENT HAMILTON; | ) | |
| HAMILTON PRODUCE, L.P.; | ) | CLASS ACTION |
| KENDA PROPERTIES, L.P.; WK | ) | |
| HOLDINGS, LLC; and WKW, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

Plaintiffs are forklift drivers, maintenance, and sanitation workers who were employed by Defendants in their packing shed warehouses. Plaintiffs were brought to the United States by Defendants pursuant to the H-2A temporary foreign worker visa program and employed subject to written employment contracts. Plaintiffs contend that Defendants breached their and other warehouse workers' employment contracts, committed fraud, and—in the case of Plaintiff Arnulfo Garcia-Ramos and other subclass members—violated the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.* (ECF No. 1 - Compl. ¶¶ 172-213.)[1] Plaintiffs seek the Court's determination that their breach of contract,

---

[1] Plaintiffs also allege the Defendants violated the Fair Labor Standards Act. Plaintiffs have filed a separate motion for conditional certification of the FLSA claims as a collective action. (ECF No. 35.)

fraud, and AWPA claims may be maintained as a class action under Federal Rule of Civil

Procedure 23(b)(3).

## THE PROPOSED CLASSES

The Plaintiffs propose three classes—a main class and two sub-classes.  Class I (Wage

Claim Class), represented by Plaintiffs Arnulfo Garcia-Ramos and Pablo Castillo-Olguin, is

defined as:

> **All individuals who were employed by Defendants—regardless of visa status—as forklift operators, maintenance workers, or sanitation workers in the packing shed warehouses between March 29, 2018 and December 31, 2024, during workweeks when Defendant Hamilton Growers, Inc. was certified to employ H-2A workers.**

Class II (H-2A Reimbursement Class), represented by Plaintiffs Arnulfo Garcia-

Ramos and Pablo Castillo-Olguin, is a subclass of the Wage Claim Class and is

defined as:

> **All individuals admitted as H-2A temporary foreign workers and employed by Defendants as forklift operators, maintenance workers, or sanitation workers in the packing shed warehouses between March 29, 2018 and December 31, 2024.**

Class III (AWPA Class), represented by Plaintiff Arnulfo Garcia-Ramos, is also a

subclass of the Wage Claim class and is defined as:

> **All individuals who were employed by Defendants as forklift operators, maintenance workers, or sanitation workers in the packing shed warehouses between March 29, 2018 and December 31, 2024, during workweeks when Defendant Hamilton Growers, Inc. was not certified to employ H-2A workers.**

## BACKGROUND AND FACTS

Between 2018 and 2024 Defendants hired more than 100 individuals from Mexico under

the H-2A visa program in specialized jobs in their warehouses operating forklifts and performing

maintenance and sanitation work.  Defendants denied them overtime pay despite processing

millions of dollars in outside produce, and ultimately paid them lower wages then they were

legally owed.  The H-2A visa program allows temporary visas for foreign workers when U.S.

workers are unavailable and if the wages and working conditions offered will not adversely

affect U.S. workers similarly employed. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. §

655.100.  Employers seeking H-2A visas must submit to the federal government a proposed

temporary labor certification form, called an ETA-790 "clearance order."  *See* 20 C.F.R. §

655.122 (specifying minimum terms which must be contained in the job offer).  The ETA-790

clearance orders, as well as federal regulations, establish the minimum benefits, wages, and

working conditions that apply to the employment of foreign workers, and form the written

employment contracts at issue in this case.  (Hamilton Growers Dep. at 128:9-129:9, 132:17-

133:8, 135:19-135:22, 141:10-141:12, ) (attached as Ex. H); 20 C.F.R. § 655.122(q) ("The work

contract at a minimum will be the terms of the job order and any obligations required under 8

U.S.C. 1188, 29 CFR part 501, or this subpart."); *Arriaga v. Florida Pacific Farms, LLC*, 305

F.3d 1228, 1233 n.5 (11th Cir. 2002) ("[T]he clearance orders ultimately become the contract

between the employers and [the H-2A workers].""); *Garcia-Celestino v. Ruiz Harvesting, Inc.*,

280 F.R.D. 640, 644 (M.D. Fla. 2012) (noting that documents filed with Department of Labor

"commonly referred to as 'clearance orders,' described the job terms" and "served as the

employment contracts"); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242,

1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified

Application for Temporary Employment Certification' became their work contracts.") (quoting

