EXHIBIT F

2023 ETA-790 CLEARANCE ORDER

*OMB Approval: 1205-0466*
*Expiration Date:* 11/30/2025

Agricultural Clearance Order
Form ETA-790
**U.S. Department of Labor**



**IMPORTANT**: In accordance with 20 CFR 653.500, all employers seeking U.S. workers to perform agricultural services or labor on a temporary, less than year-round basis through the Agricultural Recruitment System for U.S. Workers, must submit a completed job clearance order (Form ETA-790) to the State Workforce Agency (SWA) for placement on its intrastate and interstate job clearance systems. Employers submitting a job order in connection with an H-2A Application for Temporary Employment Certification (Form ETA-9142A) must complete the Form ETA-790 and attach a completed ETA-790A. All other employers submitting agricultural clearance orders must complete the Form ETA-790 and attach a completed ETA-790B. Employers and authorized preparers must read the general instructions carefully, complete ALL required fields/items containing an asterisk ( * ), and any fields/items where a response is conditional as indicated by the section ( § ) symbol.

## I. Clearance Order Information

**FOR STATE WORKFORCE AGENCY (SWA) USE ONLY**
*Questions 1 through 17*

| 1. Clearance Order Number * <br> 8837472931 | 2. Clearance Order Issue Date * <br> 1/13/2023 | 3. Clearance Order Expiration Date * <br> 7/31/2023 |
|---|---|---|
| 4. SOC Occupation Code * <br> 45-2092.00 | 5. SOC Occupation Title * <br> Farmworkers and Laborers, Crop, Nursery, and Greenhouse | |

**SWA Order Holding Office Contact Information**

| 6. Contact's last (family) name * <br> Robinson | 7. First (given) name * <br> Kimberly | 8. Middle name(s) § |
|---|---|---|

9. Contact's job title *
AG Consultant

10. Address 1 *
148 Andrew Young International Blvd N.E.

11. Address 2 *(suite/floor and number)* §

| 12. City * <br> Atlanta | 13. State * <br> Georgia | 14. Postal code * <br> 30303 |
|---|---|---|
| 15. Telephone number * <br> 404 232 3500 | 16. Extension § <br> 3851 | 17. Email address * <br> Agricultural_Services@gdol.ga.gov |

## II. Employer Contact Information

1. Legal Business Name *
Hamilton Growers, Inc.

2. Trade Name/Doing Business As (DBA), if applicable §

| 3. Contact's last (family) name * <br> Flowers | 4. First (given) name * <br> Colene | 5. Middle name(s) § |
|---|---|---|

6. Contact's job title *
Payroll/HR Administrator

7. Address 1 *
2775 Ellenton-Norman Park Rd.

8. Address 2 *(suite/floor and number)* §

| 9. City * <br> Norman Park | 10. State * <br> Georgia | 11. Postal code * <br> 31771 |
|---|---|---|
| 12. Telephone number * <br> +1 (229) 769-3676 | 13. Extension § | 14. Business email address * <br> colene@southernvalley.us |
| 15. Federal Employer Identification Number *(FEIN from IRS)* * <br> 58-2217832 | 16. NAICS Code * <br> 1112 | |

## III. Type of Clearance Order

| 1. Indicate the type of agricultural clearance order being placed with the SWA for recruitment of U.S. workers. *(choose only one)* * | ☑ 790A (placed in connection with an H-2A application) <br> ☐ 790B (not placed in connection with an H-2A application) |
|---|---|

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Defs. 009835

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



---

**A. Job Offer Information**

| 1. Job Title * | **Farm Workers** | | |
|---|---|---|---|

| 2. Workers Needed * | a. Total | b. H-2A Workers | **Period of Intended Employment** | |
|---|---|---|---|---|
| | 249 | 249 | 3. First Date * 3/1/2023 | 4. Last Date * 12/30/2023 |

| 5. Will this job generally require the worker to be on-call 24 hours a day and 7 days a week? * If "Yes", proceed to question 8. If "No", complete questions 6 and 7 below. | ☐ Yes  ☒ No |
|---|---|

6. Anticipated days and hours of work per week *(an entry is required for each box below)* *

| 40 | **a. Total Hours** | 7 | c. Monday | 7 | e. Wednesday | 7 | g. Friday |
|---|---|---|---|---|---|---|---|
| 0 | b. Sunday | 7 | d. Tuesday | 7 | f. Thursday | 5 | h. Saturday |

7. Hourly Work Schedule *
a. 7 : 00  ☒ AM  ☐ PM
b. 3 : 00  ☐ AM  ☒ PM

**Temporary Agricultural Services and Wage Offer Information**

8a. Job Duties - Description of the specific services or labor to be performed. *
*(Please begin response on this form and use Addendum C if additional space is needed.)*

See Addendum C

| 8b. Wage Offer * | 8c. Per * | 8d. Piece Rate Offer § | 8e. Piece Rate Units / Estimated Hourly Rate / Special Pay Information § |
|---|---|---|---|
| $ 13 . 67 | ☒ HOUR  ☐ MONTH | $ 06 . 25 | 1. Incentive: Green Beans, harvest into RPC, per RPC. Estimated hourly wage equivalent is $13.81 per hour. Actual piece rate earnings depend on individual factors. Guaranteed $13.67/hr |

| 9. Is a completed **Addendum A** providing additional information on the crops or agricultural activities to be performed and wage offers attached to this job offer? * | ☒ Yes  ☐ N/A |
|---|---|

10. Frequency of Pay: *  ☒ Weekly  ☐ Biweekly  ☐ Other (specify): N/A

11. State all deduction(s) from pay and, if known, the amount(s). *
*(Please begin response on this form and use Addendum C if additional space is needed.)*

See Addendum C

---

Defs. 009836

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



---

**B. Minimum Job Qualifications/Requirements**

1. Education: minimum U.S. diploma/degree required. *
   ☑ None  ☐ High School/GED  ☐ Associate's  ☐ Bachelor's  ☐ Master's or higher  ☐ Other degree (JD, MD, etc.)

2. Work Experience:  number of <u>months</u> required. *  | 3 |  3. Training:  number of <u>months</u> required. * | 0 |

4. Basic Job Requirements (check all that apply) §
   ☐ a. Certification/license requirements
   ☐ b. Driver requirements
   ☐ c. Criminal background check
   ☑ d. Drug screen
   ☑ e. Lifting requirement  55  lbs.
   ☑ f.  Exposure to extreme temperatures
   ☑ g. Extensive pushing or pulling
   ☑ h.  Extensive sitting or walking
   ☑ i.  Frequent stooping or bending over
   ☑ j.  Repetitive movements

5a. Supervision: does this position supervise the work of other employees? *   ☐ Yes  ☑ No
5b. If "Yes" to question 5a, enter the number of employees worker will supervise. §

6. Additional Information Regarding Job Qualifications/Requirements. *
   *(Please begin response on this form and use Addendum C if additional space is needed. If no additional skills or requirements, enter "NONE" below)*
   See Addendum C

---

**C. Place of Employment Information**

1. Place of Employment Address/Location *
   2775 Ellenton-Norman Park Road

| 2. City * | 3. State * | 4. Postal Code * | 5. County * |
|---|---|---|---|
| Norman Park | Georgia | 31771 | Colquitt |

6. Additional Place of Employment Information.  *(If no additional information, enter "NONE" below)* *
   Well 1 and 2: Bragg Farm- Cool Springs Road; Well 3: Peanut Place Field/Jon's House/Allen Stone's Farm Ellenton-Norman Park Road; Well 4 Part 1: Joe Griffin Road; Well 4 Part 2: Henry Weeks Road and Joe Griffin Road; Well 6: GA Hwy 37; Wells 7 and 8: Cool Springs Road, George Flowers Road, and DH Alderman Road; Well 9: Cool Springs Road and Ellenton Omega Road; Well 14: Joe Griffin Road; Well 15: Compost Field- Cool Springs Road; Well 16: Dalton Field- George Flowers Road

7. Is a completed **Addendum B** providing additional information on the places of employment and/or agricultural businesses who will employ workers, or to whom the employer will be providing workers, attached to this job order? *   ☑ Yes  ☐ N/A

---

**D. Housing Information**

1. Housing Address/Location *
   Las Vegas Camp- 5821 Cool Springs Road

| 2. City * | 3. State * | 4. Postal Code * | 5. County * |
|---|---|---|---|
| Norman Park | Georgia | 31771 | Colquitt |

6. Type of Housing *(check only one)* *
   ☑ Employer-provided (including mobile or range)   ☐ Rental or public
7. Total Units *  1
8. Total Occupancy *  216

9. Identify the entity that determined the housing met all applicable standards: *
   ☑ Local authority  ☑ SWA  ☐ Other State authority  ☑ Federal authority  ☐ Other (specify): _____

10. Additional Housing Information.  *(If no additional information, enter "NONE" below)* *
    Availability of 216. - From Moultrie, GA, take Highway 37 East to the round about. Turn left onto Cool Springs Road. Go approx. 7 miles to the 4-way stop intersection and continue straight. In less than one mile, the entrance will be located on the left-hand side. Las Vegas, Reno and Tahoe barracks are located down the entrance lane, past the guard tower. All visitors must show proper ID before entering.

11. Is a completed **Addendum B** providing additional information on housing that will be provided to workers attached to this job order? *   ☑ Yes  ☐ N/A

---

Defs. 009837

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



---

**E. Provision of Meals**

1. Describe how the employer will provide each worker with three meals per day or furnish free and convenient cooking and kitchen facilities. *
   *(Please begin response on this form and use Addendum C if additional space is needed.)*

   Employer provides three daily meals in accordance with 20 CFR 655.122(g). Employer will deduct the cost of such meals up to the maximum allowable published in the Federal Register, or as otherwise approved by the U.S. Department of Labor. For workers residing in employer-provided housing, employer also provides free transportation once per week to/from closest town or city for personal errands (e.g., groceries, banking services).

| 2. The employer: * | ☐ **WILL NOT** charge workers for meals. |
| | ☑ **WILL** charge each worker for meals at $ 14 . 00 per day, if meals are provided. |

**F. Transportation and Daily Subsistence**

1. Describe the terms and arrangements for daily transportation the employer will provide to workers. *
   *(Please begin response on this form and use Addendum C if additional space is needed.)*

   See Addendum C

2. Describe the terms and arrangements for providing workers with transportation (a) to the place of employment (*i.e.*, inbound) and (b) from the place of employment (*i.e.*, outbound). *
   *(Please begin response on this form and use Addendum C if additional space is needed.)*

   Employer pays/reimburses foreign workers for all visa-related costs (excluding passport fees) in the first workweek. For non-local workers, employer arranges/provides inbound transportation via common carrier mode of transportation (e.g., bus or plane) and reimburses workers for daily subsistence and reasonable lodging costs, if applicable. Use of employer-offered transportation is voluntary.

| 3. During the travel described in Item 2, the employer will pay for or reimburse daily meals by providing each worker * | a. no less than | $ 14 . 00 | per day * |
| | b. no more than | $ 59 . 00 | per day with receipts |

**G. Referral and Hiring Instructions**

Defs. 009838

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



---

1. Explain <u>how</u> prospective applicants may be considered for employment under this job order, including verifiable contact information for the employer (or the employer's authorized hiring representative), methods of contact, and the days and hours applicants will be considered for the job opportunity. *

*(Please begin response on this form and use Addendum C if additional space is needed.)*
Employer accepts referrals and applicants from all sources.  Interview required.  Employer  conducts interviews by phone at time of inquiry or within a reasonable time thereafter.  Interviews conducted at no cost to applicants, whether via phone or in-person.  Contact Employer  Monday through Friday during the hours of 9:00 AM - 5:00 PM ET. If unavailable, contact employer 's agent during the hours of 9:00 AM - 5:00 PM ET..
Employer Agent:
AgWorks H2, LLC (a MAS Labor company)
(434) 260-8833
referrals@maslabor.com
Referring State Workforce Agency (SWA) is responsible for informing applicants of terms and conditions of employment.  After coordinating referral with local order holding office, referring SWA should contact employer or employers agent to provide notice of the referral.  When possible, SWA should furnish translator services as needed.  Employer requests advance notice by the SWA if holding office intends to refer multiple applicants concurrently.

To be eligible for employment, applicants must:
1. Be able, willing, and available to perform the specified job duties for the duration of the contract period;
2. Have been apprised of all material terms and conditions of employment;
3. Agree to abide by all material terms and conditions of employment;
4. Be legally authorized to work in the United States; AND
5. Satisfy all minimum job requirements.

---

| 2. Telephone Number to Apply *<br>+1 (229) 769-3676 | 3. Extension §<br>N/A | 4. Email Address to Apply *<br>afuentes@southernvalley.us |
|---|---|---|
| 5. Website Address (URL) to Apply *<br>www.dol.ga.gov | | |

## H. Additional Material Terms and Conditions of the Job Offer

| 1. Is a completed **Addendum C** providing additional information about the material terms, conditions, and benefits (monetary and non-monetary) that will be provided by the employer attached to this job order? * | ☑ Yes ☐ No |
|---|---|

## I. Conditions of Employment and Assurances for H-2A Agricultural Clearance Orders

By virtue of my signature below, I **HEREBY CERTIFY** my knowledge of and compliance with applicable Federal, State, and local employment-related laws and regulations, including employment-related health and safety laws, and certify the following conditions of employment:

1. **JOB OPPORTUNITY**:  Employer assures that the job opportunity identified in this clearance order (hereinafter also referred to as the "job order") is a full-time temporary position being placed with the SWA in connection with an *H-2A Application for Temporary Employment Certification* for H-2A workers and this clearance order satisfies the requirements for agricultural clearance orders in 20 CFR part 653, subpart F and the requirements set forth in 20 CFR 655, subpart B.  This job opportunity offers U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers and complies with the requirements at 20 CFR 655, subpart B.  The job opportunity is open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship.

