# EXHIBIT I

# DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| ARNULFO GARCIA-RAMOS, PABLO CASTILLO-OLGUIN, and all others similarly situated, </br></br>   Plaintiffs,</br></br>v.</br></br>SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; and WKW, LLC,</br></br>   Defendants. | **CIVIL ACTION FILE**</br></br>**FILE NO.: 7:24-cv-00054-WLS** |

### DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 26 and 33, Defendants Southern Valley Fruit & Vegetable, Inc.; Hamilton Growers, Inc.; Kent Hamilton; Hamilton Produce, L.P.; Kenda Properties, L.P.; WK Holdings, LLC; and WKW, LLC ("Defendants") by and through the undersigned counsel, responds to the First Set of Interrogatories of Plaintiffs Arnulfo Garcia-Ramos and Pablo Castillo-Olguin ("Plaintiffs") as follows:

### PRELIMINARY STATEMENT

A. The following responses are based upon information presently available to Defendants. Said responses are made without prejudice to Defendants' right to utilize subsequently discovered facts.

B. No incidental or implied admissions of fact by Defendants are made by the responses below. The fact that Defendants have responded to part of or all of any interrogatory is not intended

to, and shall not, be construed as a waiver by Defendants of all or any part of any objection to any interrogatory.

C. This Preliminary Statement is incorporated into each of the responses set forth below.

D. Discovery is ongoing and Defendants reserve the right to supplement their responses as information becomes available.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**

For each year between 2018 and the present, please state the number of individuals, and identify each such individual, who were assigned to operate a forklift in a packing shed as one of their job duties during any workweek during that year, or for whom "forklift" was recorded on any paystub or employment document during that year.

**Response to Interrogatory No. 1:**

Defendants object to this request to the extent it seeks the identity of workers who are not Plaintiffs or opt-in Plaintiffs on the grounds that it is premature and seeks information that would be relevant only if this matter is certified as a class action, which Defendants contend is improper and inappropriate. Defendants note that it is impossible to accurately and appropriately respond to this interrogatory as there is no official job of "forklift operator" and many H-2A or other workers may be assigned to operate a forklift, however, they may also perform other job duties and without asking every single worker that ever worked within the packing shed if they ever operated a forklift, you simply cannot accurately identify the number of individuals and identity of individuals that operated a forklift in the packing shed as one of their job duties. Further responding, Defendants show that the "forklift" designation on their paystub is an earnings code, which means they may have selected a job task when using a fingerprint clock-in (or for prior years, they were simply assigned a task in the system when they may or may not have been performing this task), however, it is believed that this information is not be accurate. Nonetheless,

-3-

based upon this information, it appears that 47 individuals had a forklift designation on their paystub, however, this does not necessarily show that they did or did not drive a forklift that week.

**Interrogatory No. 2:**

For each year between 2018 and the present, please state the number of individuals, and identify each such individual, who were assigned to perform maintenance work or sanitation work in a packing shed as one of their job duties during any workweek during that year, or for whom "maintenance," "sanitation," or "PS-Sani/Main" was recorded on any paystub or employment document during that year.

**Response to Interrogatory No. 2:**

Defendants object to this request to the extent it seeks the identity of workers who are not Plaintiffs or opt-in Plaintiffs on the grounds that it is premature and seeks information that would be relevant only if this matter is certified as a class action, which Defendants contend is improper and inappropriate. Defendants note that it is impossible to accurately and appropriately respond to this interrogatory as there is no official job of "maintenance" or "sanitation" and many H-2A or other workers may perform such tasks, however, they may also perform other job duties and without asking every single worker that ever worked within the packing shed if they performed maintenance or sanitation work, you simply cannot accurately identify the number of individuals and identity of individuals that performed maintenance or sanitation in the packing shed as one of their job duties.

Further responding, Defendants show that the "maintenance," "sanitation" or "PS-Sani/Main" designation on their paystub is an earnings code, which means they may have selected a job task when using a fingerprint clock-in (or for prior years, they were simply assigned a task in the system), however, it is believed that this information may not be accurate. Nonetheless, based upon this information, it appears that 27 individuals had one of these designation on their

paystub, however, this does not necessarily show that they did or did not perform those job duties in that week.

**Interrogatory No. 3:**

For each year between 2018 and the present, please state the number of individuals, and identify each such individual, who were assigned to perform mechanic work on equipment or machinery as one of their job duties during any workweek during that year.

