IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ARNULFO GARCIA-RAMOS, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO.: 7:24-cv-00054-WLS |
| SOUTHERN VALLEY FRUIT & ) | |
| VEGETABLE, INC., et al. ) | JUDGE W. LOUIS SANDS |
| ) | |
| Defendants. ) | CLASS ACTION |
| ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR RULE 23 CLASS CERTIFICATION**

Defendants claim they are a farmer, claim their warehouse is on a farm, and claim they are also a trucking company—and ask that the Court decide all these contested merits issues now. Simultaneously, although Defendants argue that details of their business should be decided in their favor, they also argue the payroll records they prepared and maintained are unreliable, contend that individualized inquiries defeat class certification, and argue that Plaintiffs' daily activities should really be the focus, not the Defendants' packing warehouse business.

But Defendants' own records and sworn testimony confirm that uniform policies applied to the Plaintiffs and all proposed class members, including (1) that none of the warehouse workers were paid overtime wages; (2) that all of the warehouse workers were paid the same wage rate applicable to agricultural field workers rather than a wage rate applicable to specialized jobs in a warehouse; (3) that Defendants' reimbursement policies and practices applied equally to all of their H-2A workers; and (4) that Defendants did not disclose the specialized warehouse jobs or the large amounts of purchased produce they handled. Plaintiffs allege these policies and practices violated their and other class members' rights. While

1

Defendants spend a great deal of time arguing whether Plaintiffs will prevail on their claims, those arguments are premature and, more importantly, only serve to demonstrate that the resolution of the legal issues will be the same for all class members as Defendants do not assert individualized defenses but instead argue their business practices were legal. Rule 23 asks only whether Plaintiffs' claims are capable of resolution through common proof—not whether Plaintiffs will prevail. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). And Defendants' merits arguments tacitly concede this is possible. (ECF No. 58 at 14-21) (claiming all class members are exempt from overtime and were only owed a farmworker wage). The proposed classes meet all Rule 23 requirements and should be certified.

I.  THE CLASSES ARE ASCERTAINABLE

Plaintiffs motion proposed three classes, all of which are based on the type of work performed by employees at Defendants' packing shed warehouse during specific time periods. (ECF No. 37) (proposing classes of individuals employed as "forklift operators, maintenance workers, or sanitation workers in the packing shed warehouse"). The proposed classes consist of individuals doing specific job duties recorded in Defendants' payroll records, and sub-classes of those who worked subject to H-2A visas and those who worked during specific time periods when Defendants were not certified to employ H-2A workers (January and February). These classes are ascertainable and Defendants' discovery responses have already stated the number of individuals within each class and sub-class. (ECF 37-1 at 10.) Defendants contend the classes are not ascertainable, arguing that their own payroll records listing the type of work that was performed may not be accurate and should not be believed. (ECF No. 58 at 13-14, 23) (arguing that a payroll record listing the "Type" of work is not evidence of the work individuals were actually performing). Defendants should not be allowed to defeat class certification through such

2

gamesmanship. *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 481-82 (3d Cir. 2020) (rejecting similar argument as "most audacious[]" where defendant claimed "its own driver rosters should be disregarded because it is unclear that they are accurate").

Defendants were required by federal regulations to "keep accurate and adequate records with respect to each worker's earnings . . . and **records showing the nature** and amount **of the work performed**." *See* 29 C.F.R. § 655.122(j) (emphasis added). The weekly payroll records generated by the Defendants' payroll system and provided to the Plaintiffs and other class members do record the nature and amount of the work performed. For example, Plaintiff Arnulfo Garcia-Ramos has submitted sample paycheck stubs showing that he worked on the "Shipping" crew and did work identified under "Type" as "Forklift Hourly – H2A." (ECF No. 37-14 at 4-5.) Likewise, Plaintiff Pablo Castillo-Olguin submitted sample paycheck stubs showing he was assigned to the "PS-SANI/MAIN [Packing Shed – Sanitation/Maintenance]" crew and did work identified by "Type" as "Maintenance Hourly – H2A." (ECF No. 37-15 at 4-5.) Class member Rafael Joaquin-Guerrero also submitted sample paycheck stubs showing he was assigned to the "PS-SANI/MAIN [Packing Shed – Sanitation/Maintenance]" crew or the "Michael" crew and did work identified as "Maintenance Hourly – H2A" and "Sanitation Hourly – H2A." (ECF No. 37-16 at 4-5); (Second Declaration of Rafael Joaquin-Guerrero) (attached as Exhibit T).