20 C.F.R. § 655.122(q)).

Each year from 2018 through 2024, Defendants recruited between 800 and 900 H-2A workers from Mexico and employed them under the same job title and subject to the same terms and conditions of employment set forth in the written employment agreement contained in the Defendants' ETA-790 clearance order filings. (Exs. A-G) (samples of ETA-790 forms completed by Defendants between 2018 and 2024 to obtain H-2A visas); (Ex. H – Hamilton Growers Dep. at 127:7-128:8). A subset of those H-2A workers—more than 100—did specialized jobs in the Defendants' warehouses operating forklifts and performing maintenance and sanitation work, hidden under the same job title contained in the clearance order, and pursuant to the same written contract terms. (Defs.' Resp. to Pls.' Interrog. Nos. 1-3) (answering that 111 H-2A workers were employed at some point between 2018 and 2024 operating forklifts, or performing maintenance, sanitation, or mechanic work) (attached as Ex. I); (Ex. H – Hamilton Growers Dep. at 110:3-112:12) (acknowledging that number of forklift operators between 2018 and 2024 was higher than the 47 stated in interrogatory answers and instead numbered between 68 and 115 workers). The Plaintiffs and other warehouse workers performed jobs which moved products and packing materials around with forklifts, maintained equipment in the warehouse, or completed general sanitation work in the warehouse. (Declaration of Plaintiff Arnulfo Garcia-Ramos ¶¶ 4-5) (attached as Exhibit M); (Declaration of Plaintiff Pablo Castillo-Olguin ¶ 3) (attached as Exhibit N); (Declaration of class member Rafael Joaquin-Guerrero ¶¶ 4-6) (attached as Exhibit O); (Ex. H – Hamilton Growers Dep. at 24:8-25:14, 51:22-54:17, 69:5-70:18) (describing job duties in the warehouses with respect to operating forklifts or performing maintenance and sanitation work). The same job title, wage rate, and terms and conditions under the same written work contracts applied to all of Defendants' warehouse workers performing these specialized tasks each year. Those contracts promised, *inter alia*, the following:

- All workers would be paid the highest wage rate in effect at the time the work is performed for every hour or portion thereof worked during a pay period. 20 C.F.R. §§ 655.120, 655.122(l);

- The employer would comply with applicable Federal, State, and local laws and regulations. 20 C.F.R. § 655.135(e);

- All workers would be paid for transportation and daily subsistence from their homes in Mexico to the employers' worksite in Georgia and/or Tennessee. 20 C.F.R. § 655.122(h)(1); and

- The employer would provide or pay for workers' transportation and daily subsistence to return home to Mexico at the end of the contract period. 20 C.F.R. §§ 655.122(h)(2), (n).

The Defendants also promised as part of the written employment contracts that overtime would be paid "for workweeks in which a worker performs non-exempt work activities" (*see, e.g.*, Ex. D at Defs. 007298; Ex. E at Defs. 008941; Ex. F at Defs. 009871; Ex. G at Defs. 011979) (ETA-790 forms) or "[w]hen required by state or federal law, overtime will be paid at time and one half the regular hourly rate." (*See, e.g.*, Ex. C at Defs. 006013) (ETA-790 form); (Hamilton Growers, Inc. Dep. at 134:16-136:3, 141:10-141:13.)

Plaintiffs allege that Defendants breached their employment contracts with respect to all of the packing shed warehouse workers employed in specialized jobs driving forklifts or performing maintenance and sanitation work. First, Defendants failed to pay the Plaintiffs and other packing shed warehouse workers the correct age rate for the specialized work they performed. Rather, Defendants paid Plaintiffs and other packing shed warehouse workers a wage rate for *agricultural field work*. This violation occurred each year for each worker employed in the packing shed warehouse in these specialized positions. Defendants confirmed between 2018 and 2024 that all forklift operators, maintenance workers, and sanitation workers in their warehouses were paid the adverse effect wage rate that was listed on the ETA-790 forms, instead of the higher wage rates Plaintiffs allege were required for those specialized occupations

which Defendants' applications did not disclose.  (Ex. H – Hamilton Growers Dep. at 141:24-142:22); (Def.'s Resp. to Pls.' Req. for Admis. No. 2) (attached as Exhibit J); (ECF No. 1 - Compl. ¶¶ 100-112).[2]

Second, Plaintiffs allege the workers' written employment contracts were breached when Defendants did not pay them overtime wages.  Plaintiffs and others employed as forklift operators or maintenance and sanitation workers regularly worked more than 40 hours in a workweek.  (Ex. H – Hamilton Growers Dep. at 144:11-21.)  Defendants' chose not to pay overtime wages to any warehouse workers.  (Ex. H – Hamilton Growers Dep. at 144:22-148:25); (Ex. J – Def.'s Resp. to Pls.' Req. for Admis. No. 1.)  Plaintiffs allege that they and workers employed in specialized occupations were owed overtime and Defendants' decision to not pay overtime violated Plaintiffs' and others' contractual rights.  (Ex. H - Hamilton Growers Dep. at 135:19-136:2) (acknowledging that the provisions in the ETA-790 applied to all workers and that similar statements regarding when overtime would be paid were made on the ETA-790s each year between 2018 and 2024).