2. **NO STRIKE, LOCKOUT, OR WORK STOPPAGE**:  Employer assures that this job opportunity, including all places of employment for which the employer is requesting temporary agricultural labor certification does not currently have workers on strike or being locked out in the course of a labor dispute.  20 CFR 655.135(b).

3. **HOUSING FOR WORKERS**:  Employer agrees to provide or secure housing for the H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence at the end of the work day.  That housing complies with the applicable local, State, and/or Federal standards and is sufficient to house the specified number of workers requested through the clearance system.  The employer will provide the housing without charge to the worker.  Any charges for rental housing will be paid directly by the employer to the owner or operator of the housing.  If public accommodations or public housing are provided to workers, the employer agrees to pay all housing-related charges directly to the housing's management.  The employer agrees that charges in the form of deposits for bedding or other similar incidentals related to housing (e.g., utilities) must not be levied upon workers.  However, the employer may require workers to reimburse them for damage caused to housing by the individual worker(s) found to have been responsible for damage which is not the result of normal wear and tear related to habitation.  When it is the prevailing practice in the area of intended employment and the occupation to provide family housing, the employer agrees to provide family housing at no cost to workers with families who request it.  20 CFR 655.122(d), 653.501(c)(3)(vi).

   *Request for Conditional Access to Intrastate or Interstate Clearance System:*  Employer assures that the housing disclosed on this clearance order will be in full compliance with all applicable local, State, and/or Federal standards at least 20 calendar days before the housing is to be occupied. 20 CFR 653.502(a)(3).  The Certifying Officer will not certify the application until the employer provides evidence that housing has been inspected and approved or, in the case of rental or public accommodations, is otherwise in full compliance.

4. **WORKERS' COMPENSATION COVERAGE**:  Employer agrees to provide workers' compensation insurance coverage in compliance with State law covering injury and disease arising out of and in the course of the worker's employment.  If the type of employment for which the certification is sought is not covered by or is exempt from the State's workers' compensation law, the employer agrees to provide, at no cost to the worker, insurance covering injury and disease arising out of and in the course of the worker's employment that will provide benefits at least equal to those provided under the State workers' compensation law for other comparable employment.  20 CFR 655.122(e).

5. **EMPLOYER-PROVIDED TOOLS AND EQUIPMENT**:  Employer agrees to provide to the worker, without charge or deposit charge, all tools, supplies, and equipment required to perform the duties assigned.  20 CFR 655.122(f), .210(d), or .302(c).

---

Defs. 009839

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



6. **MEALS**: Employer agrees to provide each worker with three meals a day or furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals. Where the employer provides the meals, the job offer will state the charge, if any, to the worker for such meals. The amount of meal charges is governed by 20 CFR 655.173. 20 CFR 655.122(g). When a charge or deduction for the cost of meals would bring the worker's wage below the minimum wage set by the FLSA at 29 U.S.C. 206, the charge or deduction must meet the requirements of 29 U.S.C. 203(m) of the FLSA, including the recordkeeping requirements found at 29 CFR 516.27.

For workers engaged in the herding or production of livestock on the range, the employer agrees to provide each worker, without charge or deposit charge, (1) either three sufficient meals a day, or free and convenient cooking facilities and adequate provision of food to enable the worker to prepare his own meals. To be sufficient or adequate, the meals or food provided must include a daily source of protein, vitamins, and minerals; and (2) adequate potable water, or water that can be easily rendered potable and the means to do so. 20 CFR 655.210(e).

7. **TRANSPORTATION AND DAILY SUBSISTENCE**: Employer agrees to provide the following transportation and daily subsistence benefits to eligible workers.

    A.  *Transportation to Place of Employment (Inbound)*

    If the worker completes 50 percent of the work contract period, and the employer did not directly provide such transportation or subsistence or otherwise has not yet paid the worker for such transportation or subsistence costs, the employer agrees to reimburse the worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker came to work for the employer to the employer's place of employment, whether in the U.S. or abroad. The amount of the transportation payment must be no less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved. The amount the employer will pay for daily subsistence expenses are those amounts disclosed in this clearance order, which are at least as much as the employer would charge the worker for providing the worker with three meals a day during employment (if applicable), but in no event will be less than the amount permitted under 20 CFR 655.173(a). The employer understands that the Fair Labor Standards Act applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages. 20 CFR 655.122(h)(1).

    B.  *Transportation from Place of Employment (Outbound)*

    If the worker completes the work contract period, or is terminated without cause, and the worker has no immediate subsequent H-2A employment, the employer agrees to provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker, disregarding intervening employment, departed to work for the employer. Return transportation will not be provided to workers who voluntarily abandon employment before the end of the work contract period, or who are terminated for cause, if the employer follows the notification requirements in 20 CFR 655.122(n).

    If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's place of employment to such subsequent employer's place of employment, the employer must provide for such expenses. If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's place of employment to such subsequent employer's place of employment, the subsequent employer must provide or pay for such expenses.

    The employer is not relieved of its obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the employer's obligation to hire U.S. workers who apply or are referred after the employer's date of need during the recruitment period set out in 20 CFR 655.135(d). 20 CFR 655.122(h)(2).

    C.  *Daily Transportation*

    Employer agrees to provide transportation between housing provided or secured by the employer and the employer's place(s) of employment at no cost to the worker. 20 CFR 655.122(h)(3).

    D.  *Compliance with Transportation Standards*

    Employer assures that all employer-provided transportation will comply with all applicable Federal, State, or local laws and regulations. Employer agrees to provide, at a minimum, the same transportation safety standards, driver licensure, and vehicle insurance as required under 29 U.S.C. 1841 and 29 CFR 500.104 or 500.105 and 29 CFR 500.120 to 500.128. If workers' compensation is used to cover transportation, in lieu of vehicle insurance, the employer will ensure that such workers' compensation covers all travel or that vehicle insurance exists to provide coverage for travel not covered by workers' compensation. Employer agrees to have property damage insurance. 20 CFR 655.122(h)(4).

8. **THREE-FOURTHS GUARANTEE**: Employer agrees to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any. 20 CFR 655.122(i).

    The employer may offer the worker more than the specified hours of work on a single workday. For purposes of meeting the three-fourths guarantee, the worker will not be required to work for more than the number of hours specified in the job order for a workday, or on the worker's Sabbath or Federal holidays. If, during the total work contract period, the employer affords the U.S. or H-2A worker less employment than that required under this guarantee, the employer will pay such worker the amount the worker would have earned had the worker, in fact, worked for the guaranteed number of days. An employer will not be considered to have met the work guarantee if the employer has merely offered work on three-fourths of the workdays if each workday did not consist of a full number of hours of work time as specified in the job order. All hours of work actually performed may be counted by the employer in calculating whether the period of guaranteed employment has been met. Any hours the worker fails to work, up to a maximum of the number of hours specified in the job order for a workday, when the worker has been offered an opportunity to work, and all hours of work actually performed (including voluntary work over 8 hours in a workday or on the worker's Sabbath or Federal holidays), may be counted by the employer in calculating whether the period of guaranteed employment has been met. 20 CFR 655.122(i).

    If the worker is paid on a piece rate basis, the employer agrees to use the worker's average hourly piece rate earnings or the required hourly wage rate, whichever is higher, to calculate the amount due under the three-fourths guarantee. 20 CFR 655.122(i).

Defs. 009840

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



If the worker voluntarily abandons employment before the end of the period of employment set forth in the job order, or is terminated for cause, and the employer follows the notification requirements in 20 CFR 655.122(n), the worker is not entitled to the three-fourths guarantee. The employer is not liable for payment of the three-fourths guarantee to an H-2A worker whom the Department of Labor certifies is displaced due to the employer's requirement to hire qualified and available U.S. workers during the referral period set out in 20 CFR 655.135(d), which lasts until 50 percent of the period of the work contract has elapsed (50 percent rule). 20 CFR 655.122(i).

*Important Note*: In circumstances where the work contract is terminated due to contract impossibility under 20 CFR 655.122(o), the three-fourths guarantee period ends on the date of termination.

9. **EARNINGS RECORDS**: Employer agrees to keep accurate and adequate records with respect to the workers' earnings at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained. The records must include each worker's permanent address, and, when available, permanent email address, and phone number(s). All records must be available for inspection and transcription by the Department of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker as evidenced by appropriate documentation. Where the records are maintained at a central recordkeeping office, other than in the place or places of employment, such records must be made available for inspection and copying within 72 hours following notice from the Department of Labor, or a duly authorized and designated representative, and by the worker and designated representatives. The content of earnings records must meet all regulatory requirements and be retained by the employer for a period of not less than 3 years after the date of certification by the Department of Labor. 20 CFR 655.122(j).

10. **HOURS AND EARNINGS STATEMENTS**: Employer agrees to furnish to the worker on or before each payday in one or more written statements the following information: (1) the worker's total earnings for the pay period; (2) the worker's hourly rate and/or piece rate of pay; (3) the hours of employment offered to the worker (showing offers in accordance with the three-fourths guarantee as determined in 20 CFR 655.122(i), separate from any hours offered over and above the guarantee); (4) the hours actually worked by the worker; (5) an itemization of all deductions made from the worker's wages; (6) if piece rates are used, the units produced daily; (7) beginning and ending dates of the pay period; and (8) the employer's name, address and FEIN. 20 CFR 655.122(k).

For workers engaged in the herding or production of livestock on the range, the employer is exempt from recording and furnishing the hours actually worked each day, the time the worker begins and ends each workday, as well as the nature and amount of work performed, but otherwise must comply with the earnings records and hours and earnings statement requirements set out in 20 CFR 655.122(j) and (k). The employer agrees to keep daily records indicating whether the site of the employee's work was on the range or off the range. If the employer prorates a worker's wage because of the worker's voluntary absence for personal reasons, it must also keep a record of the reason for the worker's absence. 20 CFR 655.210(f).

11. **RATES OF PAY**: The employer agrees that it will offer, advertise in its recruitment, and pay at least the Adverse Effect Wage Rate (AEWR), a prevailing wage rate, the agreed-upon collective bargaining rate, the Federal minimum wage, or the State minimum wage, whichever is highest, for every hour or portion thereof worked during a pay period. If the offered wage(s) disclosed in this clearance order is/are based on commission, bonuses, or other incentives, the employer guarantees the wage paid on a weekly, semi-monthly, or monthly basis will equal or exceed the AEWR, prevailing wage rate, Federal minimum wage, State minimum wage, or any agreed-upon collective bargaining rate, whichever is highest. If the applicable AEWR or prevailing wage is adjusted during the contract period, and that new rate is higher than the highest of the AEWR, the prevailing wage, the collective bargaining rate, the Federal minimum wage, or the State minimum wage, the employer will increase the pay of all employees in the same occupation to the higher rate no later than the effective date of the adjustment. If the new AEWR or prevailing wage is lower than the rate guaranteed on this job order, the employer will continue to pay at least the rate guaranteed on this job order.

If the worker is paid on a piece rate basis, the piece rate must be no less than the prevailing piece rate for the crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity in the geographic area, if one has been issued. At the end of the pay period, if the piece rate does not result in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate, the employer agrees to supplement the worker's pay at that time so that the worker's earnings are at least as much as the worker would have earned during the pay period if the worker had instead been paid at the appropriate hourly wage rate for each hour worked. 20 CFR 655.120, 655.122(l).

For workers engaged in the herding or production of livestock on the range, the employer agrees to pay the worker at least the monthly AEWR, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, in effect at the time work is performed, whichever is highest, for every month of the job order period or portion thereof. If the offered wage disclosed in this clearance order is based on commissions, bonuses, or other incentives, the employer guarantees that the wage paid will equal or exceed the monthly AEWR, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, whichever is highest, and will be paid to each worker free and clear without any unauthorized deductions. The employer may prorate the wage for the initial and final pay periods of the job order period if its pay period does not match the beginning or ending dates of the job order. The employer also may prorate the wage if an employee is voluntarily unavailable to work for personal reasons. 20 CFR 655.210(g).

12. **FREQUENCY OF PAY:** Employer agrees to pay workers when due based on the frequency disclosed in this clearance order. 20 CFR 655.122(m).

13. **ABANDONMENT OF EMPLOYMENT OR TERMINATION FOR CAUSE**: If a worker voluntarily abandons employment before the end of the contract period, or is terminated for cause, the employer is not responsible for providing or paying for the subsequent transportation and subsistence expenses of that worker, and that worker is not entitled to the three-fourths guarantee, if the employer notifies the U.S. Department of Labor and, if applicable, the Department of Homeland Security, in writing or by any other method specified by the Department of Labor or the Department of Homeland Security in the *Federal Register*, not later than 2 working days after the abandonment or termination occurs. A worker will be deemed to have abandoned the work contract after the worker fails to show up for work at the regularly scheduled time for 5 consecutive work days without the consent of the employer. 20 CFR 655.122(n).

14. **CONTRACT IMPOSSIBILITY**: The work contract may be terminated before the end date of work specified in the work contract if the services of the workers are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes fulfillment of the contract impossible, as determined by the Department of Labor. In the event that the work contract is terminated, the employer agrees to fulfill the three-fourths guarantee for the time that has elapsed from the start date of work specified in the work contract to the date of termination. The employer also agrees that it will make efforts to transfer the worker to other comparable employment acceptable

Defs. 009841

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



to the worker and consistent with existing immigration laws. In situations where a transfer is not affected, the employer agrees to return the worker at the employer's expense to the place from which the worker, disregarding intervening employment, came to work for the employer, or transport the worker to his/her next certified H-2A employer, whichever the worker prefers. The employer will also reimburse the worker the full amount of any deductions made by the employer from the worker's pay for transportation and subsistence expenses to the place of employment. The employer will also pay the worker for any transportation and subsistence expenses incurred by the worker to that employer's place of employment. The amounts the employer will pay for subsistence expenses per day are those amounts disclosed in this clearance order. The amount of the transportation payment must not be less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved. 20 CFR 655.122(o).