**Response to Interrogatory No. 3:**

Defendants object to this request to the extent it seeks the identity of workers who are not Plaintiffs or opt-in Plaintiffs on the grounds that it is premature and seeks information that would be relevant only if this matter is certified as a class action, which Defendants contend is improper and inappropriate. Defendants note that it is impossible to accurately and appropriately respond to this request as there is no official job of "mechanic" and many H-2A or other workers may be assigned to perform some maintenance related work in a week, however, they may also perform other job duties and without asking every single worker that ever worked within the packing shed if they worked in maintenance, you simply cannot accurately identify the number of individuals and identity of individuals that worked in maintenance on "equipment or machinery" in the packing shed as one of their job duties. Further responding, Defendants are not aware of any way to specifically identify which weeks a worker was or was not performing maintenance work within the packing shed, however, some of the individuals identified in payroll as working on "Michael's team," which had approximately 35 workers, would have performed maintenance work in the packing shed.

**Interrogatory No. 4:**

If Defendant Hamilton Growers, Inc. denied Plaintiffs' Request for Admission No. 1, please state the total number of individuals who performed each of the listed job duties and identify

-4-

those individuals who received overtime pay when they worked more than 40 hours in a given workweek between March 29, 2018 and the present, broken down by year for each of the years between 2018 and the present, including the weeks in which those individuals received overtime pay.

**Response to Interrogatory No. 4:**

See response to Request for Admission No. 1.

**Interrogatory No. 5:**

If Defendant Hamilton Growers, Inc. denied Plaintiffs' Request for Admission No. 2, please state the total number of individuals who performed each of the listed job duties and identify those individuals who received an hourly wage rate higher than the Adverse Effect Wage Rate applicable at the time, broken down by year for each of the years between 2018 and the present, including the weeks in which those individuals received an hourly wage rate higher than the Adverse Effect Wage Rate.

**Response to Interrogatory No. 5:**

See response to Request for Admission No. 2.

**Interrogatory No. 6:**

For H-2A workers employed at any time between March 29, 2018 and the present in which their job duties at any point in time included forklift operator in a packing shed, maintenance work in a packing shed, sanitation work in a packing shed, or mechanic work on equipment or machinery, please describe in detail your policy and/or practice between 2018 and the present with respect to reimbursement of those H-2A workers following their first workweek of employment for the costs of their hotel expenses while waiting for Consular processing in their country of origin, visa fees, border crossing fees, and transportation costs. If your policy and/or practice was to not reimburse some or all of these costs following the H-2A workers' first workweek, please so state. Please include in your response details with respect to how you calculated any reimbursement amounts paid to those H-2A workers with respect to these expenses, identify any documents used in those calculations, and identify the individuals who performed such calculations and those who have knowledge of the calculations performed.

**Response to Interrogatory No. 6:**

Defendants object to this interrogatory on the grounds that it is overbroad and seeks information outside the scope of phase 1 discovery. Further responding, Defendants show that Hamilton Growers relied upon Solstice for many of the years relevant to this lawsuit (VISAS2000

-5-

for one year, and presently AztecLabor), its facilitators, to help identify and provide costs of H-2A workers for reimbursement related to reimbursement of expenses of H-2A workers, including hotel expenses in their country of origin, transportation costs from home to border, photo and finger print fees, taxi services, visa fees, border crossing fees, daily subsistence costs, and transportation costs to the farm. From 2018 until 2022, this amount was paid entirely in the first week of work to arriving H-2A workers. Since that time, Hamilton Growers made sure that employees were reimbursed enough to ensure that the employee received at least minimum wage between their AEWR wage and the expense reimbursement, and paid the remaining amount at or before the halfway point of the worker's job order work period. Further responding, see documents produced relating to payment of reimbursement travel and subsistence costs for Plaintiffs and Opt-in Plaintiffs. The workers sign acknowledgment forms confirming that they have received their full reimbursement for travel reimbursement expenses.

**Interrogatory No. 7:**

For H-2A workers employed at any time between March 29, 2018 and the present in which their job duties at any point in time included forklift operator in a packing shed, maintenance work in a packing shed, sanitation work in a packing shed, or mechanic work on equipment or machinery, please describe in detail your policy and/or practice between 2018 and the present with respect to the payment of daily subsistence costs to those H-2A workers for time spent traveling from their homes in their country of origin to the worksite in the United States. Please include in your response details with respect to how you calculated any sums paid to those H-2A workers with respect to daily subsistence, identify any documents used in those calculations, and identify the individuals who performed such calculations and those who have knowledge of the calculations performed.

**Response to Interrogatory No. 7:**

See response to Interrogatory No. 6.

**Interrogatory No. 8:**

For H-2A workers employed at any time between March 29, 2018 and the present in which their job duties at any point in time included forklift operator in a packing shed, maintenance work

-6-

in a packing shed, sanitation work in a packing shed, or mechanic work on equipment or machinery, please describe in detail your policy and/or practice between 2018 and the present with respect to paying or otherwise providing return transportation and paying the daily subsistence costs for those H-2A workers for their return travel to Mexico. Please include in your response details with respect to any transportation you provided and, with respect to any payments made, how you calculated those amounts paid to those H-2A workers with respect to return transportation and daily subsistence, identify any documents used in or reflecting those calculations, identify the individuals who performed such calculations, identify individuals who have knowledge of the calculations performed, and identify anyone who arranged for transportation.