The payroll crew and job information readily identifies members of the proposed classes based on objective criteria—the type of work performed and the location (e.g., the shipping department or the packing shed, as opposed to working as a field worker harvesting crops). Yet, incredibly, Defendants argue their own payroll records may not be accurate and should not be believed, despite the fact Defendants were required by law to keep accurate records. The Third Circuit in *Hargrove* rejected a similar argument and held that "where an employer's lack of

records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the employees who make up that class will not be made to bear the cost of the employer's faulty recordkeeping." *Hargrove*, 974 F.3d at 481-82.

Defendants cite a decision where critical data related to the class definition was not contained in the Defendants' records. (ECF No. 58 at 13.) Defendants claim that *Guarisma v. Hyatt Equities, LLC*, No. 1:17-CV-20931-UU, 2017 WL 6949266 (S.D. Fla. Sept. 28, 2017), is support for the proposition that ascertainability may not be established by a defendant's records. But in *Guarisma* the defendants were not legally required to maintain the records and did not have records identifying who was, or was not, provided a receipt, which was required by the class definition. *Id.* at *14 (finding "there is no evidence whatsoever to indicate which, or how many, of these 219,087 hotel guests actually requested that Defendant print their receipt"). The defendants in *Guarisma* did not argue, as Defendants do here, that their own records should now not be believed—there simply were no records.

Here, Defendants *do* have records showing the "type" of work performed. Defendants here just incredibly argue that the payroll records they maintained which list "Forklift Hourly – H2A," "Maintenance Hourly – H2A," or "Sanitation Hourly – H2A" every week for entire seasons do not actually indicate that those individuals operated a forklift or did maintenance or sanitation work. The payroll information also lists the crew as "Shipping" or "Packing Shed – Sanitation/Maintenance," identifying the person as someone employed in the Defendants' warehouse (where substantial amounts of outside produce was moved and processed) as opposed to an agricultural field worker harvesting crops. Because Defendants' job orders submitted to the government listed jobs such as harvesting and packing crops as being piece-rate earning positions, if someone really was not employed in the packing shed as a forklift operator,

4

maintenance worker, or sanitation worker despite what their paycheck stub says, then they would have been paid by different methods or their crew would say "Field" instead of "Shipping" or "PS-Sani/Main." (*See, e.g.*, ECF No. 37-2 at 13-17) (2018 job order listing almost 100 different piece rates); (ECF No. 37-8 at 11-24) (2024 job order listing almost 150 different piece rates).

Defendants cannot and do not argue the proposed class members whose payroll records list "forklift," "maintenance," or "sanitation" did not do one of those jobs in the packing shed. Even if Defendants are to be believed that their payroll records inaccurately (for years and years) list the type of work being done, there is no evidence that those individuals actually worked out in the field harvesting crops as opposed to the packing shed warehouse, which would be the only way that the legal analysis of whether the work being performed was "agricultural" for purposes of overtime pay and whether warehouse workers were paid the correct wage rate would be impacted. Moreover, Plaintiffs provided sworn testimony about the type of work they performed in the warehouse, which was consistent with their paycheck stubs, and which Defendants have not disputed. (ECF No. 37-14 ¶ 4) (Decl. of Plaintiff Arnulfo Garcia-Ramos) (describing primary job as operating a forklift); (ECF No. 37-15 ¶¶ 3-4) (Decl. of Plaintiff Pablo Castillo-Olguin) (describing primary job as maintaining the equipment and machinery in the warehouse). In sum, Plaintiffs have proven that the classes are defined by objective criteria whose members are ascertainable. Defendants' arguments to the contrary should be rejected.

## II. PLAINTIFFS SATISFY RULE 23(a) REQUIREMENTS

### A. Numerosity

Numerosity can be met with as few as 25-30 individuals; here the proposed classes are larger, each more than 40. (ECF No. 37-1 at 11.) Defendants cannot really dispute numerosity since their own discovery responses show it was met. (ECF No. 37-10) (interrogatory responses);

(ECF No. 37-11) (responses to requests for admission). Instead, Defendants try to muddy the waters by saying Plaintiffs did not remember as many workers as Defendants' own records show. (ECF No. 58 at 22.) Then, Defendants claim again that the records they produced in discovery and testified to at deposition are not actually accurate—and so Plaintiffs are simply estimating the number of class members. (ECF No. 58 at 23.) The Court should not allow Defendants to evade their own discovery responses and prior testimony so easily.