Third, Plaintiffs allege Defendants breached their written employment contracts by not reimbursing required expenses and subsistence for days spent traveling on their trips to the United States, and that they were not reimbursed return transportation and subsistence at the end of their employment contracts.  (ECF No. 1 - Compl. ¶¶ 116-125.)  For example, Plaintiffs

---

[2]  Plaintiffs also allege that the failure to pay legal wages was intentional and due to a fraud committed by Defendants.  In its employment certifications, sworn under the penalty of perjury, Defendants made false representations they were employing field laborers instead of forklift operators, maintenance, and sanitation workers in a warehouse operation.  Defendants also falsely stated that the positions were exempt from overtime pay requirements when Defendants knew overtime was owed because they were purchasing more than $20-$25 million worth of outside produce each year to store, move, and process in the warehouses.  (ECF No. 1 – Compl. ¶¶ 201-213); (Ex. H – Hamilton Growers Dep. at 241:5-21, 243:2-244:13.)

testified they had hotel expenses for approximately 5-7 days each year in Monterrey, Mexico at the U.S. Consulate while waiting for their H-2A visas to be processed before then traveling to Defendants' worksite in Norman Park, Georgia. (Garcia-Ramos Dep. at 39:2-24) (attached as Exhibit P); (Castillo-Olguin Dep. at 27:4-7) (attached as Exhibit Q). Defendants reimbursed some expenses to all H-2A warehouse workers uniformly, as detailed in annual spreadsheets (*see, e.g.*, Ex. K for the 2020 season), but those documents show that H-2A workers were paid for substantially fewer days of hotel expenses than they actually incurred and substantially fewer days of daily subsistence than the number of days they spent traveling and waiting for immigration processing. (*Compare* 84 Fed. Reg. 10838 (Mar. 22, 2019) (requiring daily subsistence payment of $12.46/day) *with* (Ex. K) (reflecting payments of $62.30 for only five days of travel for all H-2A workers).) Likewise, H-2A workers were often not provided *any* return transportation or subsistence payments at the end of the season. (*See, e.g.*, Ex. L) (spreadsheet showing payments provided to named Plaintiffs and FLSA opt-in Plaintiffs during 2021 season). Rather than pay return transportation and subsistence to the class members as required in their written employment contracts, Defendants simply designated them as "early leave" and paid nothing—denying them the amounts Defendants had already calculated. (*Id.*) But Defendants still owed the Reimbursement Class members for their return travel and subsistence by law and contract *unless* they officially notified the federal government within a certain time period that workers had abandoned the job. 20 C.F.R. § 655.122(n). In response to Plaintiffs' discovery requests, Defendants produced records showing they filled out forms with respect to only two H-2A workers who allegedly abandoned their jobs with Defendants between 2018 and 2024. (Declaration of James Knoepp ¶ 14.) (attached as Exhibit R). The failure to reimburse expenses and pay daily subsistence properly resulted in Plaintiffs and other warehouse

workers earning less than what they were contractually promised each season.  (ECF No. 1 - Compl. ¶¶ 178-181.)  Defendants confirmed that their policies and practices with respect to inbound and outbound reimbursements were the same for all H-2A workers between 2018 and 2024.  (Ex. H – Hamilton Growers Dep. at 190:12-191:22, 210:13-23.)

In addition to alleging that these practices and policies breached Plaintiffs' and other warehouse workers' employment contracts, Plaintiff Arnulfo Garcia-Ramos also alleges that Defendants violated the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") with respect to him and the proposed AWPA class members.  (ECF No. 1 - Compl. ¶¶ 184-200.)  Although Defendants' certification to employ H-2A workers expired on December 31 of each year, Plaintiffs allege that Defendants required Mr. Garcia-Ramos and other workers to stay and continue working at the warehouse during January and February doing the same specialized jobs as the rest of the year.  (ECF No. 1 - Compl. ¶¶ 186); (Ex. P – Garcia-Ramos Dep. at 69:10-70:17, 75:4-11).  During those months, Defendants continued to pay the warehouse workers less than legally required and continued to deny them overtime pay, which Plaintiffs allege breached the AWPA's working arrangement and wage payment provisions.

## ARGUMENT

Plaintiffs seek Rule 23 class certification for their breach of contract, fraud, and AWPA claims.  (ECF No. 1 - Compl. Counts III, IV and V).  A party seeking class certification must show that "(1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a).  The proposed class must also fit one of the three categories enumerated in Rule 23(b).  Plaintiffs meet the requirements

8

of Rule 23(b)(3) and propose certification pursuant to that provision, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Class actions exist "to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion . . . ." *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). "The court should not determine the merits of the claims at the class certification stage, however, the court can consider the merits of the case 'to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Garcia-Celestino*, 280 F.R.D. at 645 (citation omitted). Plaintiffs are not required to show that questions common to the class "will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). At this motion stage, "Rule 23 grants . . . no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466.