The employer is not required to pay for transportation and daily subsistence from the place of employment to a subsequent employer's place of employment if the worker has contracted with a subsequent employer who has agreed to provide or pay for the worker's transportation and subsistence expenses from the present employer's place of employment to the subsequent employer's place of employment. 20 CFR 655.122(h)(2).

15. **DEDUCTIONS FROM WORKER'S PAY:** Employer agrees to make all deductions from the worker's paycheck required by law. This job offer discloses all deductions not required by law which the employer will make from the worker's paycheck and all such deductions are reasonable, in accordance with 20 CFR 655.122(p) and 29 CFR part 531. The wage requirements of 20 CFR 655.120 will not be met where undisclosed or unauthorized deductions, rebates, or refunds reduce the wage payment made to the employee below the minimum amounts required under 20 CFR part 655, subpart B, or where the employee fails to receive such amounts free and clear because the employee kicks back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. 20 CFR 655.122(p).

16. **DISCLOSURE OF WORK CONTRACT:** Employer agrees to provide a copy of the work contract to an H-2A worker no later than the time at which the worker applies for the visa, or to a worker in corresponding employment no later than on the day work commences. For an H-2A worker coming to the employer from another H-2A employer or who does not require a visa for entry to the United States, the employer agrees to provide a copy of the work contract no later than the time an offer of employment is made to the H-2A worker. A copy of the work contract will be provided to each worker in a language understood by the worker, as necessary or reasonable. In the absence of a separate, written work contract entered into between the employer and the worker, the work contract at minimum will be the terms of this clearance order, including all Addenda, the certified *H-2A Application for Temporary Employment Certification* and any obligations required under 8 U.S.C. 1188, 29 CFR part 501, or 20 CFR part 655, subpart B. 20 CFR 655.122(q).

17. **ADDITIONAL ASSURANCES FOR CLEARANCE ORDERS:**

  A. Employer agrees to provide to workers referred through the clearance system the number of hours of work disclosed in this clearance order for the week beginning with the anticipated first date of need, unless the employer has amended the first date of need at least 10 business days before the original first date of need by so notifying the Order-Holding Office (OHO) in writing (*e.g.*, email notification). The employer understands that it is the responsibility of the SWA to make a record of all notifications and attempt to inform referred workers of the amended first date of need expeditiously. 20 CFR 653.501(c)(3)(i).

   If there is a change to the anticipated first date of need, and the employer fails to notify the OHO at least 10 business days before the original first date of need, the employer agrees that it will pay eligible workers referred through the clearance system the specified rate of pay disclosed in this clearance order for the first week starting with the originally anticipated first date of need or will provide alternative work if such alternative work is stated on the clearance order. 20 CFR 653.501(c)(5).

  B. Employer agrees that no extension of employment beyond the period of employment specified in the clearance order will relieve it from paying the wages already earned, or if specified in the clearance order as a term of employment, providing transportation from the place of employment, as described in paragraph 7.B above. 20 CFR 653.501(c)(3)(ii).

  C. Employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration, and other employment-related laws. 20 CFR 653.501(c)(3)(iii).

  D. Employer agrees to expeditiously notify the OHO or SWA by emailing and telephoning immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment. 20 CFR 653.501(c)(3)(iv).

  E. If acting as a farm labor contractor (FLC) or farm labor contractor employee (FLCE) on this clearance order, the employer assures that it has a valid Federal FLC certificate or Federal FLCE identification card and when appropriate, any required State FLC certificate. 20 CFR 653.501(c)(3)(v).

  F. Employer assures that outreach workers will have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107. 20 CFR 653.501(c)(3)(vii).

*I declare* under penalty of perjury that I have read and reviewed this clearance order, including every page of this Form ETA-790A and all supporting addendums, and that to the best of my knowledge, the information contained therein is true and accurate. This clearance order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. 20 CFR 653.501(c)(3)(viii). I understand that to knowingly furnish materially false information in the preparation of this form and/or any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both. 18 U.S.C. §§ 2, 1001.

| 1. Last (family) name * <br> Griffin | 2. First (given) name * <br> Courtney | 3. Middle initial § <br> H. |
|---|---|---|

| 4. Title * <br> Director of Operational Support |
|---|

Form ETA-790A          **FOR DEPARTMENT OF LABOR USE ONLY**          Page 7 of 8

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009842

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A
U.S. Department of Labor



| 5. Signature (or digital signature) * | |
|---|---|
| Digital Signature Verified and Retained By | *Certifying Officer* |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page 8 of 8

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009843

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 2. Incentive: Green Beans, pack | $ 00 . 37 | Piece Rate | per box/wooden crate/RPC |
| | 3. Incentive: Green Beans, bag (closed) | $ 00 . 37 | Piece Rate | per box/RPC (14, 1 lb. bags or 6, 2 lb. bags) |
| | 4. Incentive: Green Beans, bag (open) | $ 00 . 30 | Piece Rate | per box/RPC (12 count) |
| | 5. Incentive: Broccoli, harvest | $ 01 . 50 | Piece | per box/RPC |
| | 6. Incentive: Broccoli, harvest and field pack | $ 01 . 00 | Piece Rate | per box/RPC |
| | 7. Incentive: Broccoli, cut, band, bundle, box and load | $ 01 . 40 | Piece Rate | per box/RPC. Production standard of 5 boxes of Broccoli per hour. |
| | 8. Incentive: Broccoli (bunches), harvest and field pack | $ 01 . 75 | Piece Rate | per box/RPC (approx. 14 count) |
| | 9. Incentive: Broccoli (crowns), harvest and field pack | $ 00 . 90 | Piece Rate | per box/RPC (approx. 32 count) |
| | 10. Incentive: Broccoli, harvest | $ 20 . 00 | Piece Rate | per bin (dimensions: 40"x48"x36") |
| | 11. Incentive: Broccoli, pack | $ 00 . 12 | Piece Rate | per bushel box/RPC |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.1 of A.14

**Form ETA-790A Addendum A**     **FOR DEPARTMENT OF LABOR USE ONLY**     Page A.1 of A.1

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009844

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
|  | 12. Incentive: Broccoli, wrap 12 ct. | $ 00 . 35 | Piece Rate | per bushel/RPC |
|  | 13. Incentive: Broccoli, wrap 16 ct. | $ 00 . 40 | Piece Rate | per bushel/RPC |
|  | 14. Incentive: Cabbage, harvest | $ 00 . 25 | Piece Rate | per 7 gallon bucket. Production standard of 29 seven gallon buckets of Cabbage harvested per hour. |
|  | 15. Incentive: Cabbage, harvest | $ 00 . 50 | Piece | per 40 lb. RPC container |
|  | 16. Incentive: Cabbage, harvest and field pack | $ 00 . 60 | Piece Rate | per 50 lb. box. Production standard of 12 fifty (50) pound boxes of Cabbage harvested and field packed per hour. |
|  | 17. Incentive: Cabbage, pack on line | $ 00 . 30 | Piece Rate | per 50 lb. box. Production standard of 24 fifty pound boxes of Cabbage packed on line per hour. |
|  | 18. Incentive: Cabbage, non wrap 12 ct | $ 00 . 25 | Piece Rate | per DRC |
|  | 19. Incentive: Cabbage, wrap 6 ct | $ 00 . 25 | Piece Rate | per box/RPC/DRC |
|  | 20. Incentive: Cabbage, wrap 12 ct | $ 00 . 46 | Piece Rate | per box/RPC/DRC |
|  | 21. Incentive: Cabbage, wrap 16 ct | $ 00 . 60 | Piece Rate | per box/RPC/DRC |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.2 of A.14

Form ETA-790A Addendum A     FOR DEPARTMENT OF LABOR USE ONLY     Page A.1 of A.1

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009845

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 22. Incentive: Cabbage, wrap 18 ct | $ 00 . 65 | Piece Rate | per box/RPC/DRC |
| | 23. Incentive: Cilantro, bag | $ 01 . 00 | Piece Rate | per 24 bag box/RPC |
| | 24. Incentive: Cauliflower, harvest | $ 01 . 00 | Piece Rate | per box/ RPC |
| | 25. Incentive: Cauliflower, harvest and field wrap | $ 01 . 20 | Piece | per bushel box/RPC |
| | 26. Incentive: Cauliflower, harvest | $ 11 . 00 | Piece Rate | per bin (dimensions: 40"x48"x36") |
| | 27. Incentive: Cauliflower, pack | $ 00 . 20 | Piece Rate | per box/RPC |
| | 28. Incentive: Corn, manually harvest and field pack | $ 00 . 80 | Piece Rate | per wooden crate/RPC/Eco Crate. Production standard of 9 bushel crates of Corn manually harvested and field packed per hour. |
| | 29. Incentive: Corn, pack | $ 00 . 30 | Piece Rate | per 48 ct. wooden crate/RPC/eco crate |
| | 30. Incentive: Cucumber, harvest cucumbers | $ 00 . 50 | Piece Rate | per 5 gallon bucket. Production standard of 14, 5 gallon buckets of Cucumbers harvested per hour. |
| | 31. Incentive: Cucumber, hang new net | $ 01 . 50 | Piece Rate | per 100 ft row |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.3 of A.14

Form ETA-790A Addendum A
H-2A Case Number: H-300-22364-667294      Case Status: Full Certification      FOR DEPARTMENT OF LABOR USE ONLY      Determination Date: 02/06/2023      Validity Period: _____ to _____      Page A.1 of A.1

Defs. 009846



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**

**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 32. Incentive: Cucumber, hang used net | $ 02 . 00 | Piece Rate | per 100 ft row |
| | 33. Incentive: Cucumber, tie net | $ 02 . 50 | Piece Rate | per 100 ft row |
| | 34. Incentive: Cucumber, train first time | $ 01 . 30 | Piece Rate | per 100 ft row |
| | 35. Incentive: Cucumber, train 2nd time and beyond | $ 02 . 00 | Piece | per 100 ft row |
| | 36. Incentive: Cucumber, clean net | $ 02 . 00 | Piece Rate | per 100 ft row |
| | 37. Incentive: Cucumber, cut string on net | $ 01 . 00 | Piece Rate | per 100 ft row |
| | 38. Incentive: Cucumber, take down and roll up net | $ 01 . 25 | Piece Rate | per 100 ft row |
| | 39. Incentive: Cucumber, string behind old pepper | $ 00 . 45 | Piece Rate | per 100 ft row |
| | 40. Incentive: Cucumber, unstring behind old eggplant | $ 00 . 45 | Piece Rate | per 100 ft row |
| | 41. Incentive: Cucumber, place pack | $ 00 . 30 | Piece Rate | per 60 lb. box. Production standard of 24 sixty pound boxes of Cucumbers place packed per hour. |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.4 of A.14

Form ETA-790A Addendum A          **FOR DEPARTMENT OF LABOR USE ONLY**          Page A.1 of A.1
H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009847

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 42. Incentive: Cucumber, pack (ALDI carton) | $ 00 . 10 | Piece Rate | per carton (ALDI) |
| | 43. Incentive: Cucumber, pack | $ 00 . 30 | Piece Rate | per DRC (65 count) |
| | 44. Incentive: Cucumber, pack (PLU) | $ 00 . 45 | Piece Rate | per box/RPC (approx. 70 count) |
| | 45. Incentive: Cucumber, harvest pickle | $ 01 . 25 | Piece | per 5 gallon bucket/RPC |
| | 46. Incentive: Cucumber, pack pickling cucumbers into 2 lb. bags | $ 00 . 45 | Piece Rate | per 10 bag box/RPC |
| | 47. Incentive: Cucumber, pack pickling cucumbers into 1 lb. bag | $ 00 . 35 | Piece Rate | per 12 bag box/RPC |
| | 48. Incentive: Eggplant, harvest | $ 00 . 50 | Piece Rate | per 7 gallon bucket/RPC. Production standard of 15, 7 gallon buckets of Eggplant harvested per hour. |
| | 49. Incentive: Eggplant, String (2 string) | $ 00 . 55 | Piece Rate | per 100 ft row |
| | 50. Incentive: Eggplant, unstring (10 string) | $ 00 . 60 | Piece Rate | per 100 ft row |
| | 51. Incentive: Eggplant, unstring (8 string) | $ 00 . 55 | Piece Rate | per 100 ft row |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.5 of A.14

Form ETA-790A Addendum A          **FOR DEPARTMENT OF LABOR USE ONLY**                                    Page A.1 of A.1

H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009848

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 52. Incentive: Eggplant, unstring (6 string) | $ 00 . 50 | Piece Rate | per 100 ft row |
| | 53. Incentive: Eggplant, pack | $ 00 . 23 | Piece Rate | per RPC/DRC/bushel box |
| | 54. Incentive: Eggplant, pack | $ 00 . 05 | Piece Rate | per 1/2 bushel box |
| | 55. Incentive: Lettuce, harvest | $ 00 . 60 | Piece | per box/RPC |
| | 56. Incentive: Lettuce, wrap | $ 00 . 65 | Piece Rate | per bushel box |
| | 57. Incentive: Okra, harvest okra | $ 04 . 00 | Piece Rate | per 5 gallon bucket/RPC |
| | 58. Incentive: Okra, pack | $ 00 . 60 | Piece Rate | per box/RPC (12 bags or 15 clamshells) |
| | 59. Incentive: Anaheim Pepper, harvest | $ 01 . 00 | Piece Rate | per bushel/RPC (Equivalent to $0.63 per 5 gallon bucket). Production standard of 7 bushels of Anaheim Peppers harvested per hour. |
| | 60. Incentive: Anaheim Pepper, harvest | $ 00 . 50 | Piece Rate | per  bushel (Equivalent to $0.63 per 5 gallon bucket). Production standard of 14 half (1/2) bushels of Anaheim Peppers harvested per hour. |
| | 61. Incentive: Anaheim Pepper, harvest | $ 00 . 63 | Piece Rate | per 5 gallon bucket. Production standard of 11, 5 gallon buckets of Anaheim Peppers harvested per hour. |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.6 of A.14