**Response to Interrogatory No. 8:**

Defendants object to this interrogatory on the grounds that it is overbroad and seeks information outside the scope of phase 1 discovery. Further responding, Defendants show that for transportation home, if workers complete their work period in the job order, workers are paid for subsistence costs, transportation to the border, and transportation from the border to their hometown. Further responding, see documents produced relating to payment of transportation and daily subsistence costs for return transportation for Plaintiffs and opt-in Plaintiffs.

**Interrogatory No. 9:**

For H-2A workers employed at any time between March 29, 2018 and the present in which their job duties at any point in time included forklift operator in a packing shed, maintenance work in a packing shed, sanitation work in a packing shed, or mechanic work on equipment or machinery, please identify the number of individuals provided return transportation, or for whom you paid return transportation, broken down by each year for each of the years between 2018 and the present and identify any documents reflecting return transportation paid or provided.

**Response to Interrogatory No. 9:**

Defendants object to this request to the extent it seeks the identity of workers who are not Plaintiffs or opt-in Plaintiffs on the grounds that it is premature and seeks information that would be relevant only if this matter is certified as a class action, which Defendants contend is improper and inappropriate and is not appropriately sought in the current Phase 1 discovery. Further responding, as noted herein, it is impossible to identify exactly who performed forklift, maintenance, sanitation and mechanic work in the packing shed without asking every single

employee that performed work in the packing shed if they ever engaged in such an activity, making this matter improper for class certification.

**Interrogatory No. 10:**

Identify each location that contains a time clock at Defendants' packing sheds. Identify the individuals who used that time clock and state whether the time clock identified assigned crew or task fields to pay records. Identify anyone with knowledge of your response.

**Response to Interrogatory No. 10:**

Defendants show that, beginning in 2021, it began to use fingerprint scanner timeclocks in the packing shed. Within the packing shed, these scanners are located at 2 different locations, including in receiving office and in the shipping office. Prior to that time, employees had a badge with a button that they used to clock themselves in and out with, also in shipping and receiving.

**Interrogatory No. 11:**

Identify any individual hired or contracted to provide forklift safety training or forklift operator training at any location operated by you for any time from 2016 to the present. Identify any documents relied upon to prepare your response to this interrogatory or reflecting such training.

**Response to Interrogatory No. 11:**

Defendants object to this request on the grounds that it is overbroad in its temporal duration and seeks information prior to the time period relevant to this lawsuit. Without waiving and subject to said objections, forklift training (along with some other types of training) has been provided by the Company's insurance provider, and they provide a forklift safety presentation, a written test, and a question and answer communication. Defendants believe this was completed by the Company FCCI until roughly 2022, and it is now completed by Terra.

Respectfully submitted this 17th day of March, 2025.

        *s/Martin B. Heller*
        Martin B. Heller
        Georgia Bar No. 360538
        David Lerner
        Georgia Bar No. 853678
        **FISHER & PHILLIPS LLP**
        1230 Peachtree Street NE, Suite 3300
        Atlanta, Georgia 30909
        Telephone: (404) -231-1400
        Facsimile: (404) 240-4249
        mheller@fisherphillips.com
        dlerner@fisherphillips.com

        Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| ARNULFO GARCIA-RAMOS, PABLO CASTILLO-OLGUIN, and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SOUTHERN VALLEY FRUIT & VEGETABLE, INC.; HAMILTON GROWERS, INC.; KENT HAMILTON; HAMILTON PRODUCE, L.P.; KENDA PROPERTIES, L.P.; WK HOLDINGS, LLC; and WKW, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL ACTION FILE**<br>)<br>)  **FILE NO.: 7:24-cv-00054-WLS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CERTIFICATE OF SERVICE**

On March 17, 2025, I served a true and correct copy of **DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** via electronic mail to the following counsel of record:

Dawson Morton, Esq.
Dawson Morton, LLC
1808 Sixth St.
Berkeley, CA 9471
dawson@dawsonmorton.com

James M. Knoepp
Dawson Morton, LLC
1612 Crestwood Drive
Columbia, SC 29205
jim@dawsonmorton.com

This 17th day of March, 2025.

                                          *s/Martin B. Heller*
                                          Martin B. Heller
                                          Georgia Bar No. 360538

## VERIFICATION

I declare under penalty of perjury that the facts set forth in Defendants' Objections and Responses to Plaintiffs' First Interrogatories are true and correct to the best of my knowledge, information and belief, however, the responses rely upon not only my personal knowledge, but also the knowledge and information obtained through others.

_Joe T Sewells_  
Name

_3.17.24_  
Date