      Plaintiffs adequately demonstrated how each of the three classes met Rule 23 numerosity requirements. (ECF No. 37-1 at 10-12.) Rather than directly address that evidence—which was based on Defendants' sworn discovery responses—Defendants splinter Plaintiffs' proposed classes into nine subgroups and again argue with the accuracy of their own records. Defendants claim there should be separate classes for forklift operators, maintenance workers, and sanitation workers for each of the three subclasses, even though they make no argument that such workers were treated differently with respect to the alleged legal violations. Warehouse workers—whether operating a forklift or performing maintenance or sanitation work—were all treated the same and worked pursuant to the same employment contracts each year. (ECF No. 37-11) (Defs.' Resp. to RFA Nos. 1 & 2). Regardless of the type of work performed in the warehouse, it is undisputed that workers did not receive overtime pay and were paid the same wage rate as agricultural field workers instead of a wage commensurate with specialized work in a non-agricultural warehouse. (*Id.*) It is for this precise reason that Plaintiffs defined the classes in this manner and excluded individuals employed in the field harvesting crops.

      More importantly, Defendants' numerosity argument is in conflict with sworn interrogatory responses listing the number of workers employed in each job type and their answers to requests for admission. (ECF No. 37-10) (Defendants' interrogatory responses stating

that 47 individuals had a forklift operator designation, 27 people had maintenance, sanitation, or PS-Sani/Main designation, and 35 people performed maintenance work); (ECF No. 37-11) (Defs.' Resp. to RFA No. 4) (admitting that "more than 40 individuals combined had one of the listed job duties on their paystub at some point"). Defendant Hamilton Growers, Inc.'s 30(b)(6) witness likewise confirmed the accuracy of the interrogatory responses with respect to each type of work performed and, in fact, agreed that documents produced by the Defendants show the number of forklift operators was actually *higher*—between 68 and 115 operators during the class period. (ECF No. 40-1) (30(b)(6) Dep. at 103:12-104:20; 111:13-112:12; 113:3-114:3).[1]

Each of the proposed classes meet the numerosity requirements,[2] particularly given the geographic diversity of the class members, judicial economy and the inconvenience of trying individual lawsuits, and the ability of individual class members to institute their own lawsuits, none of which Defendants disputed. *See, e.g.*, *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (noting other factors, in addition to total number of class members, should be considered as part of the numerosity analysis); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 645 (M.D. Fla. 2012) (finding numerosity met in case involving migrant workers from Mexico who do not speak English fluently and lack familiarity with the legal system).

---

[1] Deposition testimony citations are to the page of the deposition and not the ECF page number.
[2] Defendants appear to dispute the numerosity of the AWPA subclass, defined as individuals who worked during time periods when Defendants were not certified to employ H-2A workers. (ECF No. 58 at 8-9.) Defendant Hamilton Growers' 30(b)(6) witness testified that the Defendants employed forklift operators, maintenance workers, and sanitation workers during January and February of each year. (ECF No. 40-1) (30(b)(6) Dep. at 155:25-157:9). The witness did not know how many workers were employed during that time but admitted that payroll records would provide the information. (ECF No. 40-1) (30(b)(6) Dep. at 158:1-13). The payroll records show at least 40 individuals employed during January and February for the 2021 through 2024 seasons, although the number of class members is likely higher since Defendants did not provide complete payroll information. (ECF No. 37-1 at 11); (ECF No. 37-19) (Knoepp Decl. ¶¶ 11-13). Defendants do not dispute this evidence drawn from their own records in their opposition.