In this case, the proposed classes meet the prerequisites of numerosity, commonality, typicality, and adequacy. Furthermore, as the warehouse workers were paid alike, common questions of law and fact predominate, and a class action would be far superior to any other method of adjudicating the legal claims of the more than 100 individuals who worked for Defendants between 2018 and 2024 pursuant to identical employment contracts.

I.    **Plaintiffs Satisfy All Prerequisites for a Class Action.**

A.  **Readily Identifiable and Ascertainable Classes Exist.**

As a pre-requisite to analyzing Rule 23 requirements, courts must determine whether the classes are ascertainable. "A proposed class is ascertainable if it is adequately defined such that

its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). The proposed classes here consist of individuals employed doing specific job duties in Defendants' warehouses between 2018 and 2024—forklift operators and those who performed maintenance and sanitation duties. And in the case of the two subclasses—individuals who performed the same job duties with H-2A visas (H-2A Recruitment Class) and those who also worked during January and February with the same job duties (AWPA Class). Defendants have identified over one hundred individuals who held these positions during the relevant time period, and later confirmed at deposition that the actual number was somewhat higher. (Ex. I - Defs.' Resp. to Pls.' Interrog. Nos. 1-3) (answering that 111 workers employed in specific job duties); (Ex. H – Hamilton Growers Dep. at 110:3-112:12) (acknowledging that number of forklift operators between 2018 and 2024 was higher than the 47 stated in interrogatory answers and instead numbered between 68 and 115 workers). Defendants maintain this information in their electronic payroll system called Famous. (Ex. H – Hamilton Growers Dep. at 36:7-12, 79:11-23, 108:10-19, 109:10-110:15.) The proposed classes are defined such that their membership is ascertainable.

## B. The Classes are so Numerous that Joinder of All Members is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as the 'the geographical diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (citation omitted).

The proposed Wage Claim Class consists of over 100 individual workers, the vast majority of whom maintain their permanent residences in Mexico and who worked for Defendants pursuant to H-2A visas between 2018 and 2024.  (Ex. I - Defs.' Resp. to Pls.' Interrog. Nos. 1-3) (answering that 111 workers employed in specific job duties); (Ex. H – Hamilton Growers Dep. at 110:3-112:12) (acknowledging that number of forklift operators between 2018 and 2024 was higher than the 47 stated in interrogatory answers and instead numbered between 68 and 115 workers).  Likewise, the H-2A Reimbursement Class—which is a subclass of the Wage Claim Class—consists of individuals who maintain their permanent residences in Mexico and worked for Defendants on a seasonal basis.  Defendants' reimbursement spreadsheets provided in discovery show at least 77 individuals between 2018 and 2023 are included in the H-2A Reimbursement Class.  (Ex. R - Knoepp Decl. ¶ 10) (identifying 77 unique H-2A workers but noting that no records were provided for 2024).  The proposed AWPA Class—which is also a subclass of the Wage Claim Class—is smaller since it is confined to just the time period in January and February of each year when Defendant Hamilton Growers did not have certification to employ H-2A workers and expected members of the Wage Claim Class to stay and continue to work.  That subclass is in excess of 40 members as shown on Defendants' payroll records produced in discovery for just parts of the 2021 through 2024 seasons.  The full class size would surely be higher if Defendants provide complete payroll records covering the 2018 through 2020 seasons.  (Ex. R - Knoepp Decl. ¶¶ 11-13) (identifying 28 forklift operators and 15 maintenance and sanitation workers employed in January and February between 2021 and 2024 but noting incomplete nature of production).

Courts analyzing similar claims brought by groups of foreign workers with temporary employment visas have found numerosity requirements were met.  *See, e.g., Casilao v.*

*Hotelmacher LLC*, No. CIV-17-800-SLP, 2021 U.S. Dist. LEXIS 188177, at *15 (W.D. Okla. Sept. 30, 2021) (finding numerosity met for proposed class of 23 foreign H-2B workers); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (joinder of H-2A workers from various parts of Mexico "highly impracticable"); *Moreno-Espinosa v. J & J AG Products, Inc.*, 247 F.R.D. 686, 688 (S.D. Fla. 2007) (certifying class of 38 members from Mexico in H-2A case). In addition, unfamiliarity with the U.S. legal system and a lack of financial means to bring individual litigation also favor a numerosity finding. *See Garcia-Celestino*, 280 F.R.D. at 645 ("[T]he joinder of potentially 286 individual migrant farm workers, who reside in various locations in Mexico, who do not speak English fluently, and who lack familiarization with the American legal system would be burdensome."). Plaintiffs here satisfy the numerosity requirement of Rule 23(a)(1) with respect to all three proposed classes. *See Schorr v. Countrywide Home Loans, Inc.*, No. 4:07-cv-00019-WLS, 2015 U.S. Dist. LEXIS 194083, at *7 (M.D. Ga. Apr. 1, 2015) ("'The numerosity requirement is met when it would be inconvenient or difficult to join all of the class members, and may be satisfied with as few as 25-30 class members.'") (citation omitted).