Form ETA-790A Addendum A          FOR DEPARTMENT OF LABOR USE ONLY                                      Page A.1 of A.1
H-2A Case Number: H-300-22364-667294      Case Status: Full Certification          Determination Date: 02/06/2023      Validity Period: _____ to _____

Defs. 009849

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 62. Incentive: Anaheim Pepper, bag | $ 00 . 25 | Piece Rate | per box/RPC (12 count) |
| | 63. Incentive: Bell Pepper, harvest | $ 00 . 50 | Piece Rate | per 7 gallon bucket/RPC. Production standard of 8, 7 gallon buckets of Bell Pepper harvested per hour. |
| | 64. Incentive: Bell Pepper, string (6 string) | $ 00 . 70 | Piece Rate | per 100 ft row |
| | 65. Incentive: Bell Pepper, string (4 string) | $ 00 . 50 | Piece Rate | per 100 ft row |
| | 66. Incentive: Bell Pepper, string (2 string) | $ 00 . 40 | Piece Rate | per 100 ft row |
| | 67. Incentive: Bell Pepper, unstring | $ 00 . 40 | Piece Rate | per 100 ft row |
| | 68. Incentive: Bell Pepper, place pack | $ 00 . 30 | Piece Rate | per 1 1/9 bushel. Production standard of 24, 1 1/9 bushels of Bell Peppers place packed per hour. |
| | 69. Incentive: Bell Pepper, pack | $ 00 . 30 | Piece Rate | per DRC (48 count) |
| | 70. Incentive: Bell Pepper, pack (PLU) | $ 00 . 30 | Piece Rate | per box/RPC (approx. 55 count) |
| | 71. Incentive: Bell Pepper, pack (PLU) | $ 00 . 32 | Piece Rate | per box/RPC (approx. 65 count) |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.7 of A.14

Defs. 009850

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



## A.9. Additional Crop or Agricultural Activities and Wage Offer Information

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 72. Incentive: Bell Pepper, pack bags (12 count) | $ 00 . 25 | Piece Rate | 12 count per box/RPC |
| | 73. Incentive: Bell Pepper, pack bags (16 count) | $ 00 . 30 | Piece Rate | 16 count per box/RPC |
| | 74. Incentive: Cherry Pepper, harvest | $ 02 . 40 | Piece Rate | per bushel/RPC (Equivalent to $1.50 per 5 gallon bucket). Production standard of 3 bushels of Cherry Peppers harvested per hour. |
| | 75. Incentive: Cherry Pepper, harvest | $ 01 . 20 | Piece Rate | per  bushel (Equivalent to $1.50 per 5 gallon bucket). Production standard of 6 half (1/2) bushels of Cherry Peppers harvested per hour. |
| | 76. Incentive: Cherry Pepper, harvest | $ 01 . 50 | Piece Rate | per 5 gallon bucket. Production standard of 4, 5 gallon buckets of Cherry Peppers harvested per hour. |
| | 77. Incentive: Cubanelle Pepper, harvest | $ 00 . 70 | Piece Rate | per bushel/RPC (Equivalent to $0.44 per 5 gallon bucket). Production standard of 10 bushels of Cubanelle Peppers harvested per hour. |
| | 78. Incentive: Cubanelle Pepper, harvest | $ 00 . 35 | Piece Rate | per  bushel (Equivalent to $0.44 per 5 gallon bucket). Production standard of 20 half (1/2) bushels of Cubanelle Peppers harvested per hour. |
| | 79. Incentive: Cubanelle Pepper, harvest | $ 00 . 44 | Piece Rate | per 5 gallon bucket. Production standard of 16, 5 gallon buckets of Cubanelle Peppers harvested per hour. |
| | 80. Incentive: Cubanelle Pepper, pack | $ 00 . 25 | Piece Rate | per box/RPC (12, 1 lb. bags) |
| | 81. Incentive: Finger Hot Pepper, harvest | $ 03 . 50 | Piece Rate | per bushel/RPC (Equivalent to $2.19 per 5 gallon bucket). Production standard of 2 bushels of Finger Hot Peppers harvested per hour. |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.8 of A.14

**Form ETA-790A Addendum A**                          **FOR DEPARTMENT OF LABOR USE ONLY**                          Page A.1 of A.1

H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009851

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



## A.9. Additional Crop or Agricultural Activities and Wage Offer Information

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 82. Incentive: Finger Hot Pepper, harvest | $ 01 75 | Piece Rate | per bushel (Equivalent to $2.19 per 5 gallon bucket). Production standard of 4 half (1/2) bushels of Finger Hot Peppers harvested per hour. |
| | 83. Incentive: Finger Hot Pepper, harvest | $ 02 19 | Piece Rate | per 5 gallon bucket. Production standard of 3, 5 gallon buckets of Finger Hot Peppers harvested per hour. |
| | 84. Incentive: Habanero Pepper, harvest | $ 02 40 | Piece Rate | per bushel/RPC (equivalent to $1.50 per 5 gallon bucket). Production standard of 3 bushels of Habanero Peppers harvested per hour. |
| | 85. Incentive: Habanero Pepper, harvest | $ 01 20 | Piece Rate | per 1/2 bushel (equivalent to $1.00 per 5 gallon bucket). Production standard of 6 1/2 bushels of Habanero Peppers harvested per hour. |
| | 86. Incentive: Habanero Pepper, harvest | $ 01 50 | Piece Rate | per 5 gallon bucket. Production standard of 4, 5 gallon buckets of Habanero Peppers harvested per hour. |
| | 87. Incentive: Hot Pepper, string (4 string) | $ 00 60 | Piece Rate | per 100 ft row |
| | 88. Incentive: Hot Pepper, unstring | $ 00 40 | Piece Rate | per 100 ft row |
| | 89. Incentive: Hungarian Wax Pepper, harvest | $ 01 39 | Piece Rate | per bushel/RPC (Equivalent to $1.25 per 5 gallon bucket) (Equivalent to $25.00 per 18 bushel bin). Production standard of 5 bushels of Hungarian Wax Peppers harvested per hour. |
| | 90. Incentive: Hungarian Wax Pepper, harvest | $ 00 69 | Piece Rate | per bushel (Equivalent to $1.25 per 5 gallon bucket) (Equivalent to $25.00 per 18 bushel bin). Production standard of 20 half (1/2) bushels of Hungarian Wax Peppers harvested per hour. |
| | 91. Incentive: Hungarian Wax Pepper, harvest | $ 01 25 | Piece Rate | per 5 gallon bucket (Equivalent to $25.00 per 18 bushel bin). Production standard of 5, 5 gallon buckets of Hungarian Wax Peppers harvested per hour. |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.9 of A.14

Defs. 009852

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
|  | 92. Incentive: Jalapeno Pepper, harvest | $ 02 . 67 | Piece Rate | per bushel/RPC (Equivalent to $1.50 per 5 gallon bucket). Production standard of 2 bushels of Jalapeno Peppers harvested per hour. |
|  | 93. Incentive: Jalapeno Pepper, harvest | $ 01 . 20 | Piece Rate | per ½ bushel (Equivalent to $1.50 per 5 gallon bucket). Production standard of 4 half (1/2) bushels of Jalapeno Peppers harvested per hour. |
|  | 94. Incentive: Jalapeno Pepper, harvest | $ 01 . 50 | Piece Rate | per 5 gallon bucket. Production standard of 4, 5 gallon buckets of Jalapeno Peppers harvested per hour. |
|  | 95. Incentive: Jalapeno Pepper, bag | $ 00 . 50 | Piece | per box/RPC (18 count) |
|  | 96. Incentive: Long Hot Pepper, harvest | $ 01 . 00 | Piece Rate | per bushel/RPC (Equivalent to $0.63 per 5 gallon bucket). Production standard of 7 bushels of Long Hot Peppers harvested per hour. |
|  | 97. Incentive: Long Hot Pepper, harvest | $ 00 . 50 | Piece Rate | per bushel (Equivalent to $0.63 per 5 gallon bucket). Production standard of 14 half (1/2) bushels of Long Hot Peppers harvested per hour. |
|  | 98. Incentive: Long Hot Pepper, harvest | $ 00 . 63 | Piece Rate | per 5 gallon bucket. Production standard of 11, 5 gallon buckets of Long Hot Peppers harvested per hour. |
|  | 99. Incentive: Mini Sweet Pepper, harvest | $ 03 . 50 | Piece Rate | per RPC |
|  | 100. Incentive: Mini Sweet Pepper, pack into 1 lb. bags | $ 00 . 40 | Piece Rate | per box/RPC (12 bags) |
|  | 101. Incentive: Mini Sweet Pepper, pack into 8 oz. bags | $ 00 . 25 | Piece Rate | per box/RPC (12 bags) |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.10 of A.1

Form ETA-790A Addendum A    FOR DEPARTMENT OF LABOR USE ONLY    Page A.1 of A.1

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009853

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 102. Incentive: Mini Sweet Pepper, pack into 1 lb. bags | $ 00 . 50 | Piece Rate | per box/RPC (18 bags) |
| | 103. Incentive: Poblano Pepper, harvest | $ 01 . 39 | Piece Rate | per bushel/RPC (Equivalent to $25.00 per 18 bushel bin). Production standard of 7 bushels of Poblano Peppers harvested per hour. |
| | 104. Incentive: Poblano Pepper, harvest | $ 00 . 70 | Piece Rate | per  bushel (Equivalent to $25.00 per 18 bushel bin). Production standard of 14 half (1/2) bushels of Poblano Peppers harvested per hour. |
| | 105. Incentive: Poblano Pepper, harvest | $ 00 . 75 | Piece | per 5 gallon bucket (Equivalent to $25.00 per 18 bushel bin). Production standard of 11, 5gallon buckets of Poblano Peppers harvested per hour. |
| | 106. Incentive: Poblano Pepper, bag | $ 00 . 25 | Piece Rate | per box/RPC (12 count) |
| | 107. Incentive: Serrano Pepper, harvest | $ 03 . 00 | Piece Rate | per bushel/RPC (Equivalent to $1.88 per 5 gallon bucket). Production standard of 2 bushels of Serrano Peppers harvested per hour. |
| | 108. Incentive: Serrano Pepper, harvest | $ 01 . 50 | Piece Rate | per  bushel (Equivalent to $1.88 per 5 gallon bucket). Production standard of 4 half (1/2) bushels of Serrano Peppers harvested per hour. |
| | 109. Incentive: Serrano Pepper, harvest | $ 01 . 88 | Piece Rate | per 5 gallon bucket. Production standard of 3, 5 gallon buckets of Serrano Peppers harvested per hour. |
| | 110. Incentive: Serrano Pepper, pack | $ 00 . 50 | Piece Rate | per box/RPC (24, 4 oz. bags) |
| | 111. Incentive: Shishito Pepper, harvest | $ 03 . 00 | Piece Rate | per bushel/RPC (equivalent to $1.88 per 5 gallon bucket) |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.11 of A.1

Defs. 009854



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**

**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 112. Incentive: Shishito Pepper, harvest | $ 01 . 50 | Piece Rate | per 1/2 bushel (equivalent to $1.88 per 5 gallon bucket) |
| | 113. Incentive: Shishito Pepper, harvest | $ 01 . 88 | Piece Rate | per 5 gallon bucket |
| | 114. Incentive: Sweet China Pepper, harvest | $ 00 . 70 | Piece Rate | per bushel/RPC (Equivalent to $0.44 per 5 gallon bucket). Production standard of 10 bushels of Sweet China Peppers harvested per hour. |
| | 115. Incentive: Sweet China Pepper, harvest | $ 00 . 35 | Piece Rate | per bushel (Equivalent to $0.44 per 5 gallon bucket). Production standard of 20 1/2 bushels of Sweet China Peppers harvested per hour. |
| | 116. Incentive: Sweet China Pepper, harvest | $ 00 . 44 | Piece Rate | per 5 gallon bucket. Production standard of 16, 5 gallon buckets of Sweet China Peppers harvested per hour. |
| | 117. Incentive: Squash, harvest | $ 01 . 00 | Piece Rate | per 7 gallon bucket. Production standard of 8, 7 gallon buckets of Squash harvested per hour. |
| | 118. Incentive: Squash, harvest | $ 01 . 75 | Piece Rate | per RPC |
| | 119. Incentive: Squash, pack | $ 00 . 23 | Piece Rate | per 1/2 bushel box. Production standard of 35 half (1/2) bushels of Squash packed per hour. |
| | 120. Incentive: Squash, pack | $ 00 . 50 | Piece Rate | per box/RPC (10, 2 lb. bags) |
| | 121. Incentive: Squash, bag | $ 00 . 35 | Piece Rate | per box/RPC (12, 20 oz. bags or 6, 2 lb. bags) |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.12 of A.1