### B.     Commonality

A classwide proceeding of Plaintiffs' claims will generate common answers that will be resolved by common proof. This meets the commonality threshold. (ECF No. 37-1 at 13-15.) Defendants do not dispute Plaintiffs' common questions, ECF No. 37-1 at 13, nor that Plaintiffs worked under the same contracts and were subject to the same contractual promises, ECF No. 37-1 at 5, but Defendants claim that these issues will not find common answers, ECF No. 58 at 23. To oppose a finding of commonality, Defendants argue that their own legally required payroll records which show common treatment cannot be relied on because the "proposed job categor[ies]" shown in the payroll data cannot be treated "the same for the purposes" of this suit. (ECF No. 58 at 23.) Defendants claim Plaintiffs "ignore the individualized nature of their claims," arguing that it "is not the case" that "each proposed job category of warehouse workers [was treated] the same," ECF No. 58 at 23, because "the designation does not capture the distinction that potentially connects the position to outside produce." (ECF No. 58 at 24.) Even though they have no records, Defendants wish to dispute who "touched" outside produce. (ECF No. 42-11) (Schwalls Decl. ¶ 7) ("no meaningful way to know which forklift operator may have moved a box of outside produce").[3] But in applying the exemption to overtime to all warehouse workers, Defendants did not engage in any individualized analysis of job duties or employment activities. Rather, Defendants applied the claimed exemption, the wage rate, and the reimbursement policy, to everyone.  Defendants' blanket application to all class members

---

[3] The burden to prove an overtime exemption is Defendants, not Plaintiffs, and Defendants readily admit that they did not maintain records of which workers worked with the outside produce. *See Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) ("The employer bears the burden of establishing that an employee is exempt.") Defendants also claim that they are "not a packer for other farms," ECF No. 58 at 4, but this is a merits issue and one on which Defendants are highly unlikely to prevail as Plaintiffs and proposed class members have all indicated that Defendants not only repack produce but that they do so regularly. (Second Decl. of Rafael Joaquin-Guerrero ¶ 5) (attached as Exhibit T); (Decl. of Jose Antonio Rivera Reyes ¶ 5) (attached as Exhibit U).

supports the conclusion that all workers, regardless of job titles or minor differences in their daily activities, have common legal answers to their claims.

Even while they try to make individuality a focus, Defendants continue to make common claims for all class members. For example, Defendants admit they paid the warehouse workers' field worker wages, ECF No. 58 at 20, but claim this was legal and that a claim to a higher wage rate "has absolutely no legal basis," ECF No. 58 at 21. Likewise, Defendants agree that warehouse workers did not receive overtime pay, arguing this was "lawfully" done. (ECF No. 58 at 15.) Defendants also contend that even though they paid all forklift drivers the same, the forklift drivers are actually different. (ECF No. 58 at 24).[4] And that there are granular details about "whether a maintenance worker changed a sprocket" that they did not record. (ECF No. 58 at 25.) Defendants contend the sanitation workers worked "on the periphery of the warehouse" which was really "on a farm" and so cannot have common claims.[5] (ECF No. 58 at 6-7) (claiming incorrectly that "[t]he packing shed is located on a farm, and thus all of the sanitation work . . . occurred on the farm").[6] These are thin grounds for not finding commonality—

---

[4] Many of the issues Defendants raise such as whether a forklift driver "primarily worked on only one side of the packing shed" are just not material here. (ECF No. 58 at 27.) While forklift drivers worked on both sides of the packing shed, ECF No. 40-2 (Garcia-Ramos Dep. at 100:15-102:5; 110:8-111:14); (Ex. T - Rivera-Reyes Decl. ¶ 4), the issue is not where produce moved but the nature of a warehouse that was processing tens of millions of dollars of outside produce each season and that there was "*no payroll designation at all* to indicate whether a forklift operator lifted or moved outside produce . . . ." (ECF No. 58 at 25) (emphasis in original).

[5] Defendants claim the work of processing produce in a warehouse "was performed on a farm and in connection with Defendants' farming operations." (ECF No. 58 at 17.) While this is yet another merits issue, it is disputed. But, most importantly, it is subject to class-wide decision. Either Defendants only processed their own produce, or Defendants purchased and processed tens of millions of dollars of outside produce each season. Either is capable of a collective decision and will determine the contractual wage rate and overtime issues Plaintiffs allege. Defendants own discovery responses show the purchase of more than $150 million dollars of outside produce delivered to the warehouse during the six years covered by the lawsuit. (ECF No. 40-1) (30(b)(6) Dep. at 241:5:21; 243:2-244:13) (admitting that between $20-$25 million of outside produce purchased each year and was moved around by forklift operators).