### C. Defendants Treated the Warehouse Workers the Same for the Violations Alleged and the Proposed Classes Share Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted). Commonality focuses on "whether a

sufficient nexus exists between the legal claims of the class representatives and those of individual class members to warrant class certification." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).

In this case, all proposed class claims—breach of the employment contracts, fraud, and violations of the AWPA—stem from Defendants' policies and practices described above that applied to all warehouse workers who make up the proposed classes. Defendants' policies and practices toward the warehouse workers created several common questions, the resolution of which will apply to all members of the proposed classes. These common questions include:

(a) Whether Defendants paid the Plaintiffs and other Wage Claim class members an unlawful field worker wage rather than the higher wage for the specialized jobs they performed;

(b) Whether Defendants were legally obligated to pay overtime wages when Plaintiffs and other Wage Claim class members worked more than forty (40) hours in a workweek and whether this contractual obligation was breached;

(c) Whether Defendants engaged in fraud when they hid from the government the specialized nature of the work to be performed by the Plaintiffs and other Wage Claim class members and did not disclose the warehouse operations where the "field workers" were to be employed was receiving large amounts of outside produce that was purchased;

(d) Whether Defendants' policy and practice with respect to reimbursements for inbound and outbound travel and subsistence resulted in Plaintiffs and other H-2A Reimbursement class members not receiving the wages and compensation contractually promised; and

(e) Whether Defendants' failure to pay the legally-required wage rates and overtime violated the working arrangement and failure to pay wages when due provisions of the AWPA with respect to Plaintiff Garcia-Ramos and other AWPA class members.

These common questions are appropriate for class action treatment because they share a common resolution and will be resolved by common proof. For example, whether Defendants' breached workers' contracts, committed fraud, and violated the AWPA by having a policy of

paying the Plaintiffs and other warehouse workers a wage rate for *field workers* will be decided

based on Defendants' business operations and not on individual information for any specific

class member.  Plaintiffs allege that Defendants misled the government about the nature of their

business and the available employment positions when they sought foreign workers in the H-2A

visa program under a job title for field workers.  (ECF No. 1 - Compl. ¶¶ 203-211.)  But

Defendants' warehouse work was not field work, and its warehouse is part of a large

agribusiness employing specialized workers to move, maintain, and clean the operation.

Defendants moved between $20-$25 *million* worth of outside products *annually* through its

warehouse utilizing the labor of the class members, which Plaintiffs allege is evidence that the

work was general warehouse work subject to higher wage rates rather than "agricultural" field

work subject to the AEWR.  (Ex. H – Hamilton Growers Dep. at 241:5-21, 243:2-244:13.)  By

not properly disclosing the non-agricultural nature of the work due to large quantities of outside

produce being handled in the warehouse, Defendants paid the Plaintiffs and other class members

unlawfully low wage rates, in breach of the Wage Claim class members' contracts and in

violation of the AWPA with respect to the AWPA class members.  Whether Plaintiffs or

Defendants are correct regarding the legality of the wages paid will be determined later, but for

now all that is important is that the resolution of the issue will not depend on any individual

inquiries regarding individual warehouse workers.  Rather, the resolution will turn on the nature

of Defendants' business operations, and whether the work being performed by the class

members was "agricultural" within the meaning of the applicable laws.  *See De-Leon Granados*

*v. Eller & Sons Trees, Inc.*, No. 1:05-CV-1473-CC, 2006 U.S. Dist. LEXIS 73781, at *20-21

(N.D. Ga. Sept. 28, 2006) (finding commonality requirement met in case involving H-2B

temporary foreign workers who claimed they were not paid prevailing and overtime wages),

*aff'd*, 497 F.3d 1214 (11th Cir. 2007).