**Form ETA-790A Addendum A**    **FOR DEPARTMENT OF LABOR USE ONLY**    Page A.1 of A.1

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009855



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**

**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 122. Incentive: Hard Squash, harvest | $ 00 . 70 | Piece Rate | per 5 gallon bucket/RPC |
| | 123. Incentive: Hard Squash, pack 2 hard squashes into mesh bag | $ 00 . 03 | Piece Rate | per bag |
| | 124. Incentive: Tomatillo, harvest | $ 01 . 75 | Piece Rate | per bushel/RPC |
| | 125. Incentive: Tomatillo, harvest | $ 01 . 00 | Piece | per bushel |
| | 126. Incentive: Tomatillo, harvest | $ 01 . 19 | Piece Rate | per 5 gallon bucket |
| | 127. Incentive: Tomatillo, string (2 string) | $ 00 . 25 | Piece Rate | per 100 ft row |
| | 128. Incentive: Tomatillo, unstring | $ 00 . 25 | Piece Rate | per 100 ft row |
| | 129. Incentive: Tomatillo, bag | $ 00 . 25 | Piece Rate | per box/RPC (12, 1 lb. bags) |
| | 130. Incentive: Tomato (Round and Roma), pick and pack in field | $ 02 . 25 | Piece Rate | per 25 lb. box |
| | 131. Incentive: Watermelon, driver | $ 100 . 00 | Piece Rate | per day |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.13 of A.1

Form ETA-790A Addendum A       FOR DEPARTMENT OF LABOR USE ONLY       Page A.1 of A.1
H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009856

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum A
**U.S. Department of Labor**



**A.9. Additional Crop or Agricultural Activities and Wage Offer Information**

| Crop ID | Crop or Agricultural Activity | Wage Offer | Per | Piece Rate Units / Estimated Hourly Rate / Special Pay Information |
|---|---|---|---|---|
| | 132. Incentive: Watermelon, loader | $ 100 . 00 | Piece Rate | per bus |
| | 133. Incentive: Watermelon, unloader | $ 24 . 00 | Piece Rate | per 17,000 lb. bus |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |
| | | $ ____ . ____ | | |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Page A.14 of A.1

Defs. 009857

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum B
**U.S. Department of Labor**



**C. Additional Place of Employment Information**

| 1. Name of Agricultural Business § | 2. Place of Employment * | 3. Additional Place of Employment Information § | 4. Begin Date § | 5. End Date § | 6. Total Workers § |
|---|---|---|---|---|---|
| Hamilton Growers, Inc. | 2775 Ellenton-Norman Park Road<br>Norman Park, Georgia 31771<br>COLQUITT | Well 17: Scooter's Field- George Flowers Road; Well 18: Chafin Place- Cool Springs Road; Well 19 Lawrence Field: John Vickers | 3/1/2023 | 12/30/2023 | 249 |
| Hamilton Growers, Inc. | 2775 Ellenton-Norman Park Road<br>Norman Park, Georgia 31771<br>COLQUITT | Well 38 Square Mile Field: Ellis May Road and Clark Road; Well 39 Square Mile Farm: Clarke Road; Well 40 Holloway Farm: CM Chafin | 3/1/2023 | 12/30/2023 | 249 |
| Hamilton Growers, Inc. | Well 11: Joe Coleman Road<br>Omega, Georgia 31775<br>COLQUITT | Well 12: Sharon Church Road; Well 13: C.A. Hardy Road; Well 25 Powell SW Field: Ellenton Omega Road and Swords Road: Well | 3/1/2023 | 12/30/2023 | 249 |
| Hamilton Growers, Inc. | Well 5: Old Union Road-Lasseter Road<br>Adel, Georgia 31620<br>COOK | Well 10: Old Union Road and Quilly Jones Road | 3/1/2023 | 12/30/2023 | 249 |
| Hamilton Growers, Inc. | Well 31 Lenox 1: Barneyville Road<br>Sparks, Georgia 31647<br>COOK | Well 32 Lenox 2: Wagonwheel Road; Well 33 Lenox 3: Wagonwheel Road; Well 34 Lenox 4: Wagonwheel Road; Well 35 Lenox 5: Nipper | 3/1/2023 | 12/30/2023 | 249 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**D. Additional Housing Information**

H-2A Case Number: H-300-22364-667294     Case Status: Full Certification     Determination Date: 02/06/2023     Validity Period: _____ to _____

Defs. 009858

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum B
**U.S. Department of Labor**



| 1. Type of Housing * | 2. Physical Location * | 3. Additional Housing Information § | 4. Total Units * | 5. Total Occupancy * | 6. Inspection Entity * |
|---|---|---|---|---|---|
| ☑ Employer-provided<br><br>☐ Rental or public accommodations | Reno Camp- 5821 Cool Springs Road<br>Norman Park, Georgia 31771<br>COLQUITT | Availability of 33. - From Moultrie, GA, take Highway 37 East to the round about. Turn left onto Cool Springs Road. Go approx. 7 miles to the 4-way stop intersection and continue straight. In less than one mile, the entrance will be located on the left-hand side. Las Vegas, Reno and Tahoe barracks are located down the entrance lane, past the guard tower. All visitors must show proper ID before entering. | 1 | 236 | ☑ Local authority<br>☑ SWA<br>☑ Other State authority<br>☑ Federal authority<br>☐ Other<br><br>_____ |
| ☐ Employer-provided<br><br>☐ Rental or public accommodations | | | | | ☐ Local authority<br>☐ SWA<br>☐ Other State authority<br>☐ Federal authority<br>☐ Other<br><br>_____ |
| ☐ Employer-provided<br><br>☐ Rental or public accommodations | | | | | ☐ Local authority<br>☐ SWA<br>☐ Other State authority<br>☐ Federal authority<br>☐ Other<br><br>_____ |
| ☐ Employer-provided<br><br>☐ Rental or public accommodations | | | | | ☐ Local authority<br>☐ SWA<br>☐ Other State authority<br>☐ Federal authority<br>☐ Other<br><br>_____ |
| ☐ Employer-provided<br><br>☐ Rental or public accommodations | | | | | ☐ Local authority<br>☐ SWA<br>☐ Other State authority<br>☐ Federal authority<br>☐ Other<br><br>_____ |

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum B**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page B.2 of B.2

H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009859



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**

## H. Additional Material Terms and Conditions of the Job Offer

*a. Job Offer Information 1*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Perform manual labor to plant, cultivate, harvest, grade, sort and pack cucumbers, cabbage, peppers, eggplant, squash, corn, okra, cotton, green beans, watermelons, broccoli, cilantro, pickle cucumbers, tomatillos, lettuce, cauliflower, peanuts, and tomatoes by hand or machine.

Pre-harvest duties include tilling soil, planting, re-planting, cultivating, watering, pruning, weeding, using shears, knives, and other various cultivation tools. Apply chemicals and fertilizers. Install, maintain, and operate, regulate, and repair irrigation equipment. Install or remove items required in plasticulture. Install or remove stakes, wire, netting or string. Remove or clean plant debris or vines from ground or trellises. Train vines or plants on strings or trellises. Determine produce sustainability for harvest based on size, degree of maturity or market standards. Record information about crops. Harvest produce using tools such as knives, clippers, and shears. Banding techniques will be included during harvest at times. Operate tractors, tractor-drawn machinery, and self- propelled machinery to plow, harrow, fertilize, apply chemicals, plant, cultivate, or harvest crops. Operate, repair, and maintain farm vehicles, implements and mechanical equipment. Repair farm buildings, fences, and other structures. Grade, sort, wash, select, label, or pack harvested products into bags or boxes. Crops may be harvested and field packed or loaded and transported to the packinghouse for storage and post-harvest treatment of crops. Stack boxes onto pallets, transport vehicles or trailers. Count and check harvested products. Use hammers, wire clippers and other tools to construct trellises and fences. Clean and maintain all grounds and facilities. Regulate maintain and repair irrigation systems. Assist with Good Agricultural Practices policies.

Allergies to ragweed, goldenrod, honey bees, insecticides, herbicides, fungicides, or related chemicals may affect a worker's ability to perform the job. Persons seeking employment in this position must be available for the entire period requested by the employer. Employer reserves the right to discharge an obviously unqualified worker, malingerer or recalcitrant worker who is physically able but is unwilling to perform the work necessary for the employer to grow a premium quality product, or for any other lawful reason.

Employer makes every effort to provide a safe workplace, including taking steps to protect workers from the spread of COVID-19. In accordance with those efforts, all federal, state and local COVID-19 workplace rules and requirements are recognized and must be followed as a condition of employment. All employees or tentative employees traveling from outside the commuting area should have evidence of adherence to all travel requirements imposed by the United States government, including but not limited to meeting any specific COVID-19 vaccination requirements for air travel and travel from another country across a land border. After arrival, any request for an exception to any workplace safety policy must be given to the employer in writing prior to beginning work or as soon as practicably possible.

Pre-hiring informational workshops for local workers are held on the first Monday of every month at the GADOL office in Moultrie at 8:00 a.m. beginning on February 6, 2023 and during the hiring period. Interested local workers are encouraged to attend. Orientation will be held on March 1, 2023 at 8:00 a.m. and subsequent orientations will be held the second Monday of the month at 8 a.m. In the event that the first or second Monday falls on a holiday, workshops and orientations will be held on the following Tuesday. While the GADOL in Moultrie is closed due to COVID-19, workshops and interviews will be held via phone by appointment only.

Workers may not drive personal vehicles to worksites.

*b. Job Offer Information 2*

| 1. Section/Item Number * | A.11 | 2. Name of Section or Category of Material Term or Condition * | Deductions from Pay |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

DEDUCTIONS. Employer makes all deductions required by law (e.g., FICA, federal/state tax withholdings, court-ordered child support, etc.). Workers must pre-authorize voluntary deductions, which may include repayment of wage advances and/or loans, health insurance premiums, retirement plan contributions, and/or third-party payments or wage assignments for products or services furnished for the worker's benefit or convenience. All deductions comply with the Fair Labor Standards Act (FLSA) and applicable state law. Employer may deduct reasonable repair costs if the worker is found to be responsible for damage to housing beyond normal wear and tear. Employer may charge worker for reasonable cost of damages to property and/or replacement of tools and/or equipment if such damage is found to have been the result of worker's willful misconduct or gross negligence.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Form ETA-790A Addendum C                     FOR DEPARTMENT OF LABOR USE ONLY                                    Page C.1 of C.12

H-2A Case Number: H-300-22364-667294        Case Status: Full Certification        Determination Date: 02/06/2023        Validity Period: _____ to _____

Defs. 009860

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



**H. Additional Material Terms and Conditions of the Job Offer**

*c. Job Offer Information 3*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Additional Information Regarding Job Qualifications/Requirements |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Three months of farmwork experience required. Perform prolonged walking, bending, stooping, pushing, pulling, lifting and carrying 55 lbs. repeatedly. Work outside in inclement weather, especially extreme cold or heat (exceeding 100 degrees) and/or wet weather for extensive periods of time. Must be 18 or older. Employer is a drug free workplace. Drug testing is conducted post-hire at the employer's expense and is not part of the interview process. Positive results will result in termination.

*d. Job Offer Information 4*

| 1. Section/Item Number * | F.1 | 2. Name of Section or Category of Material Term or Condition * | Daily Transportation |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Employer provides, at no cost, incidental transportation between worksites. For workers residing in employer-provided housing, employer also provides free daily transportation to and from the designated worksite, and weekly transportation to closest town/city for personal errands (e.g., groceries, banking services). Eligible workers that decline employer-provided housing are responsible for own daily transportation to and from designated worksite.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum C**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page C.2 of C.12

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009861

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



**H. Additional Material Terms and Conditions of the Job Offer**

*e. Job Offer Information 5*

| 1. Section/Item Number * | F.2 | 2. Name of Section or Category of Material Term or Condition * | Inbound/Outbound Transportation - |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

If workers decline employer-offered transportation, employer reimburses such workers reasonable travel costs (transportation, daily subsistence, and lodging if applicable), at least-cost economy-class rates, from the place worker departed to the employer's place of employment. Travel costs that bring workers' pay below the FLSA minimum wage reimbursed in first workweek; remainder of travel costs reimbursed upon completion of 50% of the contract period.

Employer arranges/provides outbound travel to workers who complete the contract or are dismissed early without cause. Use of employer-provided transportation is voluntary. If workers decline employer-offered transportation, employer pays/reimburses such workers reasonable travel costs (transportation, daily subsistence, and lodging if applicable) at completion of contract, based on least-cost economy-class rates. No outbound travel benefits provided to workers who resign voluntarily, abandon employment, or are terminated for cause.

*f. Job Offer Information 6*

| 1. Section/Item Number * | F.1 | 2. Name of Section or Category of Material Term or Condition * | Daily Transportation - |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Exact transportation schedule varies depending on work location, work/weather conditions, and other factors, but shall occur within a reasonable time before/after workday begins/ends. Employer attests that it will have enough vehicles, with appropriate seating capacity, to transport all workers eligible for employer-provided transportation. Vehicle type, quantity, and seating capacity are TBD and may vary, but may include any combination of the following: pick-up truck, bus, van (cargo or shuttle). Round-trip travel for employer-provided transportation is equal to or less than 75 miles. Vehicle safety standards at 29 CFR § 500.104 will apply. Currently the employer has 40 pick-up trucks with a seating capacity of 4 per truck, 25 buses with a seating capacity of 44 per bus, and one van with a seating capacity of 12. The anticipated pick-up time is 7:00am and the drop off time is anticipated to be 3:00pm Monday-Friday and 12:00pm on Saturday."

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Form ETA-790A Addendum C       **FOR DEPARTMENT OF LABOR USE ONLY**       Page C.3 of C.12

H-2A Case Number: H-300-22364-667294     Case Status: Full Certification     Determination Date: 02/06/2023     Validity Period: _____ to _____

Defs. 009862

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



**H. Additional Material Terms and Conditions of the Job Offer**

*g. Job Offer Information 7*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Safety - Workers' Compensation |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Worker compensation insurance is provided.
Carrier is FCCI.
Notify Ana Fuentes at (229) 769-3676 in case of injury within 30 days.