[6] After detailing their "farming operations" and claiming they are a farm, Defendants proceed to claim that no overtime applies based on the motor carrier act exemption and that they are a trucking company. (ECF No. 58 at 17-18) (claiming a "corporate relationship situates Defendants as 'carriers' under the Motor Carrier Act"). This is another merits issue for which no discovery has yet occurred but, again, demonstrates the common nature of the analysis that will take place later. At its core this suit is about the business Defendants operated—it was neither a

Defendants' own payroll practices show the newfound individuality of these positions is an invention solely to oppose class certification. (ECF No. 37-11.)

While Defendants contend their legal positions do not have common answers, whether Defendants' warehouse functioned as one individual farmer processing its own crops or as an independent warehouse processing crops from numerous other farmers plainly has an answer with common proof that directly impacts both the wage rate claim and the overtime claim.[7] *See, e.g., Marshall v. Gulf & W. Indus., Inc.*, 552 F.2d 124, 126 (5th Cir. 1977) ("The fact that tomatoes grown by independent farmers were processed by Gulf & Western prevents it from receiving the claimed exemption."); *see also Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) (concluding overtime owed based on "the activities of Superior Dairies").

The issues in this suit will be decided based on the promises made in the uniform contracts, the uniform policies applied, and the nature of Defendants' warehouse operations. *Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302, 2018 U.S. Dist. LEXIS 156331, at *13-14 (E.D.N.Y. Sep. 11, 2018) (finding commonality where "defendants' wage obligation will depend upon interpretation of the wage provision in defendants' standard contract. The determination of this question will be a classwide . . . because all putative class members signed a contract with the same prevailing wage provision."); *De-Leon Granados v. Eller & Sons*

---

farm simply processing its own product, nor was it a trucking company. These are issues underlying all of Plaintiffs' claims and for which common issues of law and fact can be decided collectively.

[7] Defendants state "[i]t is undisputed that Hamilton Growers grows its own produce and *primarily relies upon its own produce to ship products to its customers*, so any claim that an individual was moving outside produce can only be established based on individual testimony." (ECF No. 58 at 25) (emphasis added). This is a merits issues as to whether Defendants' warehouse was really an "agricultural" operation within the meaning of the law despite tens of millions of dollars of outside produce purchases. The above statement is very much in dispute and has been subject to a bare minimum of discovery at this point, but $20-$25 million in annual outside produce purchases is a substantial amount and will have an overwhelming impact on the legal question of whether Defendants are entitled to the agricultural exemption to overtime and whether it was unlawful for Defendants to pay agricultural wage rates to warehouse workers. More importantly, any analysis of the outside produce and its impact on the claims of the Plaintiffs' and class members is focused on the Defendants' operations and not on any issues related to individual class members.

*Trees, Inc.*, No. 1:05-CV-1473-CC, 2006 U.S. Dist. LEXIS 73781, at *20-21 (N.D. Ga. Sept. 28, 2006) (finding same for tree planters employed pursuant to H-2B visas), *aff'd*, 497 F.3d 1214 (11th Cir. 2007); *Goodyear v. Delta Air Lines, Inc.*, No. 1:23-CV-5712-TWT, 2024 U.S. Dist. LEXIS 121602, at *9 (N.D. Ga. July 11, 2024) (finding commonality in allegation of compensation "that runs contrary to the Overtime Policy [because such a compensation practice could plausibly constitute a breach of Delta's contractual obligations . . . over which common issues of law and fact predominate."). If Defendants' warehouse was not agricultural because it packed tens of millions of dollars of produce grown by others, and if Defendants assigned skilled work, not general field work, these issues will be decided in Plaintiffs' favor and for all members of the class. *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 290 (5th Cir. 1959) (finding overtime applied to entire warehouse because "[a]lthough Huntsville is a farmer to the extent that it operates [a farm] . . . this is not sufficient to exempt the [warehouse] employees . . . unloading, sorting, grading, trimming, storing, racking, and picking nursery stock received from other sources"); *Gulf & W. Indus., Inc.*, 552 F.2d at 126.