Similarly, whether Defendants committed fraud, violated the AWPA's working arrangement provisions, and breached the contractual promises to comply with Federal law and to pay overtime wages for "non-exempt work activities" or "when required by state or federal law" turn on whether overtime wages were owed for the work performed in Defendants' business operations, not on facts or job duties of any individual warehouse worker. Defendants' practice and policy was not to pay overtime wages to Plaintiffs or any other warehouse workers employed as forklift operators or performing maintenance and sanitation work because Defendants contend they were only required to pay the AEWR or that the work was exempt from overtime. (Ex. H – Hamilton Growers Dep. at 144:22-148:25; Ex. J – Def.'s Resp. to Pls.' Req. for Admis. No. 1.) A determination of whether overtime was contractually owed will not turn on facts specific to a particular warehouse worker, but rather on the nature of Defendants' business, including facts related to its purchase of $20-$25 million of outside produce each season. *See Acosta v. Bland Farms Prod. & Packing, LLC*, 767 Fed. Appx. 862, 863-64 (11th Cir. 2019) (holding overtime owed because employer was handling produce in its packing shed that was grown by other entities); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 290 (5th Cir. 1959) (analyzing farming operations of employer and holding that overtime was owed because warehouse employees were handling commodities produced by other farmers. As such, the contractual promise to pay overtime either applies or does not with respect to *all* class members.

Likewise, issues of expense reimbursement and subsistence payments will share a common resolution and can be resolved by common proof. Whether Plaintiffs or Defendants prevail on the reimbursement issue turns on whether the Defendants complied with the H-2A

regulations related to payment of inbound and outbound travel and subsistence, which is a legal question that will apply to *all* of the warehouse workers.  20 C.F.R. § 122(h), (n); *see, e.g.*, *Antonio-Benito v. Lowry Farms, Inc.*, No. 1:20-cv-1039, 2021 U.S. Dist. LEXIS 2459119, at *9 (W.D. Ark. Aug. 9, 2021) (certifying Rule 23 class on behalf of H-2A workers because "members share common questions regarding whether Defendants properly reimbursed each worker"); *Garcia-Celestino*, 280 F.R.D. at 646 (finding commonality met in case involving H-2A workers who alleged their employer "did not fully reimburse workers for pre-employment, post-employment, and subsistence expenses").  This inquiry will be common and identical with respect to all class members.

Given the numerous questions of law that are common to the proposed classes in this case and given that the injuries the named Plaintiffs complain of on behalf of the classes arise from Defendants' uniform policies and practices, the commonality requirement of Rule 23(a)(2) is satisfied.

### D.  The Claims of the Representative Parties Are Typical of the Classes' Claims.

Rule 23(a)(3) requires that the class representatives' claims be typical of those of the class  as a whole. FED. R. CIV. P. 23(a)(3).  "Class members' claims need not be identical to satisfy the typicality requirement."  *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).  A "sufficient nexus" need only exist between the legal claims of the named plaintiffs and the individual class members that can be satisfied "'if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory."  *Id.* (citations omitted).

The named Plaintiffs' claims in this case are typical of the claims of the proposed classes.  The named Plaintiffs were employed in the same warehouses and pursuant to the same

written contracts as the other warehouse workers, did the same jobs of driving forklifts and performing maintenance and sanitation tasks in the warehouses, received the same wage rates, and their claims arise from Defendants' uniform policies and practices applicable to every member of the proposed classes of warehouse workers. The named Plaintiffs seek to enforce the same contract terms shared by all warehouse workers in the Wage Claim and Reimbursement Classes. And, in the case of Plaintiff Garcia-Ramos, he seeks to vindicate the same rights under the AWPA as the other AWPA class members for violations that Defendants committed against all class members by failing to pay them the legal wage rate and required overtime. As such, the class representatives' claims are typical of those of the entire class. *See, e.g.*, *Garcia-Celestino*, 280 F.R.D. at 646 (typicality requirement met where plaintiffs alleged their employers "breached the [H-2A] employment contract for the same reasons, namely, for failing to pay full hourly wages").

### E.  The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Classes' Interests.

Rule 23(a)(4) and due process require that class representatives and their counsel in a proposed class action "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The requirement applies to both the named Plaintiffs and counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted).

With respect to the named Plaintiffs, they have no conflicts with the other class members and their interests are the same. Plaintiffs and other warehouse workers were treated the same

by Defendants with respect to hourly pay, overtime, and reimbursement, and all suffered the same type of damages as a result. The named Plaintiffs will not benefit in any way that will prove harmful to the interests of other class members. All class members will benefit from the relief sought by receiving damages for breach of contract, fraud, and violations of the AWPA. *See, e.g.*, *Garcia-Celestino*, 280 F.R.D. at 647 (adequacy requirement met in H-2A case where "all class members will benefit from the relief sought by receiving restitution of the additional wages and reimbursements from Defendants for the costs they incurred"); *Moreno-Espinosa*, 247 F.R.D. at 690 (adequacy requirement met in H-2A case involving similar claims). Both named Plaintiffs have participated in this action since its inception, have responded to Defendants' written discovery requests, and sat for their depositions.