*h. Job Offer Information 8*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Housing |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Housing provided only to non-local workers (i.e. permanent residence outside normal commuting distance). Only workers may occupy housing. Employer provides separate bathroom facilities for each gender. Employer possesses and controls premises at all times. Workers must vacate housing promptly at end of contract period or upon termination, in accordance with state law. If one has not already been performed at the time of this filing, the employer(s) request(s) an inspection of the listed housing.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Form ETA-790A Addendum C                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page C.4 of C.12

H-2A Case Number: H-300-22364-667294     Case Status: Full Certification     Determination Date: 02/06/2023     Validity Period: _____ to _____

Defs. 009863

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*i. Job Offer Information 9*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Work Rules 1 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

1.Employees should understand that after the seven (7) day training period they must make production while following safety requirements. Employees should not negatively affect the productivity or impede the production of their work team. Employees should understand that they are required to meet production standards. During their training period, they will give reasonable effort. Employees should understand that Non-compliance results in termination.
2.Excessive absences, tardiness or early departures during the employment period will not be permitted. Excessive absences, tardiness and early departures is defined as: three (3) unexcused absences and/or excessive tardiness (more than 15 minutes late) and/or early departures within any period of 30 work days, without prior consent as relayed by a designated field worker. Non-compliance results in termination. Standard work week is defined as seven (7) hours each day Monday-Friday and five (5) hours on Saturday. Attendance Monday-Saturday is not optional. A 30-day period is defined as any 30 working days, not a calendar month. Excused Absences are defined as: DEATH IN FAMILY – Must bring documentation to office. Only documentation that is accepted is an obituary copy or funeral program. The documentation should have the employee's name listed as a family member. DOCTOR'S APPOINTMENT – Employee must bring a doctors excuse to Human Resources. COURT SUBPOENA – Must bring copy to office. No probation meetings will be excused. If an employee is are required to meet with a Probation Officer, it is their responsibility to set-up a meeting after work-hours. NO EXCEPTIONS.
3.If employees choose to leave the work area early they must notify their designated field worker. If employees are tardy or leave early, they will be considered to have an unexcused absence from work unless the absence is excused pursuant to Rule No. 2 above.
4.Hamilton Growers, Inc. will consider the job abandoned if a worker fails to report to work for five (5) consecutive working days without approval from Human Resources.
5.Employees will not enter the facilities, fields, housing, or any other property of Hamilton Growers, Inc. or its subsidiaries during hours they are not scheduled to work. Non-compliance results in termination.
6.Employees will not possess firearms or weapons on the property of Hamilton Growers, Inc. or its subsidiaries. Non-compliance results in termination.
7.Employees will not fight at any time while on Hamilton Growers' property. This is to include any physical or aggressive verbal altercation. Non-compliance results in termination.
8.Employees will not steal from co-workers or from Hamilton Growers, Inc., or its subsidiaries. Stealing is defined as the taking of any type of property, no matter the value, of Hamilton Growers or co-workers. This includes documents and posters. Non-compliance results in termination.
9.Employees will not deliberately damage or destroy any machinery, equipment, tools or other property belonging to Hamilton Growers, Inc., its subsidiaries, or a co-worker. Non-compliance results in termination.
10.Employees will not operate Company equipment or vehicles without instruction relayed by a designated field worker. Employees are required to be familiar with all safety and operation instruction prior to operating any equipment. Non-compliance results in termination.

*j. Job Offer Information 10*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Work Rules 2 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

11.Employees will not post or remove any notices, signs or other instructions. Non-compliance results in termination.
12.Employees will not falsify personal, medical, production, or other work related records or give false information during a Company investigation. Non-compliance results in termination.
13.Employees will not leave the work area without permission before they clock out. This is theft of Company time. An exception will be made in the event of an emergency or an inoperative clock-in device. Non-compliance results in termination.
14.Employees should understand if they clock in on a finger-scanner time clock, they should also clock in manually with a timecard. Their time card will be used for documentation and backup purposes, in the event of an inoperative clock in or clock out situation. Their timecard must be turned in for payroll at the office every Monday. Non-compliance results in written warning, second offense in termination.
15.Employees will not use or possess alcohol or illegal drugs during work time or during any workday before work is completed for the day (e.g.,during meals). Employees will not report for work under the influence of alcohol or illegal drugs. Employer may terminate workers for excessive alcohol use or drunk/disorderly conduct in housing after hours. If an employee receives anything higher than 0.00 on a company breathalyzer test, it will result in one day without pay; second offense will result in immediate termination. If an employee's duty is to operate machinery/equipment or drive any company vehicle including a forklift and they receive anything higher than 0.00 on a company breathalyzer test, it will result in immediate termination. Employees will not use or possess unlawful drugs during the employment period. If an employee receives a failed drug test, it will result in immediate termination. Employees should understand the Company is a certified Drug Free Workplace and any violations will result in termination. Non-compliance results written warning up to and including termination.
16.Employees will clock in at the beginning of their work shift and will clock out at the end of their work shift. Employees should understand that failure to clock in and out at the beginning and end of their work shift, and failure to clock in and out on their designated meal break(s) can result in termination. Non-compliance results in written warning, second offense in termination.
17.Designated field workers, and ficheros will be responsible to clock in/out their crew members and assign the appropriate work area and task. Non-compliance results in written warning, second offense in termination.
18.Employees will not take breaks not allowed as relayed by their designated field worker and will not overstay authorized breaks. This is theft of Company time. Non-compliance results in written warning, second offense in termination.
19.Employees will not smoke or use any tobacco products in any facility or fields on Hamilton Growers' property. Non-compliance results in written warning, second offense in termination.
20.Employees will use caution not to damage the fruit or plants during handling or harvesting. Non-compliance results in written warning, second offense in termination.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum C**                **FOR DEPARTMENT OF LABOR USE ONLY**                Page C.5 of C.12
H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009864

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*k. Job Offer Information 11*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Work Rules 3 |
|---|---|---|---|

3. Details of Material Term or Condition *(up to 3,500 characters)* *

21.Employees will receive food safety and personal hygiene training. Employees are required to comply with all food safety program rules. Non-compliance results in written warning, second offense in termination.
22.Employees will place all trash and waste materials in the proper container and will not litter. Non-compliance results in written warning, second offense in termination.
23.Employees will follow instructions as relayed by their designated field worker. If they have a problem with their designated field worker or any instructions given, employees should talk to someone in HR at Hamilton Growers. Employees will not be discourteous or threatening to any employee. Talking back or refusing to follow reasonable instructions is "insubordination." Non-compliance results in written warning, second offense in termination.
24.Employees will follow the dress code specified in #17 of the Food Safety Compliance Policy for Hamilton Growers. Non-compliance results in written warning, second offense in termination.
25.Employees will not begin work prior to scheduled starting time or continue working beyond scheduled stopping time unless authorized by their designated field worker. Non-compliance results in written warning, second offense in termination.
26.Employees will not use ear phones, ear buds, or any type of speaker in the work place. This is a safety hazard to their work and others around them. Non-compliance results in written warning, second offense in termination.
27.Employees should understand they are not required to sign any company documents. However, if they choose to not sign the document, they will be required to write in the employee comment section explaining why they chose not to sign. Non-compliance results in written warning, second offense in termination.
28.Workers may not reveal confidential or proprietary business information to any third-party. Confidential information includes, but is not limited to, worker lists, customer lists, financial information, or other business records. Non-compliance results in written warning, second offense in termination.
29.Workers may not make long distance phone calls without employer's explicit permission. Workers must ask permission in form a written notice and the request must be approved in writing by a HR company representative. Non-compliance results in written warning, second offense in termination.
30.Designated field workers, supervisors and managers will often use cell phones and mobile radios for business purposes. Unless an employee is authorized to use a cell phone, they will not use electronic devices or their cell phone to call, text, e-mail check time, play music, or play games, etc. in the work place area. Use of electronic devices is permissible in the event of an emergency, employee's safety or similar situations. Non-compliance results in termination.
31.Employees will not deliberately do anything that interferes with production, including playing around, throwing things, wasting time, or disrupting other workers during work time. Non-compliance results in two written warnings, third offense in termination.
32.Employees will not perform work that is careless or sloppy. Non-compliance results in two written warnings, third offense in termination.

---

*l. Job Offer Information 12*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Work Rules 4 |
|---|---|---|---|

3. Details of Material Term or Condition *(up to 3,500 characters)* *

33.Hamilton Growers, Inc. issues electronic badges for timekeeping/piece rate tabulation. In order to work employees must be in possession of their badge. They will be charged $25.00 for a replacement badge resulting in dock of their pay. Non-compliance results in two written warnings, third offense in termination.
34.For safety reasons, no riding in the back of any trucks or trailers, except in connection with field production work. No personal vehicles are allowed in the field/work area. Personal vehicles will be allowed in the designated parking areas. Non-compliance results in two written warnings, third offense in termination.
35.Employees will be responsible for all hand tools supplied to them for their work. If employees lose their assigned tool(s), they will be charged for a replacement tool. This cost will be deducted out of their pay.
36.Employees will be paid by a paper paycheck each week, the following will apply: Paychecks will be given out to Domestic field crews on Fridays between 5:00-5:15 PM, and to Domestic packing shed employees on Fridays at the completion of the employees' shift. Employees living in Company housing will be paid Friday afternoons. Checks not picked up at the designated time will be available beginning the following work week. Proper personal identification must be presented to pick up paychecks. Should an employee need a replacement for an issued check that has not been cashed, the employee may pay the $40.00 bank cancellation fee and the employer will stop payment on the original check and issue a replacement check in the next pay period. Workers may not have other workers pick up their pay.
37.Registration is typically one week from the pre-employment informational session at the Department of Labor. Employees must first complete the pre-employment informational session before they are allowed to attend the new-hire orientation or begin work.
38.In the event that an employee is terminated, they will be given a Termination Appeal Notice. This notice contains information and instructions for them to follow if they feel they have been wrongly terminated. This service is free of charge.
39.Employees will be informed that termination as a result of non-compliance of any of the work rules, as well as failed or refused drug test, can affect unemployment benefits.
40.It is the employee's responsibility to report any errors in their pay to their designated field worker or Colene Flowers.
41.If an employee's mail is mailed to the office, they should see the receptionist at the front desk to get their mail. The receptionist will be available to them Monday-Friday, 8:00 AM to 5:00 PM in the front main office. If an employee fails to pick up their mail from the receptionist at the front office Monday-Friday, their mail will be sent to their designated field worker, with their check on Friday afternoons. If they no longer work with the company, and their mail is sent to the office address, it will be labeled as UTF (unable to forward) and will be back to the post office.
42.Once an employee living in Company housing is assigned to their Company room, they are not allowed to move from their assigned room, except as relayed by their designated field worker. If they have a problem in their assigned room, they should immediately report the problem to their designated field worker.
43.Employees are not to interrupt other workers rest/sleep periods by excessive or unnecessary noise or commotion.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum C**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page C.6 of C.12

H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009865

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*m. Job Offer Information 13*

| 1. Section/Item Number * | B.6 | 2. Name of Section or Category of Material Term or Condition * | Job Requirements - Work Rules 5 |

**3. Details of Material Term or Condition** (*up to 3,500 characters*) *
44.Employees, along with their guest(s), are not to engage in indecent, immoral, or illegal conduct at any time while in company housing or on company premises.
45.Employees are not allowed to separate or move any beds. Employees are expected to maintain the living quarters to the standards of their employer and will report any problems to their designated field worker.
46.If there is damage to the housing prior to the employee's stay, they should notify their designated field worker immediately. If an employee damages any company housing during their stay, the cost will be deducted out of their pay.
47.Employees will cooperate with other workers assigned to the same housing area. If an employee has a problem with another worker in their assigned living area, they should report it to their designated field worker.
48.Employees will maintain the kitchen dining area, bathrooms and showers, and the living areas in the same general condition the unit was in, prior to occupancy, and to the standards posted on the property.
49.Employees will keep their assigned room as well as the bathrooms, showers, and living areas clean. Hamilton Growers defines cleanliness as: All things picked up off of the floors. Floors swept with little to no dirt. No food or food crumbs left out. Beds made. All personal belongings put away in provided lockers/drawers. All tissue paper and paper towels in provided designated trash cans.
50.Employees are not allowed to have any type of open food, open snacks, or fruits inside of the housing. Food will be provided in the company kitchen dining area. Employees are not able to cook in their room. Employees are not allowed to have any electrical cooking devices such as, coffee pots, hot plates, microwave, etc.
51.Employees are not allowed to bring alcohol or drugs on any company property or in any company housing. This includes alcohol or drugs in personal vehicles.
52.Employees are not to post any inappropriate posters, documents, or flyers in their housing or on company property.
53.Employees should not block the housing air conditioning unit from open air flow.
54.Workers living in employer-provided housing must lock the housing and turn off all lights, electronics, and unnecessary heat before leaving for work each morning. Workers must close all doors and windows while using heat and during adverse weather conditions.
55.Workers may not entertain guests in employer-provided housing premises after 10:30 PM, except on Saturdays when guest hours end at 12:00 midnight. No persons, other than workers assigned by employer, may sleep in housing.
56.In the event that an employee is terminated, they will have all of their belongings, and will vacate the premises no later than 5:00 PM of the last day of their employment, or before, depending on the investigation of their termination.
Incompliance to these rules will result in a written warning up to and including termination.