  Defendants cite a prior decision where this Court found "[a] class-wide proceeding simply will not generate common answers . . . as a result of the material variations in the contracts," *Lawson v. Life of the S. Ins., Co.*, 286 F.R.D. 689, 699 (M.D. Ga. 2012). (ECF No. 58 at 28) (*citing Lawson*). Here, a class-wide proceeding will generate common answers to whether Defendants' conduct breached the uniform contract when it hid the nature of Plaintiffs' work, denied Plaintiffs' wages, reimbursements, and contractually promised overtime. Defendant compares the issue of whether Defendant ran a warehouse processing produce of multiple farms to a case involving the government's admission of aliens where "arriving aliens and non-arriving aliens [we]re materially different and ha[d] received differing treatment[.]" *Rabelo-Rodriguez v.*

*Mayorkas*, No. 21-cv-23213, 2021 U.S. Dist. LEXIS 231146 at *22 (S.D. Fla. Dec. 1, 2021). The decision on the issue of commonality in *Rabelo-Rodriguez* offers Defendants no aid here because there is no material difference among the job categories for purposes of contractual wages, contractual overtime promises, or reimbursement.

Plaintiffs do not dispute that the specifics of each type of job at Defendants' warehouse that falls within the class definition are different, but those differences are immaterial with respect to whether the work was agricultural for purposes of wage rates or overtime pay. The common thread for these jobs is that they were performed in Defendants' warehouse where tens of millions of dollars of outside produce was being moved and processed—a fact that goes to the heart of whether the work is "agricultural" as a legal matter. In their extensive arguments of the merits of Plaintiffs' claims, Defendants ignore the fact that whether someone is moving outside produce with a forklift or cleaning up outside produce and breaking down boxes in the warehouse, or fixing the equipment and machinery used to process outside produce in the warehouse, that *all* of the workers are being employed in what Plaintiffs contend is a *non-agricultural* warehouse. Plaintiffs' claim is that Defendants' purchase and handling of outside produce from other farmers has transformed what might otherwise be an agricultural operation into just a standard warehouse job where overtime pay and higher wage rates are required. The focus of that inquiry, of which only the bare minimum of discovery has currently been conducted, will be on Defendants' operations—a common factual and legal question.

**C.    Typicality**

Plaintiffs' claims are typical of the claims of the class and arise from the same contracts, the same employment practices and assert the same legal theories. (ECF No. 37-1 at 16-17.) Citing to a total of 5 lines of deposition testimony, Defendants argue the named Plaintiffs' claims

are not typical because, Defendants allege, the Plaintiffs sometimes performed tasks in addition to their main tasks of operating a forklift or performing maintenance work. (ECF No. 58 at 27.)[8] While Defendants' statements misstate the testimony, they are also immaterial. The claim of a class representative is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citation omitted). Here, the Plaintiffs' claims and the class members' claims all arise from uniform employment contracts, and Defendants' uniform policies of not paying any warehouse workers overtime pay, paying all warehouse workers as agricultural field workers with respect to the wage rate they were paid, and not reimbursing warehouse workers properly pursuant to the terms of their contracts. The legal theories applicable to the Plaintiffs' claims and the class members' claims are identical and can be determined on a class-wide basis. *See Garcia-Celestino*, 280 F.R.D. at 646.

### III.  COMMON QUESTIONS PREDOMINATE AND A CLASS ACTION IS SUPERIOR TO OTHER METHODS OF ADJUDICATION

#### A.  Predominance

Defendants argue that Plaintiffs have not satisfied Rule 23(b)(3)'s predominance requirement because damage amounts for class members may vary. (ECF No. 58 at 28-29.) As Plaintiffs set forth in their opening brief, "individual damage calculations generally do not defeat a finding that common issues predominate." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225,

---

[8] Defendants' claim that Plaintiff Arnulfo Garcia-Ramos, for example, testified that he "did not work as a forklift driver for much of the relevant time period." (ECF No. 58 at 27). That is simply not true. While Mr. Garcia-Ramos testified there was a period of time when he worked as a shipping clerk in the warehouse, he testified that he primarily operated a forklift during the more than 10 years he was employed by Defendants. (ECF No. 40-2) (Garcia-Ramos Dep. at 75:4-19; 107:7-108:9). Similarly, Defendants claim that Plaintiff Pablo Castillo-Olguin "regularly performed job duties that were not related to maintenance work," citing to two lines from his deposition testimony in which he stated that he "would drive a forklift if it—when it was necessary," after which he answered "No" to a question of whether that was his primary job duty, since his primary job duty was "maintenance work and repair work." (ECF No. 40-3) (Castillo-Olguin Dep. at 44:20-45:5).