Rule 23(g) requires a court to appoint class counsel when certifying a class. FED. R. CIV. P. 23(g). The court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). First, Plaintiffs' counsel prepared the Complaint and filed this action in May of 2024 and have engaged in Phase I class discovery since that time related to class certification issues. (Ex. R – Knoepp Decl. ¶ 8); (Declaration of Dawson Morton ¶ 8) (attached as Ex. S). Counsel served requests for production, interrogatories, and requests for admission, and took a 30(b)(6) deposition of Defendant Hamilton Growers, Inc. related to class certification issues. (Ex. R – Knoepp Decl. ¶ 8.) Counsel also responded to written discovery served to the Plaintiffs and multiple FLSA opt-in Plaintiffs/proposed Rule 23 class members and defended the depositions of the named Plaintiffs and one FLSA opt-in Plaintiff/proposed Rule 23 class

member.  (Ex. R – Knoepp Decl. ¶ 8); (Ex. S – Morton Decl. ¶ 8.)  Second, Plaintiffs' counsel have extensive experience representing foreign workers in federal class action litigation, including in cases like this one on behalf of workers employed subject to temporary visas.  (Ex. S – Morton Decl. ¶¶ 3-5); (Ex. R – Knoepp Decl. ¶¶ 4-6).  Third, counsel are very knowledgeable of the law as it applies to H-2A workers, including the claims in this case related to the failure to pay overtime wages.  (Ex. S – Morton Decl. ¶¶ 4-5); (Ex. R – Knoepp Decl. ¶¶ 5-6).  Finally, counsel have sufficient funds to advance all appropriate costs of this litigation and will vigorously and competently prosecute this action on behalf of the class.  (Ex. S – Morton Decl. ¶¶ 7-8); (Ex. R – Knoepp Decl. ¶¶ 7-8).

Plaintiffs satisfy the adequacy requirements of Rule 23(a).

## II.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Plaintiffs must also show their proposed classes meets the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

### A.  Common Questions of Law and Fact Predominate.

The predominance requirement of Rule 23(b) is similar to, but more demanding than, Rule 23(a)'s commonality requirement, discussed *supra*.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

Common questions of law and fact do predominate for the breach of contract, fraud, and AWPA claims because the dominant issue for all class members is the legality of Defendants'

pay practices, which Defendants applied uniformly to all warehouse workers. As already discussed, Defendants had a common policy and practice of: (1) paying *all* warehouse workers the Adverse Effect Wage Rate for agricultural field workers rather than the wage rate for the specialized jobs they performed in the warehouse as forklift operators or maintenance and sanitation workers; (2) not paying overtime to *any* warehouse workers based on a contention by Defendants that they did not have to pay overtime if they were paying the H-2A wage rate; and (3) not properly reimbursing expenses associated with inbound and outbound travel. Whether these policies breached Plaintiffs' and the proposed class members' employment contracts, amounted to fraud, and violated the AWPA turns on legal issues the resolution of which will apply to all of the Defendants' warehouse workers. *See Garcia -Celestino*, 280 F.R.D. at 647 (finding that common issues predominated since the class members all worked under the same H-2A clearance orders and sought "to remedy the same legal grievances for breach of the same contracts"); *Casilao*, 2012 U.S. Dist. LEXIS, at *30 ("Plaintiffs have shown common issues govern Defendants' pay obligations under the governing H-2B rules, regulations and documents submitted by Defendants in relation thereto. Therefore, the Court concludes common issues predominate with respect to the breach of contract claims."); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 379-80 (D.S.C. 2015) ("Here, common questions of law and fact predominate. Indeed, the claims in the Complaint raise only issues common to the class: (1) whether the contractual wage in Defendant's employment contracts with H-2B workers was the H-2B prevailing wage; . . . (3) whether pre-employment visa and transportation costs were *de facto* deductions from wages that caused wages to fall below the agreed upon wage . . . . There are no issues specific to individual Plaintiffs or individual members of the class.").

The only individual issue with respect to Plaintiffs' and the proposed class members'

claims is the amount of damages that would be owed if Plaintiffs prevail because each class member worked a slightly varying number of hours each week. But even that issue is easily resolved on a class-wide basis since it is a matter of simple math to compute, for example, what is owed to class members if they were paid an unlawful wage rate for the hours they worked, or what is owed for a failure to pay overtime wages for that same number of hours. *See Antonio-Benito*, 2021 U.S. Dist. LEXIS 245919, at *13 (finding common questions predominated in H-2A contract case and noting "[t]he amount of damages claimed by each proposed class member may differ, but the members share common questions regarding Defendants' liability"). That process is made even easier since Defendants maintained electronic timekeeping and payroll records. (Ex. H – Hamilton Growers Dep. at 36:7-12, 79:11-23, 108:10-19, 109:10-110:15.) Individual determinations of damages do not defeat class certification where common legal and factual issues related to liability clearly predominate, as they do here. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'") (citation omitted); *Moodie*, 309 F.R.D. at 380 (noting that individual damages determinations do not defeat predominance and that the requirement is met "where common questions predominate over individual questions *as to liability*") (emphasis in original). That is especially true where, as in this case, "individual issues of damages are . . . easy to resolve because the calculations are formulaic." *Brown*, 817 F.3d at 1239.