*n. Job Offer Information 14*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 1 |

**3. Details of Material Term or Condition** (*up to 3,500 characters*) *
All workers will be picked up from the company housing or main office at the assigned time as relayed by their designated field worker and transported to the worksites. Daily transportation will be provided for all eligible workers to the cafeteria located a 5821 Cool Springs Road, Norman Park, GA 31771. The employer will arrange or provide local transportation to town from time to time so that workers can take care of personal business at no cost, but availability will be limited due to restrictions on ground size limits set at business establishments, and other COVID-19 related safety and health constraints.

Training: Employees should understand the harvest trailer will not wait on them, but will move with the lead of the group. Employees should understand they will be assigned a row by their supervisor at the beginning of each row. Employees may not "skip" forward and not harvest an area if they fall behind. Employees understand that if they fall behind, others that are not behind might be assigned by their supervisor to leave their picking row and pick on the same row ahead of that employee in order to "catch up the employee." Employees should understand a person ahead of them trying to "catch up the employee" to the group benefits the employee and allows them to not continue to be behind. Employees should understand "catching up an employee decreases the distance the employee must carry their harvest container to the trailer and is done for the employee's benefit. Employees should understand this in no way interferes with their ability to make production but is done to aid the employee to achieve their production requirements.

Safety: Pesticides may be on or in plants, soil, irrigation water or can drift from nearby applications. Prevent pesticides from entering the body by: Following directions and/or signs about keeping out of treated or restricted areas; Washing before eating, drinking, or using the bathroom; Wearing work clothing that protects the body from pesticide residues; Washing/showering with soap and water, shampooing hair and putting on clean clothes after work; Washing work clothes separately from other clothes before wearing them again; If pesticides are spilled or sprayed on the body, wash immediately. Shower, shampoo and change clothing as soon as possible. Exposure to heat can cause illness and death. Employees should: Drink plenty of fluids Drink often and before becoming thirsty; Wear lightweight, light colored clothes that are not tight on the body. Symptoms of heat stress: Headache, dizziness, or fainting; Weakness; Confusion; Thirst, nausea, or vomiting; Pass out, collapse, or have seizures. Employees should see their supervisor if they have any questions about Pesticides Protection or Heat Stress.

Food and Health Safety Program Compliance: Hamilton Growers, Inc. participates in the Good Agricultural Practices Program (GAP) and Good Manufacturing Program (GMP) to ensure that its products are safe and free from contamination. All employees must comply with the following rules. Breaking any of food safety rules can lead to discipline and possible termination. Employees must wash and sanitize their hands for a minimum of 20 seconds before reporting to their work site and after: using the restroom, taking a break, touching dirty containers or trash, touching non-food products, coughing or sneezing. Employees will not bring or use tobacco, food, drinks, gum, candy, while working.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

---

H-2A Case Number: H-300-22364-667294     Case Status: Full Certification     Determination Date: 02/06/2023     Validity Period: _____ to _____

Defs. 009866



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**

## H. Additional Material Terms and Conditions of the Job Offer

*o. Job Offer Information 15*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 2 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *
Hamilton Growers, Inc. will provide the water. Employees' fingernails cannot be long (more than 1/8 inch past fingertips) or polished. Employees must not bring glass onto Company property. Employees' body will be clean and they will wear clean clothes. If employees have sores, cuts, lesions, open wounds, they must report them to their supervisor who will decide if they can work before they are healed. If an employee is sick, they should tell the supervisor before they begin work. Employees should understand some sicknesses require a doctor's release before they can return to work. If blood gets on anything, employees must notify their supervisor so it can immediately be disposed of properly. Employees must report any injury to their supervisor AS SOON AS IT HAPPENS. Employees must throw toilet paper in the commode. Employees must keep the restrooms and rest areas clean. Employees must keep workspace and tools clean. Employees must throw trash in designated trash cans only. Employees must make sure produce containers are clean and kept off the ground. Employees must not use produce containers for storage or placement of anything other than produce. Employees should understand that the company provides storage for personal belongings, free of charge. Employees must not take any personal belongings into work areas, to help keep them safe and hazard free. Employees must not wear jewelry, sleeveless shirts, tank tops, or hats with jewelry. Employees working in the packing shed must wear plastic gloves, hairnets, and aprons. Employees must fix their hair in such manner that it can be placed under a hair net. Workers should not wear loose-fitting clothing, jewelry, or other items that could become entangled in machinery, and long hair should be worn under a cap or otherwise contained to prevent entanglement in moving machinery. (OSHA 3170) Employees must place all harvest utensils in the appropriate holder before entering a restroom facility. Employees must utilize the tool dip stations to ensure their harvest utensils are kept cleaned and sanitized. Employees must not use ear phones, ear buds, or any type of speaker in the work place. If an employee has any symptoms of COVID 19 (or any other illness/sickness) or test positive for COVID 19 (or any other illness/sickness) they are to let their supervisor know as soon as possible. If an employee runs a fever, they be fever free for at least 24 hours before returning to work. Employees should understand if they break any of these rules, they will be disciplined and possibly terminated.

Employee Payment Assurance Program (EPAP): It is the commitment of Hamilton Growers to ensure that all employees are fairly, accurately and completely paid for all work performed. To ensure that all employees have equal access to this program without fear or retaliation, an additional anonymous program has been implemented. The TWO programs are as follows. Original Program Instructions: If a worker feels they have not been paid for all hours and/or piece rate work performed, they should complete the form located at the main office and give it to their supervisor or the receptionist. Anonymous Program Instructions: If a worker feels that they have not been paid for all hours and/or piece rate work performed and fear retaliation, they may contact the Employee Payment Assurance Review Officer (EPARO) at the address below. The EPARO is an attorney who is an independent third party.

*p. Job Offer Information 16*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 3 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *
The employee's identity will remain anonymous except to the EPARO. An investigation will be conducted by the EPARO. The EPARO has open access to all employee pay records, time sheets, production records and personnel files. If the investigation shows that an underpayment has been made to the worker, the amount of underpayment will be paid directly from the EPARO to the worker. The EPARO will then, in turn, bill Hamilton Growers for the underpayment amount as well as all associated costs of the investigation. Simply complete form located at the main office and mail to: EPARO, Law Office of Robb Howell, P.O. Box 100, Moultrie, GA 31776

Disability and Discrimination: Title I and Title V of the Americans with Disabilities Act of 1990, as amended, protect qualified individuals from discrimination on the basis of disability in hiring, promotion, discharge, pay, fringe benefits, job training, classification, referral, and other aspects of employment. Disability discrimination includes not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, barring undue hardship. WHAT TO DO IF AN EMPLOYEE BELIEVES DISCRIMINATION HAS OCCURRED: There are strict time limits for filing charges of employment discrimination. To preserve the ability of EEOC to act on an employee's behalf and to protect their right to file a private lawsuit, should the employee ultimately need to, they should contact EEOC promptly when discrimination is suspected: The U.S. Equal Employment Opportunity Commission (EEOC), 1-800-669-4000 (toll-free) or 1-800-669-6820 (toll-free TTY number for individuals with hearing impairments). EEOC field office information is available at www.eeoc.gov or in most telephone directories in the U.S. Government or Federal Government section. Additional information about EEOC, including information about charge filing, is available at www.eeoc.gov.

Equal Employment Opportunity (EEO) Policy: Hamilton Growers, Inc. ("the Company") is an Equal Employment Opportunity employer committed to providing equal opportunity in all of our employment practices, including selection, hiring, assignment, re-assignment, promotion, transfer, compensation, discipline, and termination. The Company prohibits discrimination, harassment, and retaliation in employment based on race; color; religion; genetic information; national origin; sex (including same sex); pregnancy, childbirth, or related medical conditions; age; disability or handicap; citizenship status; service member status; or any other category protected by federal, state, or local law. Violation of this policy will result in disciplinary action, up to and including immediate termination.

No Harassment Policy: Hamilton Growers, Inc. does not tolerate the harassment of applicants, employees, workers, contractors, customers, or vendors. Any form of harassment relating to an individual's race; color; religion; genetic information; national origin; sex (including same sex); pregnancy, childbirth, or related medical conditions; age; disability or handicap; citizenship status; service member status; or any other category protected by federal, state, or local law is a violation of this policy and will be treated as a disciplinary matter. Violation of this policy will result in disciplinary action, up to and including immediate termination.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Form ETA-790A Addendum C      FOR DEPARTMENT OF LABOR USE ONLY      Page C.8 of C.12

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009867

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*q. Job Offer Information 17*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 4 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

If employees have any questions about what constitutes as harassing behavior or what conduct is prohibited by this policy, they should discuss the questions with their immediate supervisor or one of the contacts listed in this policy. At a minimum, the term 'harassment' as used in this policy includes: Offensive remarks, comments, jokes, slurs, or verbal conduct pertaining to an individual's race; color; religion; genetic information; national origin; sex (including same sex); pregnancy, childbirth, or related medical conditions; age; disability or handicap; citizenship status; service member status; or any other category protected by federal, state, or local law; Offensive pictures, drawings, photographs, figurines, or other graphic images, conduct, or communications, including e-mail, faxes, and copies pertaining to an individual's race; color; religion; genetic information; national origin; sex (including same sex); pregnancy, childbirth, or related medical conditions; age; disability or handicap; citizenship status; service member status; or any other category protected by federal, state, or local law; Offensive sexual remarks, sexual advances, or requests for sexual favors regardless of the gender of the individuals involved; and Offensive physical conduct, including touching and gestures, regardless of the gender of the individuals involved. Hamilton Growers, Inc. also absolutely prohibits retaliation, which includes: threatening an individual or taking any adverse action against an individual for (1) reporting a possible violation of this policy, or (2) participating in an investigation conducted under this policy. Hamilton Growers' supervisors and managers are covered by this policy and are prohibited from engaging in any form of harassing, discriminatory, or retaliatory conduct. No supervisor or other member of management has the authority to suggest to any applicant or employee that employment or advancement will be affected by the individual entering into (or refusing to enter into) a personal relationship with the supervisor or manager, or for tolerating (or refusing to tolerate) conduct or communication that might violate this policy. Such conduct is a direct violation of this policy. Even non-employees are covered by this policy. Hamilton Growers, Inc. prohibits harassment, discrimination, or retaliation of our employees in connection with their work by non-employees. Immediately report any harassing or discriminating behavior by non-employees, including H2A workers or contractor/subcontractor employees. Any employee who experiences or observes harassment, discrimination, or retaliation should report it using the following steps: First, discuss any concern with their immediate supervisor. If an employee is not satisfied after speaking with their supervisor, or if they feel that they cannot speak to their supervisor, they should discuss their concern with Ana Fuentes or Courtney Griffin. If an employee is not satisfied after speaking with Ana or Courtney, or if they feel they cannot speak to Ana or Courtney, they should speak to Jon Schwalls or Austin Hamilton. If employees have any concern that our No Harassment policy may have been violated by anyone, they must immediately report the matter. Due to the very serious nature of harassment, discrimination, and retaliation, they must report your concerns to one of the individuals listed.

*r. Job Offer Information 18*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 5 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Employees should report any actions that they believe may violate our policy no matter how slight the actions may seem. A properly authorized HR representative will investigate the report and then take prompt, appropriate remedial action. The Company will protect the confidentiality of employees reporting suspected violations of this or any other Company policy to the extent allowed by law consistent with the Company's investigation. Employees will not be penalized or retaliated against for reporting improper conduct, harassment, discrimination, retaliation, or other actions that they believe may violate this policy. Hamilton Growers, Inc. is serious about enforcing its policy against harassment. Persons who violate this or any other Company policy are subject to discipline, up to and including immediate termination. Hamilton Growers, Inc. cannot resolve a potential policy violation unless the Company knows about it. Employees are responsible for reporting possible policy violations to allow appropriate actions to address their concerns.

Human Trafficking Policy: Hamilton Growers, Inc. strictly prohibits their employees, contractors and agents from engaging in any form of human trafficking or slavery. Modern slavery can take various forms to include slavery, servitude, forced and compulsory labor, and human trafficking. This policy specifically prohibits, but is not limited to, the following conduct: Engaging in the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through the use of force, fraud, or coercion for the purpose of subjecting that person to involuntary servitude, peonage, debt bondage or slavery; Engaging in sex trafficking, which means the recruitment, harboring, transportation, provision or obtaining of a person for the purpose of a commercial sex act, where the sex act is induced by force, fraud or coercion or involves a person under 18 years of age; Procuring commercial sex acts; Using forced labor; Destroying, concealing, confiscating or otherwise denying access by an employee to the employee's identity or immigration documents such as passports or drivers' licenses; Using misleading or fraudulent methods in recruiting or offering employment to persons, including making material misrepresentations regarding wages, benefits, location of the work, living conditions, housing and associated costs (if provided by the Company or its agents), any costs to be charged to the employee and hazardous nature of the work; Using recruiters that do not comply with local labor laws of the country in which the recruiting occurs; Charging employees recruitment fees; Failing to provide return transportation or to pay the cost of return transportation for (a) an employee who is not a national of the country in which the work is performed and who was brought into that country to perform the work, or (b) for an employee who is not a U.S. national and who was brought into the U.S. to work on the contract or subcontract where the payment of such costs is required under a temporary worker program or an agreement with the employee. Payment of return travel costs is not required where the employee is legally permitted to remain in the country of employment and chooses to do so following the completion of work; Providing or arranging housing that fails to meet the host country's housing and safety standards; Where required by law, failing to provide an employment agreement to the employee.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

Form ETA-790A Addendum C          FOR DEPARTMENT OF LABOR USE ONLY                                    Page C.9 of C.12
H-2A Case Number: H-300-22364-667294          Case Status: Full Certification          Determination Date: 02/06/2023          Validity Period: _____ to _____

Defs. 009868

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*s. Job Offer Information 19*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 6 |
|---|---|---|---|

**3. Details of Material or Condition** (*up to 3,500 characters*) *

Such agreement must be in the language the employee understands and describe all pertinent details of the employment. Employees, contractors or agents of the Company who violate one or more of these prohibitions will be subject to disciplinary action up to and including termination of employment, contract or agency. Any Company employee, contractor or agent who becomes aware of any such violation shall report it immediately to the Company's Human Resources Department.