1239 (11th Cir. 2016) (internal quotations omitted). Plaintiffs' damages theory is also not so individualized—it is simply that Defendants failed to pay the correct wage rate set by the government for the positions in which Plaintiffs and class members were engaged, failed to pay contractually promised overtime, and failed to properly reimburse for certain required expenses. *Mencia v. Allred*, 808 F.3d 463, 471 (10th Cir. 2015) (ruling that a prevailing wage was owed where defendants "had procured the H-2A visas by telling federal agencies that their sheepherders would 'attend[]' a 'flock on ranges or pasture'" but performed other work).[9] The bulk of these wage calculations, substituting the correct wage and subtracting the wage paid, or multiplying the hours worked by the overtime wage rate, are straight-forward, formulaic, and "ensure[] that the damages are capable of determination via class-wide proof—just like the theory of liability." *In re In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311, 1329 (S.D. Fla. 2023). Other courts addressing similar wage issues have found predominance because "[i]f plaintiff prevails on her breach of contract claim, she and class members would be entitled to the difference between the wages they were actually paid and the prevailing wage as of the commencement of their employment. This formula can be applied on a class-wide basis using defendants' payroll records and data from the U.S. Department of Labor's wage library." *Paguirigan*, 2018 U.S. Dist. LEXIS 156331, at *26. *See also Antonio-Benito v. Lowry Farms*,

---

[9] Like *Mencia*, Defendants hid the work performed to evade paying the specialized wages owed. Defendants described the work as "[p]erform manual labor to plant, cultivate, harvest, grade, sort and pack cucumbers, cabbage, peppers, eggplant, squashes, corn, okra, cotton, green beans, watermelons, broccoli, cilantro, pickle cucumbers, tomatillos, lettuce, cauliflower, peanuts, and tomatoes by hand or machine." *See, e.g.*, ECF No. 37-4 at 4. Plaintiffs' work operating forklifts, repairing packing machinery, and maintaining sanitation standards in a warehouse that processed and shipped produce from multiple farms was not mentioned. Defendants claim that analysis will need to be week by week and that the improper wage rates is not subject to collective determination. (ECF No. 58 at 29.) But the analysis is not done on a weekly basis as Defendants' contracts, which contain the deception, are not weekly but have seven to nine-month durations. *See, e.g.*, ECF No. 37-4 at 4 (9 months); ECF No. 37-6 at 4 (9 months).

14

*Inc.*, No. 1:20-cv-1039, 2021 U.S. Dist. LEXIS 245919, at *13 (W.D. Ark. Aug. 9, 2021) (finding predominance in H-2A contract case involving alleged improper reimbursement of expenses and noting that "[t]he amount of damages claimed by each proposed class member may differ, but the members share common questions regarding Defendants' liability").

    **B.**    **Superiority**

Defendants appear to concede that Plaintiffs have met Rule 23(b)(3)'s superiority requirements. As Plaintiffs argued in their opening brief, they meet the four factors under which superiority is analyzed. (ECF No. 37-1 at 21-23). *See De Leon-Granados*, 2006 U.S. Dist. LEXIS 73781, at *49-50 (superiority met in case involving H-2B visa workers who are geographically dispersed, lack proficiency in English, and are not familiar with legal system).

## CONCLUSION

Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3). Defendants' objections are either premature merits arguments or exaggerations of immaterial variations. Plaintiffs respectfully request that the Court grant their Motion for Rule 23 Class Certification.

    Respectfully submitted,

    */s/ James M. Knoepp*
    James M. Knoepp
    Georgia Bar No. 366241
    Dawson Morton, LLC
    1612 Crestwood Drive
    Columbia, SC 29205
    Phone: (828) 379-3169
    jim@dawsonmorton.com

    Dawson Morton
    Georgia Bar No. 525985
    Dawson Morton, LLC
    1808 Sixth St.
    Berkeley, CA  94710
    Phone: (404) 590-1295
    dawson@dawsonmorton.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this date I electronically filed the foregoing using the Court's CM/ECF system, which will automatically send e-mail notification to the following attorneys for the Defendants:

Martin B. Heller
David Lerner
FISHER PHILLIPS LLP
1230 Peachtree Street NE
Suite 3300
Atlanta, GA 30309
mheller@fisherphillips.com
dlerner@fisherphillips.com

                                            */s/ James M. Knoepp*
                                            James M. Knoepp
                                            Georgia Bar No. 366241

this 25th day of August, 2025.