## B. A Class Action Is Superior to Other Methods of Adjudication.

The superiority requirement of Rule 23(b)(3) is analyzed through four factors: (1) the interest of class members in individually controlling the prosecution of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the

desirability of having the litigation of the claims in the particular forum where it has been filed, and (4) the difficulties likely to be encountered in management of the class action. FED. R. CIV. P. 23(b)(3)(A)-(D).  Here, a class action is superior to any other method of adjudicating this dispute.

First, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. Class members maintain their permanent homes in Mexico and work for Defendants on a seasonal basis.  (Exs. A-G) (ETA-790 Clearance Orders showing dates of employment each year).  Class members are Spanish speakers who lack familiarity with the U.S. legal system and are likely unaware of their rights to prosecute these claims and are likely unable to bring their own individual actions.  Courts have regularly found that class litigation is superior in cases brought by temporary foreign workers for these same reasons. *See, e.g.*, *Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196, 204-05 (W.D. Mo. 2022) (finding superiority met in case involving H-2A workers "who have little experience with the U.S. legal system"); *Garcia v. Stemilt AG Servs., Inc.*, 2022 U.S. Dist. LEXIS 125068, at *15 (E.D. Wash. July 14, 2022) (proceeding on class-wide basis superior where class consisted of H-2A workers who resided in Mexico and had "limited English proficiency, financial resources, and understanding of this country's legal system"); *De Leon-Granados*, 2006 U.S. Dist. LEXIS 73781, at * 49-50 (finding superiority requirement met where class members who were employed pursuant to H-2B visas "are geographically dispersed, lack proficiency in the English language, and are not familiar with the American legal system"); *see also Menocal v. GEO Group, Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) ("Considerations such as class members' limited understanding of the law, limited English skills, or geographic dispersal therefore weigh in favor of class certification.").

Second and third, no other litigation concerning this controversy has been commenced and it is desirable to conduct the litigation in this forum. Defendants maintain their offices and conduct significant business in this district and important witnesses employed by the Defendants and third parties are also located in this district. Fourth, the benefits of maintaining this action on a class basis far outweigh any administrative burden. Class litigation is no less manageable in this case than in other cases in which claims of temporary foreign visa workers have been certified under Rule 23. *See, e.g.*, *Moodie*, 309 F.R.D. at 380 ("While the claims that Plaintiffs propose to class here are state law claims, Plaintiffs also bring FLSA claims raising federal questions. It is more efficient to resolve both sets of claims in a single forum and single litigation than to have parallel proceedings."); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 289 (W.D. Mich. 2001) (use of class action mechanism in case involving migrant workers "likely to achieve economies of time, effort and expense in resolving legal issues of class members"). Because the claims of the Plaintiffs and proposed class members are based on a common set of facts, testimony will not be needed from all warehouse workers. Requiring separate prosecutions would likely result in far greater manageability issues, including duplicative discovery procedures, repeated adjudication of similar controversies, and excessive costs. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted. Certification is proper for the claims set forth in Counts III, IV, and V of the Complaint on behalf of the proposed Wage Claim class and the two proposed sub-classes. Both Plaintiffs should be named class representatives of the Wage Claim Class and the H-2A Reimbursement Class, and

Plaintiff Garcia-Ramos should be named the class representative of the AWPA Class.  Counsel

for the Plaintiffs should be appointed as Class Counsel for all three classes.

Respectfully submitted,

*/s/ James M. Knoepp*
James M. Knoepp
Georgia Bar No. 366241
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
Phone: (828) 379-3169
jim@dawsonmorton.com

Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
1808 Sixth St.
Berkeley, CA  94710
Phone: (404) 590-1295
dawson@dawsonmorton.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I electronically filed the foregoing using the Court's CM/ECF system, which will automatically send e-mail notification to the following attorneys for the Defendants:

Martin B. Heller
David Lerner
FISHER PHILLIPS LLP
1230 Peachtree Street NE
Suite 3300
Atlanta, GA 30309
mheller@fisherphillips.com
dlerner@fisherphillips.com

/s/ James M. Knoepp
James M. Knoepp
Georgia Bar No. 366241

this 30th day of May, 2025.