Employee Conduct Policy: Our company's reputation rests on how customers, suppliers and the public perceive us. Not only in terms of how competent we are at handling their business, but also on our integrity and how we behave. RELATIONS WITH CO-WORKERS: Integrity- Integrity is one of the fundamental values that employers seek in the employees that they hire. It is the core of a person who demonstrates sound moral and ethical principles at work. A person who has integrity lives his or her values in relationships with coworkers, customers and the public. People who demonstrate integrity draw others to them because they are trustworthy and dependable. They are principled and can be counted on to behave in honorable ways even when no one is watching. Respect- Hamilton Growers is a company in which a diverse group of people can learn, live and work in an atmosphere of tolerance and respect. Treat others the way you want to be treated! Respect people's differences, be kind and courteous. When you show respect and tolerance for someone different than you, you are investing in the respect and tolerance you wish in return. Collaboration- Hamilton Growers' employees create and maintain a work environment of cooperation and contribution to the common good of the company. We are helpful and supportive of each other. Our goal is to encourage a safe and pleasant work atmosphere. This happens when everyone cooperates and commits to working as a team. RELATIONS WITH CUSTOMERS, CLIENTS AND VENDORS: Be aware that the people who step into your work place, like customers, clients and vendors are watching and listening to you. Our employees are the best salesman the company has. When someone from the outside comes in, employees should ask them how they can help or assist them. Employees should not complain about their job or the company in the presence of guests. If an employee has complaints, they should take them up with their supervisor or someone in Human Resources; they can help. If an employee has a grievance, they should discuss it with us before it becomes a compounded problem. RELATIONS WITH THE PUBLIC: How our employees act and speak about Hamilton Growers leaves an impression of our company as a whole. What employees say to family, friends or the public, might be the only picture they ever have of their workplace. Remember, no customers equals no business and no jobs.

Drug and Alcohol Policy: The Company will require as a condition of employment that an employee submit an in-house urine or breath test to determine the presence of drugs or alcohol in his or her system. The other possible occasions for drug or alcohol testing include, but are not limited to: Post-hire; Re-Hire; When the Company has a reasonable suspicion that an employee has violated the Drug and Alcohol Policy; and/or When an employee suffers or contributes to a reportable on-the-job injury, or is involved or contributes to an on-the-job accident.

*t. Job Offer Information 20*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 7 |
|---|---|---|---|

**3. Details of Material or Condition** (*up to 3,500 characters*) *

Violation of these rules include, but are not limited to a test indicating the presence of unlawful drugs or alcohol; refusal to cooperate with the Company in any test, search or investigation, or failure to execute any paperwork or consent forms necessary for examinations or tests; possession of, distribution of, or consumption of unlawful or abused drugs or alcohol, unauthorized drug paraphernalia; or tampering with or adulterating a test sample. Employees who refuse to submit to a test, or test positive for unlawful drugs or alcohol may be disqualified for unemployment compensation benefits or be disqualified for workers compensation benefits if the refusal/positive result follows a workplace injury. The Company will treat information, such as drug or alcohol test results and use of prescription medication, acquired as a result of this program, as confidential unless otherwise required by law. Employees who receive a positive confirmed in-house test result may contest the results by obtaining a second test. If the employee chooses to do so. The employee will be responsible for paying the amount of $50 for the second test. The second drug test will be conducted at Premier Care. In the event Premier Care is closed, the second drug test will be conducted at Convenient Care or Colquitt Regional Medical Center. However, if the employee's second test is negative, the Company will reimburse the employee the amount of the second test fee, once the negative results are received by the company. If an employee believes that prescribed medication or substance might result in a positive drug or alcohol test, he or she must discuss this with the person administering the test. If a second test is required in such a circumstance, the Company will consider potentially waiving the $50 fee for the second test. Although the proper use of medication or certain substances is not prohibited, the Company does prohibit the misuse of prescribed medication or substances. Employees' prescription drug use may affect their job performance, such as by causing dizziness or drowsiness, and create a direct threat of harm to themselves or others. It is the employee's responsibility to determine from his or her physician, pharmacist, or the drug package insert whether a prescribed drug or over-the-counter medication or substance may create a safety risk and, if so, to report the use of such medication to his or her supervisor. Any prescription or over-the-counter medication or substance brought onto Company or customer property or taken aboard Company vehicles must be retained in its original container labeled with the names of the employee and the prescribing physician. No employee may take another person's medication. The law treats the abuse and misuse of prescription medication or substances as unlawful drug use. Violation of this policy will result in disciplinary action, up to and including immediate termination.

Employer may request, but not require, workers to work more than the stated daily hours and/or on a worker's Sabbath or federal holidays. Workers will have an unpaid lunch break. Worker must report to work at designated time and place each day. Daily or weekly work schedule may vary due to weather, sunlight, temperature, crop conditions, and other factors. Employer will notify workers of any change to start time.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

---

| Form ETA-790A Addendum C | FOR DEPARTMENT OF LABOR USE ONLY | Page C.10 of C.1 |
|---|---|---|

H-2A Case Number: H-300-22364-667294    Case Status: Full Certification    Determination Date: 02/06/2023    Validity Period: _____ to _____

Defs. 009869



OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**

## H. Additional Material Terms and Conditions of the Job Offer

*u. Job Offer Information 21*

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - Job Duties Continued 8 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

TERMINATION. All workers will be subject to a 2 day introductory period, during which the employer will evaluate workers' performance of required tasks. Employer reserves the right to terminate a worker at the conclusion of the 2 day introductory period if the worker's performance fails to satisfy the employer's reasonable expectations, or is otherwise unacceptable. Employer may terminate a worker for lawful job-related reasons, including but not limited to situations in which the worker: (1) Is repeatedly absent or tardy; (2) malingers or otherwise refuses, without cause, to perform the work as directed; (3) commits act(s) of misconduct or repeatedly violates the Work Rules; and/or (4) fails, after completing the 2 day introductory period, to perform work in a competent and skillful manner, consistent with the employer's reasonable expectations. Non-U.S. workers may be displaced as a result of one or more U.S. workers becoming available for the job during the employer's recruitment period. Job abandonment will be deemed to occur after five consecutive workdays of unexcused absences. Workers may not report for work under the influence of alcohol or drugs. Possession or use of illegal drugs or alcohol on company premises is prohibited and will be cause for immediate termination. Regardless of whether the employer requires a background check as a condition of employment, the employer may terminate for cause, in accordance with applicable laws and regulations, any worker found during the period of employment to have a criminal conviction record or status as a registered sex offender that the employer reasonably believes will endanger the safety or welfare of other workers, company staff, customers, or the public at large.

*v. Job Offer Information 22*

| 1. Section/Item Number * | A.11 | 2. Name of Section or Category of Material Term or Condition * | Pay Deductions - Deductions Continued 1 |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

If the employer receives a fine for acts committed by a worker on the road while driving an employer provided vehicle or equipment and he or she is at fault, the fine amount will be deducted from the employees' wages when expressly authorized by the worker in writing.
Hamilton Growers, Inc. will deduct from wages for lost or replacement electronic timekeeping/piece rate badges ($25), bank cancellation fee for paper paychecks ($40) and for lost assigned hand tools. Costs will be deducted from the employee's last paycheck or from other paychecks with written consent, provided that such deductions will not bring the employees wage below the federal minimum wage. Employees who receive a positive confirmed drug test result may contest the results by obtaining a second test. The cost of the second drug test will be $50. However, if the employee's second test is negative, Hamilton Growers, Inc. will reimburse the employee the amount of the second test fee. If an employee believes that prescribed medication might result in a positive drug test, he or she should discuss this with the person administering the test. If a second test is required in such a circumstance, Hamilton Growers, Inc. will consider potentially waiving the $50 fee for the second test. Workers will be charged $25.00 for a replacement badge resulting in dock of their pay. Workers will be responsible for all hand tools supplied to them for their work. If employees lose their assigned tool(s), they will be charged for a replacement tool. This cost will be deducted out of their pay. Should an employee need a replacement for an issued check that has not been cashed, the employee may pay the $40.00 bank cancellation fee and the employer will stop payment on the original check and issue a replacement check in the next pay period. The fee will be deducted from pay. Optional uniforms may be available depending on duties assigned. When elected, the cost of the uniforms and cleaning services will be payroll deducted. Employees that choose to eat at Hamilton Grower's barracks and pay for their food will be able to choose from 3 meal card each plan options: 1. $98.00 full meal plan (Breakfast, Lunch and Dinner, 7 days/week), 2. $30.00 lunch only (Monday – Saturday, lunch meals only), 3. No Company meal plan. If an employee chooses to eat a lunch plate that is brought to their work area, and the food comes from the kitchen, then $5.00 will be deducted from their paycheck for the lunch meal they chose to eat in their work area that day. The designated field worker will be responsible for keeping up with meals and turning the data into the office, so it will be deducted from the employee's check each week. Employees will be allowed to purchase breakfast if they are not on a meal plan. Employees will also be allowed to purchase ice cream in the afternoons if they are not on a meal plan. Both breakfast and ice cream options, if they choose to purchase these items, will be paid by cash. Employees will not have the opportunity to scan their badge for payment. The breakfast and ice cream will need to be paid in cash only. Employees will not be able to purchase lunch or dinner meals with cash. If an employee wants to eat lunch or dinner, they must be on a meal plan. The plan they choose will be deducted from their check each week. Employee badges must be scanned in order to receive meals.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum C**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page C.11 of C.1

H-2A Case Number: H-300-22364-667294      Case Status: Full Certification      Determination Date: 02/06/2023      Validity Period: _____ to _____

Defs. 009870

OMB Approval: 1205-0466
Expiration Date: 11/30/2025

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

*w. Job Offer Information 23*

| 1.  Section/Item Number * | A.11 | 2.  Name of Section or Category of Material Term or Condition * | Pay Deductions - Deductions Continued 2 |
|---|---|---|---|

3.  Details of Material Term or Condition (*up to 3,500 characters*) *

If they misplace or lose their badge, they should report it to an HR representative or their designated field worker and receive a replacement badge.

No arrangements have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers.

In accordance with 8 CFR § 214.2(h)(5)(xi)(A) and 20 CFR § 655.135(j)–(k), employer prohibits the solicitation and payment of recruitment fees by workers. Workers who pay or are solicited to pay such a fee must inform the employer immediately. Employer will investigate all claims of illegal fees and take immediate remedial action as appropriate.

FIRST WEEK'S PAY. If an applicant fails to verify the start date of need between 9 and 5 business days prior to the original date of need, then they are disqualified from the first weeks' pay obligations listed in [20 C.F.R. § 653.501(c)(3)(i)].

RAISES/BONUSES. Raises and/or bonuses may be offered to any seasonal worker employed pursuant to this job order, at the company's sole discretion, based on non-discriminatory individualized factors.

ADDITIONAL PAY DETAILS. Employer will pay each worker by cash, check, pay card, and/or direct deposit (employer pays any associated fees). All work is compensated at the hourly rate specified in the job order except for any specified piece rates. No piece rate compensation will be lower than the prevailing piece rates in the area of intended employment. When work is performed according to the stated piece rate schedule, workers are guaranteed that they will be paid no less than the applicable H-2A hourly rate for each hour worked. Pay ranges, if applicable, are determined based on a variety of factors including but not limited to crop size, quality, yield, and other circumstances that affect the difficulty of the work or the market value of the commodity. Pay shall not be less than the stated minimum and shall not exceed the stated maximum for each activity. The employer may, in its sole discretion, raise or suspend the piece rate scheme in favor of hourly pay at the applicable H-2A hourly rate. The payroll period is weekly.

Work performed under this contract is exempt from federal overtime pay requirements under the Fair labor Standards Act (FLSA). Workers are only eligible for overtime pay for workweeks in which a worker performs non-exempt work activities (in which case overtime pay will apply at 1.5 times the regular rate of pay for all hours worked in excess of 40 in such workweek).

ADDITIONAL TERMS, CONDITIONS, AND ASSURANCES.

REASONABLE ACCOMMODATIONS. Qualified workers with disabilities must notify the employer of any accommodations needed to perform the job. Workers must be able to perform the work required, with or without reasonable accommodations. A worker is not eligible for the job if the worker is not able to perform the job duties even with the requested accommodation, or if the employer is not reasonably able to provide the accommodation (i.e., because the accommodation would cause undue hardship on the operation of the business).

NONDISCRIMINATION. All terms and conditions included in the job order will apply equally to all seasonal workers (U.S. and foreign H-2A), employed in the occupation described in this job order. Workers should expect occasional periods of little or no work because of weather, crop or other conditions beyond the employer's control. These periods can occur anytime throughout the season.

*x. Job Offer Information 24*

| 1.  Section/Item Number * | A.11 | 2.  Name of Section or Category of Material Term or Condition * | Pay Deductions - Deductions Continued 3 |
|---|---|---|---|

3.  Details of Material Term or Condition (*up to 3,500 characters*) *

Workers may be assigned a variety of duties in any given day and different tasks on different days.

DEPARTURE ACKNOWLEDGEMENT. Employer will advise all foreign H-2A workers of their responsibility to depart the United States upon separation of employment or completion of the H-2A contract period, unless the workers obtains an extension of status.

**For Public Burden Statement, see the Instructions for Form ETA-790/790A.**

**Form ETA-790A Addendum C**                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page C.12 of C.1

H-2A Case Number: H-300-22364-667294     Case Status: Full Certification     Determination Date: 02/06/2023     Validity Period: _____ to _____

Defs. 009871